No. 22-15824

# In the United States Court of Appeals for the Ninth Circuit

---

SAN FRANCISCANS SUPPORTING PROP B, EDWIN M. LEE ASIAN PACIFIC DEMOCRATIC CLUB PAC SPONSORED BY NEIGHBORS FOR A BETTER SAN FRANCISCO ADVOCACY, AND TODD DAVID,

*Plaintiffs-Appellants,*

v.

DAVID CHIU, SAN FRANCISCO ETHICS COMMISSION, CHESA BOUDIN, AND CITY AND COUNTY OF SAN FRANCISCO,

*Defendants-Appellees.*

---

Appeal from an order of the United States District Court for the Northern District of California, The Hon. Charles R. Breyer (Dist. Ct. No. 3:22-cv-02785-CRB)

---

APPELLANTS' BRIEF

---

James R. Sutton
THE SUTTON LAW FIRM
150 Post Street, Suite 405
San Francisco, CA 94108
415.732.7700
jsutton@campaignlawyers.com

Alan Gura
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., N.W.
Suite 801
Washington, DC 20036
202.301.3300
agura@ifs.org

July 1, 2022

*Counsel for Appellants*

DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Appellants certify:

**San Franciscans Supporting Prop B**, a recipient committee organized under the laws of the State of California and the City and County of San Francisco, hereby states that it has no parent companies, subsidiaries, or affiliates and that it does not issue shares to the public.

**Edwin M. Lee Asian Pacific Democratic Club PAC Sponsored by Neighbors for a Better San Francisco Advocacy**, a recipient committee organized under the laws of the State of California and the City and County of San Francisco, hereby states that it has no parent companies, subsidiaries, or affiliates and that it does not issue shares to the public.

/s/ Alan Gura
Alan Gura
Counsel for Appellants

TABLE OF CONTENTS

DISCLOSURE STATEMENT ...................................................... i

TABLE OF AUTHORITIES .................................................... v

INTRODUCTION ........................................................................ 1

STATEMENT OF JURISDICTION .......................................... 3

STATEMENT OF ISSUES ....................................................... 4

STATEMENT OF ADDENDUM ................................................ 4

STATEMENT OF THE CASE ................................................... 5

    A.    Relevant state law background ............................... 5

    B.    San Francisco intensifies the compelled speech
        requirements ......................................................... 8

            1.    *Secondary donor discussion, lower reporting
                threshold, and website announcement* .................. 8

            2.    *Print communications (e.g. mailers and newspaper
                ads)* ...................................................... 9

            3.    *Audio and video communications* ............................. 10

            4.    *Penalties and enforcement* ........................................ 11

    C.    The previous Prop B litigation ............................. 12

    D.    The secondary donor speech mandate's impact on
        Plaintiffs' speech ................................................. 13

            1.    *The secondary donor speech mandate's impact on
                donations* .................................................... 15

            2.    *The secondary donor speech mandate's impact on
                ad effectiveness and practicality* ......................... 17

3.    *The secondary donor speech mandate's continuing impact on Plaintiffs* ......................................................... 19

E.    Procedural history ................................................................. 21

SUMMARY OF THE ARGUMENT ................................................. 24

STANDARD OF REVIEW ............................................................. 25

ARGUMENT ............................................................................. 26

I.    PLAINTIFFS ARE LIKELY TO ESTABLISH THAT SAN FRANCISCO'S  COMPELLED SPEECH FAILS FIRST AMENDMENT SCRUTINY ....................................................... 27

A.    Strict scrutiny applies to San Francisco's content-based, compelled messaging ........................................ 28

B.    San Francisco's compelled messaging about secondary donors serves neither a substantial nor compelling interest ........................................................ 31

C.    Less restrictive means to achieve the informational interest highlight the unconstitutionality of the compelled speech requirements ............................................................... 41

D.    San Francisco's compelled messaging violates Plaintiffs' freedom of association ................................. 48

II.    THE CHALLENGED PROVISIONS IRREPARABLY HARM PLAINTIFFS ....................................................................... 51

III.    THE BALANCE OF EQUITIES, AND THE PUBLIC INTEREST, FAVOR PLAINTIFFS ........................................................... 51

CONCLUSION ........................................................................... 52

STATEMENT OF RELATED CASES ............................................... 53

CERTIFICATE OF COMPLIANCE ................................................. 54

ADDENDUM

TABLE OF AUTHORITIES

## Cases

*ACLU v. Nev. v. Heller,*
  378 F.3d 979 (9th Cir. 2004)................................................. 32, 46, 48

*Am. Bev. Ass'n v. City & Cty. of S.F.,*
  916 F.3d 749 (9th Cir. 2019)................................................. 43, 44, 45

*Americans for Prosperity Found. v. Bonta.,*
  141 S. Ct. 2373 (2021)................................................................ *passim*

*Ariz. Democratic Party v. Hobbs,*
  976 F.3d 1081 (9th Cir. 2020).......................................................26, 27

*Ariz. Dream Act Coal. v. Brewer,*
  855 F.3d 957 (9th Cir. 2017)..............................................................52

*Associated Press v. Otter,*
  682 F.3d 821 (9th Cir. 2012).............................................................52

*Buckley v. Valeo,*
  424 U.S. 1 (1976)....................................................................... *passim*

*Citizens United v. Fed. Election Comm'n,*
  558 U.S. 310 (2010)...................................................................... *passim*

*Cook v. Gralike,*
  531 U.S. 510 (2001).....................................................................40, 41

*CTIA – The Wireless Ass'n v. City of Berkeley,*
  928 F.3d 832 (9th Cir. 2019)..............................................................51

*Doe v. Reed,*
  561 U.S. 186 (2010).....................................................................30, 31

*East Bay Sanctuary Covenant v. Garland,*
  994 F.3d 962 (2021) .........................................................................26

*Elrod v. Burns,*
  427 U.S. 347 (1976)...........................................................................51

*Family PAC v. McKenna,*
    685 F.3d 800 (9th Cir. 2012) ............................................................ 34

*Fed. Election Comm'n v. Nat'l Right to Work Comm.,*
    459 U.S. 197 (1982) ........................................................................ 48

*Hall v. United States Dep't of Agric.,*
    984 F.3d 825 (9th Cir. 2020) ............................................................ 26

*Hernandez v. Sessions,*
    872 F.3d 976 (9th Cir. 2017) ............................................................ 52

*Hurley v. Irish-American Gay, Lesbian and Bisexual Grp.,*
    515 U.S. 557 (1995) ............................................................ 1, 27, 43

*Indep. Inst. v. Fed. Election Comm'n,*
    216 F. Supp. 3d 176 (D.D.C. 2016) .................................................. 35

*Indep. Inst. v. Williams,*
    812 F.3d 787 (10th Cir. 2016) ......................................................... 35

*Lakewood Citizens Watchdog Grp. v. City of Lakewood,*
    No. 21-cv-01488-PAB, 2021 U.S. Dist. LEXIS 168731 (D.Colo.
    Sep. 7, 2021) .................................................................................. 35

*Leiva-Perez v. Holder,*
    640 F.3d 962 (9th Cir. 2011) ............................................................ 27

*McCutcheon v. Fed. Election Comm'n,*
    572 U.S. 185 (2014) ................................................................ *passim*

*McIntyre v. Ohio Elections Comm'n,*
    514 U.S. 334 (1995) ........................................................................ 33

*ProtectMarriage.com – Yes on 8 v. Bowen,*
    752 F.3d 827 (9th Cir. 2014) ..................................................... 39, 40

*Republican Party v. King,*
    741 F.3d 1089 (10th Cir. 2013) ....................................................... 33

*Riley v. Nat'l Fed'n of Blind,*
    487 U.S. 781 (1988) ............................................................ 27, 31, 47

*Rodriguez v. Robbins,*
    715 F.3d 1127 (9th Cir. 2013) ............................................................. 52

*Sanders Cnty. Republican Cent. Comm. v. Bullock,*
    698 F.3d 741 (9th Cir. 2012) ............................................................... 51

*Short v. Brown,*
    893 F.3d 671 (9th Cir. 2018) ............................................................... 26

*Sampson v. Buescher,*
    625 F.3d 1247 (10th Cir. 2010) ........................................................... 34

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
    240 F.3d 832 (9th Cir. 2001) ............................................................... 26

*Van Hollen v. Fed Election Comm'n,*
    811 F.3d 486 (D.C. Cir. 2016) ............................................... 34, 37, 38

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ................................................................................ 26

*Yes on Prop B v. City & Cty. of S.F.,*
    440 F. Supp. 3d 1049 (N.D. Cal. 2020) ...................................... 13, 22

*Yes on Prop B v. City & Cty. of S.F.,*
    826 F. App'x 648 (9th Cir. 2020) ....................................................... 13

## Statutes and Rules

28 U.S.C. § 1292(a)(1) ................................................................................. 3

28 U.S.C. § 1331 .......................................................................................... 3

42 U.S.C. § 1983 .................................................................................... 3, 21

Cal. Gov't Code § 82013 .............................................................................. 5

Cal. Gov't Code § 82036 .............................................................................. 7

Cal. Gov't Code § 82047.5 ........................................................................... 5

Cal. Gov't Code § 84101(a) ......................................................................... 5

Cal. Gov't Code § 84107 ................................................................. 7

Cal. Gov't Code § 84200 ................................................................. 6

Cal. Gov't Code § 84200.5 .............................................................. 6

Cal. Gov't Code § 84200.8 .............................................................. 6

Cal. Gov't Code § 84203 ................................................................. 7

Cal. Gov't Code § 84211(a) ............................................................. 6

Cal. Gov't Code § 84211(c) ............................................................. 6

Cal. Gov't Code § 84211(d) ............................................................. 6

Cal. Gov't Code § 84211(f) .............................................................. 6

Cal. Gov't Code § 84223(a) ........................................................... 47

Cal. Gov't Code § 84501 ................................................................. 7

Cal. Gov't Code § 84501(c)(1) ........................................................ 7

Cal. Gov't Code § 84502 ................................................................. 7

Cal. Gov't Code § 84502(a)(1) ........................................................ 7

Cal. Gov't Code § 84503 ................................................................. 7

Cal. Gov't Code § 84503(a) ............................................................. 7

Cal. Gov't Code § 84504 .............................................................. 7, 8

Cal. Gov't Code § 84504.1 .............................................................. 7

Cal. Gov't Code § 84504.1(b) .................................................... 7, 8, 18

Cal. Gov't Code § 84504.1(b)(1) ................................................... 7, 8

Cal. Gov't Code § 84504.2 .......................................................... 8, 18

Cal. Gov't Code § 84504.2(a)(4) ...................................................... 7

Cal. Gov't Code § 84504.3 ............................................................. 7, 8

Cal. Gov't Code § 84504.6 ............................................................. 7, 8

Cal. Gov't Code § 84505 .................................................................. 7

Cal. Gov't Code § 84506.5 ............................................................... 7

Cal. Gov't Code § 84509 .................................................................. 7

Cal. Gov't Code § 84510 .................................................................. 7

Cal. Gov't Code § 84511 .................................................................. 7

Cal. Gov't Code § 85704 ................................................................ 35

Fed. R. App. P. 4(a)(1)(A) ............................................................... 3

S.F. Charter § 6.102(10) ......................................................... 16, 39

S.F. Charter, appendix C, § C3.699-13 ...................................... 12

S.F. Charter, appendix C, § C3.699-13(c)(i)(3) ....................... 11

S.F. Code § 1.110(a) ...................................................................... 47

S.F. Code § 1.112(a)(1) ............................................................. 5, 6

S.F. Code § 1.161(a) ............................................................ *passim*

S.F. Code § 1.161(a)(1) .................................................... 9, 10, 18

S.F. Code § 1.161(a)(2) ................................................................ 18

S.F. Code § 1.161(a)(3) ................................................................ 18

S.F. Code § 1.161(a)(5) ................................................................ 10

S.F. Code § 1.162(a)(1) ................................................................ 10

S.F. Code § 1.162(a)(2) ................................................................ 18

S.F. Code § 1.162(a)(3)(A) ...................................................... 9, 10

S.F. Code § 1.168(a) ........................................................................ 12

S.F. Code § 1.168(b) ........................................................................ 12

S.F. Code § 1.170 ............................................................................ 11

S.F. Code § 1.170(a) ........................................................................ 11

S.F. Code § 1.170(b) ........................................................................ 11

S.F. Code § 1.170(c) ........................................................................ 11

S.F. Code § 1.170(g) ........................................................................ 12

S.F. Reg. 1.161-3 ...................................................................... *passim*

S.F. Reg. 1.161-3(a)(1) ............................................................. 10, 11

S.F. Reg. 1.161-3(a)(2) ............................................................. 10, 11

S.F. Reg. 1.161-3(a)(4) .................................................................... 9

## Other Authorities

ACLU, BRCA — *Statement of Support from the Ethics & Religious Liberty Commission, Southern Baptist Convent*, https://bit.ly/3xEs8QP ......................................................... 38

City and Cty. of S.F. Ethics Comm'n, *Independent Expenditures Ads Referring to City Candidates*, https://bit.ly/38l7KcE ................... 9

*Mozilla CEO Brendan Eich Resigns After Backlash Over Support For Prop 8 Same-Sex Marriage Ban*, CBS News (Apr. 3, 2014, 12:46PM), https://cbsn.ws/3ubwlsM ................................... 50

S.F. Dep't of Elections, *Future Elections*, https://sfelections.sfgov.org/future-elections ................................... 19

S.F. Ethics Comm'n, Affordable Homes Now San Francisco FPPC 410 Amendment, Filing ID # 203761806 (May 11, 2022), https://public.netfile.com/Pub2/ RequestPDF.aspx?id=203761806 ...................................... 19

S.F. Ethics Comm'n, Save John F. Kennedy Promenade FPPC 410,
    Filing ID 204096142 (June 30, 2022),
    https://public.netfile.com/Pub2/RequestPDF.aspx?id=204096142 .... 20

INTRODUCTION

The First Amendment guarantees a speaker's right to decide "what to say and what to leave unsaid." *Hurley v. Irish-American Gay, Lesbian and Bisexual Grp.*, 515 U.S. 557, 573 (1995) (internal quotation marks omitted). San Francisco, however, has its own ideas about what speakers should include in their speech, and about the primacy of its preferred words among those that others would choose to utter. The city not only forces speakers to displace part of their messages about candidates and measures with its own speech, but to make its message their speech's focus. And if the speaker has only time enough for the city's words, then so be it.

State and city laws not here at issue already require political committees to proclaim their top three donors in the course of their advertising. But what triggered this lawsuit is San Francisco's requirement that committees also discuss *their donors' donors* in their ads. Of course, all this compelled speech must precede whatever message the speaker wishes to express, and is in addition to another compelled message, instructing the audience where they might find the speakers' disclosure forms.

This is too much compelled speech, drowning out the speakers' messages and confusing rather than informing voters who might falsely believe that the secondary donors support ads that they might well oppose, if they're aware of them at all. The secondary donor speech requirement dissuades would-be donors from supporting speech with which their own donors would not wish to be associated. And it is also unnecessary, because San Francisco has better, less intrusive options to inform the electorate about who supports an ad.

San Francisco political activist Todd David regularly forms political committees that participate in city elections. Among these is San Franciscans Supporting Prop B ("SPB"), a committee designed to support a ballot measure reforming the city's Building Inspection Commission. Among SPB's supporters is the "Edwin M. Lee Asian Pacific Democrat Club PAC sponsored by Neighbors for a Better San Francisco Advocacy ("Ed Lee Dems"), a regular participant in city campaigns. But David could not authorize the committee to run its desired ads: the secondary donor speech rules rendered them either pointless or impossible, and Ed Lee Dems would have pulled its support had the ads run owing to the problems that would have been caused by

SPB linking itself to Ed Lee Dems' donors. The district court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction against the secondary donor regime, and the ads did not run.

The June 7 election is over, but the November 8 elections are around the corner, to be followed by at least one election each year. Plaintiffs will continue their attempt to speak about elections—and San Francisco's secondary donor speech mandate will continue to chill their efforts. The district court's order should be vacated.

## STATEMENT OF JURISDICTION

(a) The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as the dispute arises under the United States Constitution and 42 U.S.C. § 1983.

(b) Plaintiffs appeal from the district court's order denying their motion for a preliminary injunction. ER-3–15. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1292(a)(1).

(c) The order appealed from was entered on June 1, 2022. Plaintiffs filed their notice of appeal from that order on June 3, 2022. The appeal is timely pursuant to Fed. R. App. P. 4(a)(1)(A).

STATEMENT OF ISSUES

1. Whether San Francisco Campaign and Governmental Conduct Code ("S.F. Code") § 1.161(a) and San Francisco Ethics Comm'n Reg. ("S.F. Reg.") 1.161-3 violate the freedoms of speech and association protected by the First and Fourteenth Amendments;

2. Whether S.F. Code § 1.161(a) and S.F. Reg. 1.161-3 irreparably harm Plaintiffs by burdening their political campaign speech and right to freely associate with others;

3. Whether the balance of equities and public interest favor enjoining Defendants' secondary donor speech mandate; and

4. Whether Plaintiffs are entitled to a preliminary injunction against the application of S.F. Code § 1.161(a) and S.F. Reg. 1.161-3 to their political speech.

STATEMENT OF ADDENDUM

Pertinent constitutional provisions and statutes are included in an addendum below.

STATEMENT OF THE CASE

A.    Relevant state law background

California's Political Reform Act defines a committee as "any person or combination of persons who directly or indirectly" that, in one calendar year, receives at least $2,000 in contributions, makes at least $1,000 in independent expenditures, or contributes at least $10,000 "to or at the behest of candidates and committees." Cal. Gov't Code § 82013. A "'[p]rimarily formed committee' means a committee . . . which is formed or exists primarily to support or oppose" a single candidate or measure, or multiple candidates or measures "being voted upon in the same city, county, multicounty, or state election." Cal. Gov't Code § 82047.5.

A committee must file a "statement of organization . . . with the Secretary of State" and "the local filing officer," here the San Francisco Ethics Commission, "within 10 days" of qualifying as a committee. Cal. Gov't Code § 84101(a). San Francisco's law reflects this requirement, mandating that any statement required by the state must also be filed "in an electronic format with the Ethics Commission." S.F. Code §

1.112(a)(1).[1] Committees are required to file reports at various times. See Cal. Gov't Code §§ 84200 (semiannual); 84200.5 (preelection); 84200.8 (preelection).

Committees must report the total "contributions received during the period covered by the campaign statement and the total cumulative amount of contributions received." *Id.* § 84211(a). They must state the total contributions received by donors contributing $100 or more and then state the total given by those contributing less. *Id.* § 84211(c)–(d). And if any donor has given aggregate contributions of $100 or more to the committee, and that donor has given any money to the committee during that reporting period, the committee must give the donor's full name, street address, occupation, and employer, as well as the date and amount of the contribution during the period and the total contributions the person has given. *Id.* § 84211(f).

Contributions aggregating $1,000 or more given within 90 days of an election are "[l]ate contribution[s]," which committees must report within 24 hours of receipt, including "the date and amount of the late

---

[1] All references to the San Francisco Code are to the Campaign and Governmental Conduct Code, while all references to the San Francisco Regulations are to the Ethics Commission Regulations.

contribution" and the contributor's full name, "street address, occupation, and the name of the contributor's employer." *Id*. §§ 82036, 84203. Thus, in the months preceding an election, San Franciscans have near realtime access to information about a committee's top donors.

In addition to disclosing donors to the government, California has strict content and format requirements for communications by ballot measure committees. *See* Cal. Gov't Code §§ 84501-84511. For example, a communication must state, "'Ad paid for by'[,] followed by the name of the committee." *Id*. § 84502(a)(1). The committee's name must include the proposition number or letter, and whether the committee supports or opposes the measure. *Id*. § 84107.

After the disclaimer, committees must then announce their top donors: each communication must state, "committee major funding from' followed by the names of the top [three] contributors to the committee," *id*. § 84503(a), who have given "cumulative contributions of" $50,000 or more, *id*. § 84501(c)(1). The "committee major funding" statement and each of the primary contributors must begin on a separate line. *Id*. § 84504.2(a)(4). With the disclaimer announcing the

7

speaker's name, the three primary donors, and notice where to find financial disclosures, the required speech must take up at least 5 lines.

Strict requirements govern how this information must be communicated. *See id*. §§ 84504 (radio and telephone); 84504.2 (print ads); 84504.3 (electronic media); 84504.6 (online platforms). For video communications, a written banner with the disclosure is required. The banner must appear for at least 17% of the time that shorter ads run, and up to 33% of the time longer ads run. Cal. Gov't Code § 84504.1(b) ("at least five seconds of a broadcast of 30 seconds or less or for at least 10 seconds of a broadcast that lasts longer than 30 seconds)". The state requires that each "top contributor . . . be disclosed on a separate horizontal line" and the entire compelled message with top donor information must take up "one third . . . of the video display screen." *Id*. § 84504.1(b)(1).

B. San Francisco intensifies the compelled speech requirements

1. *Secondary donor discussion, lower reporting threshold, and website announcement*

Beyond its incorporation of the state's campaign finance reporting regime, San Francisco multiples the compelled speech requirements. San Francisco lowers the threshold for donor reporting, demanding

8

disclosure of donors who have given $5,000 or more, not just those who gave $50,000 or more. S.F. Code § 1.161(a)(1). In addition, not only must a speaker disclose its own name and the names of its top three donors in the course of an ad, but for each of the three top donors that is also a committee, the speaker must identify on the face of each communication that top donor's top two donors. *Id.* Except for audio and video communications, the ad must note the amount given by each of these up-to nine donors. *Id.*; S.F. Reg. § 1.161-3(a)(4).

After disclosing a committee's three largest donors, and each committee-donor's top two donors, political ads must further inform voters that the speaker's financial disclosures which includes the just-named top donors may be found at the San Francisco Ethics Commission's website. S.F. Code § 1.161(a)(1); *see* City and Cty. of S.F. Ethics Comm'n, *Independent Expenditures Ads Referring to City Candidates*, https://bit.ly/38l7KcE ("**Financial disclosures are available at sfethics.org**") (emphasis in original).

      2.    *Print communications (e.g., mailers and newspaper ads)*

San Francisco requires that print ads designed to be individually distributed, such as mailers and newspaper ads, must make the

required disclaimers in text at least as big as 14-point font. S.F. Code § 1.162(a)(3)(A) (requiring larger font than the state requirement that disclaimers on printed mailers and newspaper ads be at least 10-point font (Cal. Govt. Code § 84504.2)). Each of the primary donors "must be numbered by placing the numerals 1, 2, and 3, respectively, before each" donor's name. S.F. Reg. 1.161-3(a)(1). The words "contributors include" must follow each of the primary donors, that followed by the secondary donors who gave to that primary donor. *Id*. at 1.161-3(a)(2).

### 3. *Audio and video communications*

San Francisco requires that the disclaimer and on-communication disclosure be the first thing the audience for a political ad sees and hears. S.F. Code § 1.161(a)(5). Such ads must begin stating "Paid for by [committee's name]." S.F. Code § 1.162(a)(1). The on-communication disclosure follows: Committee major funding from [name(s) and dollar amount contributed of top three (3) donors of $5,000 or more], with each of those primary contributors followed by their "top two major contributors of $5,000 or more." S.F. Code § 1.161(a)(1). Audio and video communications must then state, "Financial disclosures are available at sfethics.org." S.F. Code § 1.162(a)(1).

10

The city also requires that video ads carry a written banner with the disclosure similar to that required for print ads. The "Committee major funding" statement and each of the primary donors "must be numbered by placing the numerals 1, 2, and 3, respectively, before each" donor's name. S.F. Reg. 1.161-3(a)(1). The words "contributors include" must follow each of the top three primary donors, followed by any committee donor's top two donors. *Id*. at 1.161-3(a)(2).

### 4. *Penalties and enforcement*

The city punishes violations of on-communication donor disclosure requirements with criminal, civil and administrative penalties. S.F. Code § 1.170. Knowing or willful violations are misdemeanors, punishable by fines up to $5,000 for each violation, up to six months in county jail, or both. *Id*. § 1.170(a). Failure to report contributions or expenditures is punishable by the greater of $5,000 or three times the amount not reported. *Id*. Intentional or negligent violations are punished with civil fines up to $5,000 for each violation or three times the amount not reported, whichever is greater. *Id*. § 1.170(b). Any other violations are punished administratively, with the same potential fines. *Id*. § 1.170(c); San Francisco Charter, appendix C, § C3.699-13(c)(i)(3).

11

A committee's "treasurer[] . . . may be held personally liable for violations" of the on-communication donor disclosure requirement. S.F. Code § 1.170(g).

Any individual "may file a complaint with the Ethics Commission, City Attorney, or District Attorney," who are required to investigate the complaint. S.F. Code § 1.168(a). Upon belief that a violation has occurred, the Commission must forward any complaint it receives to the district attorney and city attorney. San Francisco Charter, appendix C, § C3.699-13. "The City Attorney . . . may bring a civil action to enjoin violations of or compel compliance . . . ." S.F. Code § 1.168(b). If the city attorney and district attorney take no action, the Commission may conduct its own investigation and initiate an enforcement hearing. San Francisco Charter, appendix C, § C3.699-13.

C.    The previous Prop B litigation

Plaintiff Todd David has long been active in San Francisco politics, creating primarily formed and other committees to advocate about measures and candidates, including the San Francisco Parent PAC and Yes on Prop B, Committee in Support of the Earthquake Safety and Emergency Response Bond. ER 21 ¶¶ 23–24. Along with the latter

committee, David challenged San Francisco's secondary donor speech mandate in 2020. *Yes on Prop B v. City & Cty. of S. F.*, 440 F. Supp. 3d 1049 (N.D. Cal.), *appeal dismissed*, 826 F. App'x 648 (9th Cir. 2020).

The district court enjoined the disclosure requirement's application against the *Yes on Prop B* plaintiffs' smaller and shorter advertisements "because they le[ft] effectively no room for pro-earthquake safety messaging," but denied the injunction for larger and longer advertisements. *Id.* at 1051. The district court also declined to enjoin the scheme on its face. *Id.* at 1061–62.

On appeal, even though Yes on Prop B and David indicated they would participate in future elections, this Court declared the claim moot, offering that there was not "a reasonable expectation that the same complaining party will be subject to the same action again." *Yes on Prop B*, 826 F. App'x at 649 (internal quotation marks omitted).

D.    The secondary donor speech mandate's impact on Plaintiffs' speech

Todd David is also the founder and treasurer of SPB, a primarily formed independent expenditure committee he established to support the passage of San Francisco Charter Amendment B ("Prop B") in the June 7, 2022 election. ER-17 ¶¶ 2–4. SPB sought to support Prop B with

8.5 by 11 inch mailers; 2 by 2 inch ear ads, 5 by 5 inch ads, and 5 by 10 inch ads in newspapers; and internet ads of varying lengths, including 15-, 30-, and 60-second ads. *Id*. ¶ 5.

SPB raised $15,000, including $5,000 each from Concerned Parents Supporting the Recall of Collins, Lopez, and Moliga ("Concerned Parents"); BOMA SF Ballot Issues PAC; and Plaintiff Edwin M. Lee Asian Pacific Democratic Club PAC sponsored by Neighbors for a Better San Francisco Advocacy ("Ed Lee Dems"). *Id*. ¶ 6.

Two of these major SPB contributors, Concerned Parents and Ed Lee Dems, are themselves committees that have received $5,000 or more from donors, and thus triggered the secondary donor on-communication disclosure requirement. ER-18 ¶ 7. Concerned Parents received funding from Neighbors for a Better San Francisco Advocacy Committee ($468,800) and Arthur Rock ($350,000). ER-17 ¶ 6. Ed Lee Dems received funding from Neighbors for a Better San Francisco Advocacy Committee ($100,000) and David Chiu for Assembly 2022 ($10,600). *Id.*

The donor to Concerned Parents and Ed Lee Dems have not supported SPB in any way, nor have they indicated any such support to SPB. ER-20 ¶ 19. SPB has not communicated with them about its

messages, and the secondary donors have had neither any control over nor input into SPB's messages. *Id*. These donors to Ed Lee Dems and Concerned Parents have no control over SPB or any of its decisions, including what measures it might support. *Id*.

1. *The secondary donor speech mandate's impact on donations*

Ed Lee Dems works to empower young Asian Pacific Islander ("API") people in the political process and to support strong API leaders. ER-23 ¶ 3. It also sustains the API community by advocating for better neighborhood safety, public parks, public transportation, and public schools; for affordable housing and health care; and for civil rights, women's rights, and LGBT rights. *Id*. ¶ 4. Ed Lee Dems believes that Prop B will benefit the community by bringing needed reform to the Building Inspection Commission, and it believed that contributing to SPB would help get that message out. *Id*. ¶ 5.

Ed Lee Dems could not support SPB, however, if SPB had run any ads containing secondary donor disclosure—that is, ads that mention Ed Lees Dems's donors. ER-24–25 ¶ 11. Donors contribute to Ed Lee Dems to support any of its various goals and projects, and some donors do not support all its goals and projects. For example, Defendant City

Attorney David Chiu, whose Assembly committee would be a reportable secondary donor, is no longer in the Assembly, nor is he running for it. ER-24 ¶ 7. And as City Attorney, it would be illegal for him to take a position on ballot measures like Prop B. *See* S.F. Charter § 6.102(10). Disclosure of Chiu's Assembly committee as an SPB secondary donor would have misled voters into believing that the City Attorney is running for another office and improperly took positions on issues. ER-24 ¶ 7.

Because damaging the reputations of API elected leaders would conflict with its mission, Ed Lee Dems would have had to withdraw its support from SPB and ask that its donations be returned had SPB triggered San Francisco's on-communication secondary donor disclosure requirement. *Id.* ¶ 8. Moreover, it is generally hard to fundraise for a grassroots organization like Ed Lee Dems. *Id.* ¶ 9. Some of its donors would be upset to be named with respect to positions in which they have no interest or even oppose. *Id.* They would withdraw their support if they knew that Ed Lee Dems supported groups running ads that triggered such disclosures. *Id.*

16

SPB hoped to raise further funds, including additional $5,000+ contributions. ER-18 ¶ 8. But potential contributors expressed concern about the secondary donor disclosure requirements and were reluctant to contribute if their donors would be disclosed on SPB's ads. ER-20 ¶ 20.

>    2.    *The secondary donor speech mandate's impact on ad*
>           *effectiveness and practicality*

The addition of the secondary donor speech mandate render many ads impossible or ineffective. Online video advertising is one of the preferred advertising methods for ballot measure campaigns, especially for small ones. ER-28 ¶¶ 8–10. And shorter video ads, those lasting 15 seconds or less, are becoming the preferred length for such ads. *Id*. ¶ 11. But with the addition of the secondary donor speech mandate, the disclaimer requirements for SPB's ads, which must have disclosed four of the potential six secondary donors, would have taken 32–33 seconds to state, thus consuming 100% of SPB's 15-second and 30-second internet video ads and 53–55% of its 60-second ads. ER-19 ¶¶ 13–14.

And even if a speaker could afford a 60-second ad, it would be useless to getting out the speaker's chosen message. To be effective, an ad must get a viewer's attention within the first three to five seconds. ER-28

¶ 12; ER-31 ¶ 6. After that time, a viewer will change the channel, scroll down the page, or otherwise avoid the ad. ER-28–29 ¶¶ 12–15; ER-32–34 ¶¶ 11–18.

Besides the spoken disclaimer swallowing at least half of an ad's dialogue, a written disclaimer must consume at least 33% of the screen during the first 5 seconds of the 15-second video ads and the first 10 seconds of the longer ads. S.F. Code § 1.162(a)(2); Cal. Gov't Code § 84504.1(b). San Francisco's requirements result in internet video ads that are "unlikely to capture a user's attention," such that speakers are at best "paying for [viewers to see and hear the City's] statement and not for the campaign's message." ER-34 ¶ 19.

The city's requirements similarly cause the disclaimers to overwhelm newspaper ads. These must include a line or two stating that the committee made the ad and announcing that donor information will follow, followed by one to three lines for each of up to three primary donors and their donors, and then a line directing readers to the Ethics Commission's website for that and other donor information. S.F. Code § 1.161(a)(1)–(3); Cal. Gov't Code § 84504.2. Of SPB's newspaper ads, the disclaimer would have consumed 100% of the two by four inch

18

newspaper ads, 70% of the five by five inch ads, and 35% of the five by ten inch ads. ER-19–20 ¶¶ 16–17. And the disclaimer would consume 23% of an 8.5 by 11 inch mailer. ER-20 ¶ 18. The city's secondary donor disclosure requirements would have forced SPB to change its ads, cutting out part of the message that it wanted to share. For shorter ads, like small newspaper ads, these requirements would have forced SPB to forego sharing its message altogether. ER-18 ¶ 9.

> 3. *The secondary donor speech mandate's continuing impact on Plaintiffs*

The June election is over, but the secondary donor disclosure requirement continues to harm Plaintiffs. San Francisco will continue to hold elections. S.F. Dep't of Elections, *Future Elections*, https://sfelections.sfgov.org/future-elections. And as they have before, Plaintiffs will continue to participate in them.

Todd David is already participating in two primarily formed committees for the November, 2022 election: he is an additional principal officer of Affordable Homes Now San Francisco, *see* S.F. Ethics Comm'n, Affordable Homes Now San Francisco FPPC 410 Amendment, Filing ID # 203761806 (May 11, 2022), https://public.netfile.com/Pub2/ RequestPDF.aspx?id=203761806, at 2; and the Treasurer and Principal

of Save John F. Kennedy Promenade, *see* S.F. Ethics Comm'n, Save

John F. Kennedy Promenade FPPC 410, Filing ID 204096142 (June 30,

2022), https://public.netfile.com/Pub2/RequestPDF.aspx?id=204096142

at 1. David will continue creating primarily formed committees in

future elections, and will seek to share ads and communications

substantially and materially similar to those that the Prop B

committees wanted to share in 2020 in this year's June election. But

David and his committees will be unable to share their messages while

San Francisco's requirements remain in place. ER-21 ¶ 25. The city's

on-communication secondary donor disclosure requirements will

continue to pose problems in future elections, as it has been in past

elections. *Id.* ¶ 23. David fears that the city would penalize him if he

publishes ads that violate the secondary donor speech mandate. ER-20–

21 ¶ 22.

Ed Lee Dems is also a familiar player in the city's political landscape.

ER-23 ¶¶ 3–4. It has donated to other committees, including the SF

Workforce Housing Alliance PAC 2020, Alice B. Toklas Lesbian & Gay

Democratic Club PAC, the San Francisco Democratic County Central

Committee, Yee for Controller 2014, Jones for Insurance Commissioner

2014, Ting for Assembly 2014, and Jones for Attorney General 2018. ER-24–25 ¶ 11. And the Club intends to engage in materially and substantially similar activity in the future—donating to primarily formed committees like SPB in future elections, which would share ads about candidates and ballot measures. *Id*. In particular, Ed Lee Dems has had a long relationship with Todd David and his committees, and plans to similarly support his future committees as well as similar committees whose advocacy efforts align with its values. ER-23–24 ¶ 6. But Ed Lee Dems cannot support various committees as long as San Francisco requires on-communication secondary donor disclosure. *Id*.

E.    Procedural history

On May 11, 2022, Plaintiffs brought this lawsuit in the United States District Court for the Northern District of California against City Attorney David Chiu, the San Francisco Ethics Commission, San Francisco District Attorney Chesa Boudin and the City and County of San Francisco, seeking declaratory and injunctive relief, as well as nominal damages, pursuant to 42 U.S.C. § 1983. ER-45–58. Plaintiffs challenge S.F. Code § 1.161(a) and S.F. Reg. 1.161-3's secondary donor

speech mandate, on its face and as-applied, for violating their rights to free speech and association.

The following day, upon the case's judicial assignment to a magistrate judge, Plaintiffs moved for a temporary restraining order and preliminary injunction. ER-64. Defendants declined to consent or accept the magistrate judge's jurisdiction, and instead moved to treat the case as related to *Yes on Prop B. See* Dist. Ct. No. 20-630, Dkt. 45. Notwithstanding Plaintiffs' timely opposition, *id.* Dkt. 47, the district court declared the cases related and reassigned the matter. ER-66. The district court heard argument on Plaintiffs' motion on May 26, 2022. ER-67.

On June 1, 2022, the district court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction. Among other arguments, Plaintiffs claimed that the Supreme Court's opinion in *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021) ("*AFPF*") overruled the district court's approach in *Yes on Prop B*. But the district court offered that it had "already rejected Plaintiffs' arguments" in *Yes on Prop B*, and that "intervening law ha[d] not changed and the facts are not meaningfully distinct." ER-4; ER-6.

22

The district court rejected Plaintiffs' argument that strict scrutiny governs this challenge, ER-10, and further offered that while "six justices in the [*AFPF*] majority differed on how to frame the standard [for reviewing compelled disclosure requirements], they did not disturb the exacting scrutiny formulation." *Id.* (citation and footnote omitted). The district court then limited *AFPF* to its facts and asserted that the governmental interest in informing voters who is speaking or closely associated with a speaker is "far more substantial than the state's interest . . . of administrative ease in investigating fraud." ER-12. It also rejected the notion that the "Supreme Court's statements in *AFPF* that exacting scrutiny requires tailoring [] suggest[s] that a law cannot stand if hypothetical alternatives could also inform voters." *Id.*

The district court labeled the declarations reporting the secondary donor speech mandate's negative impact on donations "conclusory and speculative," and offered that the record contained "no concrete evidence" of reluctance to donate. ER-14. The district court reached this conclusion notwithstanding Plaintiffs' declarations that they refrained from speaking because of the impact that secondary disclosures would have on their donors, including Ed Lee Dems' declaration that the

group would withdraw its support of SPB and demand a refund if SPB ran ads disclosing Ed Lee Dems' donors.

Finally, the district ruled against Plaintiffs on the remaining preliminary injunction factors. It held that Plaintiffs were not irreparably harmed because the burden imposed was "'modest' and the government has an important interest in informing voters before an election." ER-15. "For similar reasons . . . the balancing of the equities and the public interest [does not] favor[] an injunction." *Id*.

Plaintiffs noticed their appeal of the district court's order on June 3, 2022. ER-59–61. On June 7, 2022, the district court entered a stipulated order staying proceedings pending this appeal's outcome. ER-68.

## SUMMARY OF THE ARGUMENT

Plaintiffs do not challenge San Francisco's requirement that speakers provide a brief disclaimer announcing their responsibility for an ad's content, a requirement that might pass exacting scrutiny. Nor do Plaintiffs challenge the requirement that they disclose their donors *to the city*. But the city's "frankendisclaimsure" speech mandate—that speakers focus their ads on revealing the identities of up to six donors to their donors—is, at bottom, a measure compelling speakers to radically

24

alter their speech with a message they otherwise would not deliver. This classic compelled speech obligation is subject to strict scrutiny, which it fails.

Indeed, this speech mandate would also fail exacting scrutiny, because no sufficiently important interest, let alone a compelling one, supports it. However important the city's informational interest might be, a donor's donor link to an ad is so attenuated as to positively mislead voters. And even if that sort of information should be communicated to voters, the city's secondary donor rule is not properly tailored to advancing that goal in light of the serious disruption and confusion sown by requiring that information be spoken or published in the context of an ad.

The city cannot carry its burden in justifying its secondary donor compelled speech mandates. And considering the ongoing irreparable harm to Plaintiffs in their exercise of core political speech and associational rights, the balance of equities, and the strong public interest in defending fundamental rights, the district court's order should be reversed.

STANDARD OF REVIEW

"We review the denial of a preliminary injunction for abuse of discretion and the underlying legal principles de novo." *Hall v. United States Dep't of Agric.*, 984 F.3d 825, 835 (9th Cir. 2020) (internal quotation marks omitted).

ARGUMENT

Plaintiffs are entitled to a preliminary injunction because (1) they "are likely to succeed on the merits;" (2) they will "suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "When the government is a party, these last two factors merge." *East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 975 (9th Cir. 2021) (citations omitted). The Court's "analysis is substantially identical for the [preliminary] injunction and the TRO." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Under this Court's "sliding scale" approach, "a stronger showing of one element may offset a weaker showing of another." *Ariz. Democratic*

*Party v. Hobbs*, 976 F.3d 1081, 1086 (9th Cir. 2020) (internal quotation marks omitted). Plaintiffs may obtain a preliminary injunction if their appeal at least presents a "substantial case on the merits" or "serious legal questions," *Leiva-Perez v. Holder*, 640 F.3d 962, 965–68 (9th Cir. 2011), provided "that the balance of hardships tips sharply in [their] favor," *id.* at 970.

I.  PLAINTIFFS ARE LIKELY TO ESTABLISH THAT SAN FRANCISCO'S COMPELLED SPEECH FAILS FIRST AMENDMENT SCRUTINY.

San Francisco's demand that speakers reveal their donors' donors in political advertising, and make that information central to the ads, is a form of compelled speech that cannot survive First Amendment scrutiny. It goes beyond any disclaimer or disclosure that the Supreme Court has ever approved, and it is not tailored to any interest that might justify a speaker's right to decide "what to say and what to leave unsaid." *Hurley*, 515 U.S. at 573 (quotation marks omitted); *see also Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781, 797 (1988) (holding that "freedom of speech" is "a term necessarily comprising the decision of both what to say and what *not* to say" (emphasis in original)). "Mandating speech that a speaker would not otherwise make," as the Code does here, "necessarily alters the content of the speech." *Riley*, 487

27

U.S. at 795. In such situations, "the First Amendment direct[s] that government not dictate the content of speech absent compelling necessity, and then, only by means precisely tailored." *Id.* at 800. While strict scrutiny should apply here to this content-altering compelled speech, San Francisco's on-communication disclosure requirements cannot withstand the tailoring required under either strict or exacting scrutiny.

A. Strict scrutiny applies to San Francisco's content-based, compelled messaging

Although the Supreme Court has applied exacting scrutiny to true disclaimer and disclosure requirements, strict scrutiny must apply to the hybrid that San Francisco has created. The Supreme Court recently signaled that it may be increasing the scrutiny given to any disclosure regime. *Compare AFPF*, 141 S. Ct. at 2383 (Roberts, C.J., op.) (exacting scrutiny applies to disclosure requirement), *with id.* at 2390 (Thomas, J., concurring) (strict scrutiny applies to all disclosure requirements), *with id.* at 2391 (Alito, J., concurring) (withholding judgment whether strict or exacting scrutiny applies).

But even prior to *AFPF*, strict scrutiny and not exacting scrutiny was required for the hybrid of disclosure and disclaimers at issue here.

Disclaimers and disclosure are terms of art, and their proper demarcation is critical to constitutionally applying them. In the jargon of campaign regulation, disclaimer statutes require that a communication state who made it—who "is responsible for the content of th[e] advertising," *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 366 (2010), while disclosure statutes require that speakers report *to the government* their expenditures and contributions, *Buckley v. Valeo*, 424 U.S. 1, 63 (1976) (per curiam).

So defined, disclosure and disclaimer requirements "impose no ceiling on campaign-related activities." *Citizens United*, 558 U.S. at 366. That is, a true disclaimer is short, little more than a two-or three-second statement about who made the ad. And disclosure is information that the speaker gives to the government, that it may then make available to the public using its own resources. Given that true disclosure has no effect on a message's length, and a true disclaimer is so short, neither acts to "impose [a] ceiling on campaign-related activities," *id.*, or to "reduce[] the quantity of expression," *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 197 (2014).

29

But San Francisco's hybrid disclaimer/disclosure requirement does reduce the quantity of discussion. It consumes significant amounts of time and space, often practically displacing whatever the speaker would choose to say, and fundamentally altering an ads focus. Crossing the compelled speech line, the City must meet strict scrutiny's demands for a "compelling interest and . . . least restrictive means." *McCutcheon*, 572 U.S. at 197.

The district court's reasoning that the Supreme Court has applied exacting scrutiny to a disclosure rule in *Doe v. Reed*, 561 U.S. 186 (2010), and to a disclaimer rule in *Citizens United,* ER-10, overlooks the significant, fundamental differences between these true disclaimer and disclosure requirements and San Francisco's challenged mandate. *Doe* concerned the disclosure of petition signatures in response to public records requests. The *Citizens United* disclaimer lasted four seconds, and requires the speaker only to reveal the person or entity "responsible for the content of this advertising." 558 U.S. at 366 (internal quotation marks omitted). Neither involved the lengthy compulsion of speech, to the point where a disclaimer becomes an ad's dominant feature and neither involved the disclosure of donors (let alone secondary donors) to

the public as part of the ad. Indeed, to the extent *Citizens United* upheld a separate contributor disclosure requirement, that requirement was to "file a disclosure statement with the FEC," *id.* (citation omitted), not to have it displace the ad's script.

San Francisco's secondary donor on-communication speech mandate is neither a true *Citizens United* disclaimer nor true *Doe* disclosure requirement. It may be a relatively new or rare regulatory creature, but it is a species of compelled speech. The district court erred in not recognizing that this hybrid disclaimer and disclosure regime, given its subject matter, purpose, impact on the speaker's message, and resultant length, requires strict rather than exacting scrutiny.

Moreover, strict scrutiny applies as San Francisco has devised a content-based restriction on speech. Compelling a speaker to share the government's message—here, a message about the relevance and potential influence of secondary donors—"necessarily alters the content of the speech." *Riley*, 487 U.S. at 795; *see id.* at 800 (requiring "precisely tailored" to a "compelling necessity"). "[P]roscribing the *content* of an election communication is a form of regulation of campaign activity

subject to traditional strict scrutiny. *ACLU of Nev. v. Heller*, 378 F.3d 979, 987 (9th Cir. 2004) (footnote omitted).

    B.    San Francisco's compelled messaging about secondary donors serves neither a substantial nor compelling interest.

Under strict scrutiny, San Francisco's compelled speech requirements must "promote[] a compelling interest and [be] the least restrictive means to further [that] interest." *McCutcheon*, 572 U.S. at 197. But San Francisco's secondary donor speech mandate cannot even pass exacting scrutiny, which requires the city to establish "a substantial relation between the disclosure requirement and a sufficiently important governmental interest." *AFPF*, 141 S. Ct. at 2383 (Roberts, C.J., opinion) (quotation marks omitted). And San Francisco's law cannot escape the doubts raised if less restrictive means exist under either of these standards. *Id.* at 2386 (majority op.) (requiring that the government "demonstrate its need for" more burdensome requirements "in light of any less intrusive alternatives"); *cf. McCutcheon*, 572 U.S. at 218 ("In the First Amendment context, fit matters, [e]ven when the Court is not applying strict scrutiny . . . .").

The Supreme Court has recognized only three interests as substantial enough to save disclosure laws under exacting scrutiny:

fighting actual or apparent corruption, combatting circumvention of contribution limits, and the informational interest. *Buckley*, 424 U.S. at 66–68. None of these could support San Francisco's law.

The anticircumvention interest exists only as a corollary to the anticorruption interest. *Republican Party v. King*, 741 F.3d 1089, 1102 (10th Cir. 2013) (rejecting any "freestanding" anti-circumvention interest where the anti-corruption interest does not exist). And the anticorruption interest cannot exist in the context of independent expenditures, which by definition cannot pose the risk of dollars being exchanged for political favors. *Citizens United*, 558 U.S. at 357. "Congress may target only a specific type of corruption—'quid pro quo' corruption." *McCutcheon*, 572 U.S. at 235. Moreover, to the extent Plaintiffs challenge the secondary donor speech mandate's application to ballot measures, the city can have no anti-corruption interest because "[t]he risk of corruption perceived in cases involving candidate elections is not present in a popular vote on a public issue." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 352 n.15 (1995) (citations and quotation marks omitted).

As for the informational interest, it is not open-ended. Government has no interest in informing the public about whatever might strike it or the government's fancy. "The simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit." *Id*. at 348.

Disclosure laws justified under the government's informational interest must inform voters "concerning those who support" a ballot measure or candidate before the voters, *Buckley*, 424 U.S. at 81, not those who support those who support the measure or candidate. It does not support doxing the speaker's supporters or those only tertiarily involved with the speaker. Thus courts must analyze whether there exists in a given case a "public interest in knowing who is spending and receiving money to support or oppose a ballot issue." *Sampson v. Buescher*, 625 F.3d 1247, 1256 (10th Cir. 2010); *see also Buckley*, 424 U.S. at 66 (noting interest in "where political campaign money comes from" (quotation marks omitted)); *Family PAC v. McKenna*, 685 F.3d 800, 806 (9th Cir. 2012) ("an interest in learning who supports and opposes ballot measures").

And to ensure that disclosure requirements actually get at monetary support for a candidate or ballot measure, courts have emphasized the importance of limiting disclosure to contributions earmarked to support such advocacy. *See Van Hollen v. Fed. Election Comm'n*, 811 F.3d 486, 497 (D.C. Cir. 2016); *Indep. Inst. v. Williams*, 812 F.3d 787, 797 (10th Cir. 2016); *Lakewood Citizens Watchdog Grp. v. City of Lakewood*, No. 21-cv-01488-PAB, 2021 U.S. Dist. LEXIS 168731, at *33–36 (D. Colo. Sep. 7, 2021); *Indep. Inst. v. Fed. Election Comm'n*, 216 F. Supp. 3d 176, 191 (D.D.C. 2016) (three judge panel) (noting that requirements tailored to donors giving "for the specific purpose of supporting the advertisement").

Nor can San Francisco argue that its secondary donor speech mandate is needed to expose hidden contributions funneled through multiple committees. California law already requires donations given to a committee, but earmarked to be forwarded to another committee or for the support a ballot measure or candidate, must be reported by all parties as a contribution from the original source of the contribution to that final committee, ballot measure, or candidate. Cal. Gov't Code § 85704.

35

The challenged provisions do not serve the informational interest. Section 1.161 forces speakers to include a long statement about the top two donors to each of their top three donors if any of those are committees. S.F. Code § 1.161(a)(1) (defining top donors as those giving $5,000 or more). But San Francisco does not require that the secondary donors contribute to the primary donors with the goal of supporting the ads that reference them as supporters. The district court attempted to bolster S.F. Code § 1.161's governmental interest by declaring that "assist[ing] voters in determining who is speaking . . . is far more substantial than the state's interest in *AFPF* of administrative ease in investigating fraud," but cited to no authority as to why that must be so. ER-12. Indeed, S.F. Code § 1.161(a) does not even require that the secondary donors have knowledge, much less a suspicion, that their donations might eventually support the ad naming them.

The theory of secondary donor disclosure in an ad itself—that secondary donors must support the ads funded by their donations' recipients—assumes too much. Secondary donors may donate to a speaker's donors for any number of reasons. For example, some secondary donors may intend to support the efforts of Ed Lee Dems to

promote the representation of Asian-Pacific Islanders in San Francisco politics and leadership; to further civil rights, women's rights, and LGBT rights; to support public schools, public transportation, and local parks; and to secure access to affordable housing and health care. ER-23 ¶¶ 3–4. When they give the organization $5, $50, or $5,000, they may have no clue that Ed Lee Dems cares anything about a particular proposition, such as Prop B, which may not even exist as a potential ballot measure at the time they give. Indeed, some of Ed Lee Dems donors might disagree with the group with respect to some of its positions, including its positions supporting or opposing particular campaigns. A donor who generally approves of Ed Lee Dems' efforts to promote access to affordable housing might not share the group's position that Prop B advanced that goal, or might have some personal stake in the measure's defeat.

Accordingly, the disclosure of secondary donors, and their attenuated linking to ads run by groups that they only indirectly support, may well defeat an informational interest by confusing or misleading the public. Upholding an FEC regulation's earmarking requirement, the D.C. Circuit noted "the intuitive logic" that an expansive donor disclosure

37

regime would spread misinformation. *Van Hollen*, 811 F.3d at 497–98. The court contemplated a "not unlikely scenario" where a partisan Republican gave to the American Cancer Society's general mission "to fund the ongoing search for a cure," yet found herself reported as supporting Cancer Society ads that attacked "Republicans in Congress" whose deficit-reducing efforts would mean "fewer federal grants for scientists studying cancer." *Id.* at 497. "Wouldn't a rule requiring disclosure of [the] Republican donor, who did *not* support issue ads against her own party, convey some misinformation to the public about who *supported* the advertisements?" *Id.* (emphasis in original).[2]

Confusion is inevitable when secondary donors are included directly on an ad's face, and given billing similar to that of the speaker and its actual financial supporters. As the district court noted, "[b]ombared by so many issues, voters may struggle to cast an informed and meaningful vote if they do not know who is speaking." ER-11. And it is only natural

---

[2] Likewise, if the Southern Baptist Convention were to donate to the ACLU for its efforts in fighting the patentability of human genetic material, it would be an exaggeration to conclude that it supported an ad run by the ACLU in favor of legal abortion. *See* ACLU, *BRCA — Statement of Support from the Ethics & Religious Liberty Commission, Southern Baptist Convention*, https://bit.ly/3xEs8QP (noting ideological alliance on issues).

to assume that individuals listed on the face of a communication support it, potentially causing all kinds of complications. Ed Lee Dems would have pulled its support of SPB had SPB run ads, which would have been required to identify Ed Lee Dems' donor, David Chiu for Assembly 2022, as a secondary donor. When Chiu's assembly committee donated to Ed Lee Dems, it is highly unlikely that Mr. Chiu knew that Ed Lee Dems would be donating to SPB, or that his committee might be listed as a donor on one of SPB's ads. ER-24 ¶ 7. Especially considering its mission of supporting API officeholders, Ed Lee Dems could not take the chance that the voters might be confused into thinking that Mr. Chiu is running for another office and improperly taking positions on city issues, which would itself constitute a violation of San Francisco law. *Id.*; *see also* S.F. Charter § 6.102(10).

Rather than advancing an informational interest, the secondary donor speech mandate subverts it by undermining voters' efforts "to place [ballot measures] in the political spectrum," *Buckley*, 424 U.S. at 67, to understand which groups and individuals in the political spectrum support and do not support the measure. *See also id.* at 81 (noting that the interest must "help[] voters to define more of the

[measure's] constituencies"); *ProtectMarriage.com - Yes on 8 v. Bowen*, 752 F.3d 827, 832 (9th Cir. 2014) ("where a particular ballot measure or candidate falls on the political spectrum").

And the secondary donor speech mandate subverts the informational interest not only by connecting non-supporters to ballot measures. By occupying so much time and space on ads as to reduce or entirely suppress the sharing of messages, the mandate reduces the amount of speech linked to anyone, depriving voters of information about ballot measures and candidates, and about the identities of their supporters and opponents.

Indeed, the city's regime rests on an unfounded presumption about voters' informational priorities that many voters probably do not share. Campaign speech regulators may be fascinated by ever-more and deeper disclosures, but the people who consume ads might be more interested in the substance of campaign speech itself. Voters might well be more interested in arguments about whether to support or oppose a ballot measure, in receiving information about the measures themselves, than in receiving secondary donor information that they might well (properly) regard as misleading or irrelevant. *Cf. Cook v.*

*Gralike*, 531 U.S. 510, 525 (2001) ("by directing the citizen's attention to the single consideration of the candidates' fidelity to term limits, [ballot] labels imply that the issue is an important—perhaps paramount—consideration in the citizen's choice") (internal quotation marks omitted).

True disclosure regimes do not raise these concerns. Speakers disclose the information to the government, and the government can make it available to whoever may be interested in it. If the information is damning, opponents are free to exploit it in counter-speech. But on-communication disclosure mandates make assumptions about the speakers' audience, and draw what is at least an improper equivalence between the First Amendment interest in political expression and the regulatory interest in secondary disclosure, if not an outright elevation of the latter interest over that secured to the people by a fundamental constitutional right.

The city's conception of the informational interest in secondary donors, as something that is at least the equal of the people's First Amendment interest in political speech, is excessive. And regardless of

whether the informational interest is "compelling" or "sufficiently important," San Francisco's challenged provisions do not advance it.

## C. The secondary donor speech mandate is poorly tailored to any informational interest.

Even if San Francisco could demonstrate a substantial relation between the challenged regime and the informational interest, "a substantial relation to an important interest is not enough to save a disclosure regime that is insufficiently tailored." *AFPF*, 141 S. Ct. at 2384. Narrow tailoring is demanded "where First Amendment activity is chilled—even if indirectly—[b]ecause First Amendment freedoms need breathing space to survive." *Id*. (quotation marks omitted) (alteration in original).

Apart from dissuading donors, such as Ed Lee Dems, from enabling the speech of their intended recipients, the secondary donor speech mandate frustrates speakers' ability to run effective ads even with the money that they do manage to receive. Given speakers' limited resources (and the natural limits of an audience's attention span for lengthy ads), San Francisco's compelled speech requirements force speakers to decide what part of their message they will lose to make room for the city's message. The message that the city mandated for

SPB would have consumed 100% of a 15-second internet video ad, 100% of a 30-second ad, and 53-55% of a 60-second ad, as well as a third to half the screen at the beginning of each ad for the written requirements, ER-19 ¶¶ 14–15; 100% of a two by four inch newspaper ad, about 70% of a five by five ad, and about 35% of a five by ten inch ad, ER-19–20 ¶¶ 16–17; and about 23% of the face of an 8.5 by 11 inch mailer, ER-20 ¶ 18. And SPB only had four secondary donors—other speakers might have six.

With respect to many ads, San Francisco forces individuals and groups to give up speaking altogether. And with respect to all ads, it violates a speaker's right to decide "what to say and what to leave unsaid." *Hurley*, 515 U.S. at 573 (quotation marks omitted). "No governmental interest that has been suggested is sufficient to justify the restriction on the quantity of political expression . . . ." *Buckley*, 424 U.S. at 55.

Even for longer five by ten inch ads, the city's demanded disclosure and disclaimer "is unduly burdensome," as it "drown[s] out" the Committee's message. *Am. Bev. Ass'n v. City & Cty. of S.F.*, 916 F.3d 749, 761 (9th Cir. 2019) (Ikuta, J., concurring); *id.* at 757 (en banc).

When San Francisco's requirements consume 23-35% of even SPB's longer ads, and swallow entirely SPB's shorter ads, the city cannot claim that its secondary donor speech mandates "'impose no ceiling on campaign-related activities,' [or that its requirements] 'do not prevent anyone from speaking'." *Citizens United*, 558 U.S. at 366 (citations omitted). Like the expenditure limits at issue in *Buckley*, San Francisco's requirements "necessarily reduce[ ] the quantity of expression by restricting the number of issues discussed, the depth of their exploration, and the size of the audience reached." *McCutcheon*, 572 U.S. at 197 (alteration in original).

San Francisco's laws fail even exacting scrutiny. Exacting scrutiny sets a standard that is at least equal to, if not higher standard than the intermediate scrutiny standard that protects commercial speech. *Compare AFPF*, 141 S. Ct. at 2383 (requiring a substantial relation to an important governmental interest and narrow tailoring), *with Am. Bev. Ass'n*, 916 F.3d at 755–56 (discussing *Zauderer* test). This Court's en banc decision in *American Beverage* is instructive.

*American Beverage* addressed San Francisco's demand that advertisements for sugar-sweetened beverages carry a health warning.

44

Applying the *Zauderer* test for "compelled commercial speech," this Court examined whether San Francisco's disclosure requirement was "unduly burdensome." *Am. Beverage*, 916 F.3d at 756. As is the case under all versions of heightened scrutiny, the city had the burden of demonstrating that its law was "neither unjustified nor unduly burdensome." *Id.* The en banc court concluded that a disclosure requirement taking only 20% of the speaker's message was "not justified when balanced against its likely burden on protected speech." *Id.* at 757.

But the burden imposed in *American Beverage Association*, taking up 20% of the message, was smaller than the *least* burdensome requirement that the city imposed on Plaintiffs' political speech. No less than in *American Beverage Association*, the city's requirements act to "'drown[] out' Plaintiffs' messages and 'effectively rule[] out the possibility of having [an advertisement] in the first place.'" *Id.* (alterations in original).

As San Francisco's requirements directly chill campaign speech, the city must "demonstrate its need for universal production in light of any less intrusive alternatives." *AFPF*, 141 S. Ct. at 2386. "The availability

of the less speech-restrictive reporting and disclosure requirement confirms that a statute like the one here at issue cannot survive the applicable narrow tailoring standard." *Heller*, 378 F.3d at 995.

The internet did not exist when *Buckley* upheld the Federal Election Campaign Act's disclosure provisions. But though we no longer live in 1976, when accessing the disclosure information required obtaining documents from Washington, D.C. and compiling information from paper records, *Buckley* gave no hint of a need for on-communication disclosure. Inquisitive San Francisco voters need only visit the Ethics Commission's offices near City Hall, where all the "[c]ampaign statements are to be open for public inspection and reproduction." S.F. Code § 1.110(a). In fact, they do not need to even leave their home or campaign office to discover their ideological opponents' doings, as the Commission is required to "make campaign statements available through its website." *Id*.

And if a list of a speaker's top contributors and its contributors' contributors were really necessary to serve an informational interest, then San Francisco might follow the state's example requiring that a committee addressing state measures and candidates "maintain an

accurate list of the committee's top . . . contributors" and provide that to the state ethics commission. Cal. Gov't Code § 84223(a). The city's Ethics Commission could then make it publicly "available through its website." S.F. Code § 1.110(a); *see Riley*, 487 U.S. at 800 (noting that the government could "itself publish [any] financial disclosure forms it requires," thus "communicat[ing] the desired information to the public without burdening a speaker with unwanted speech").

Plaintiffs do not "suggest that a law cannot stand if hypothetical alternatives could also inform voters." ER-12. Some hypothetical alternatives might well be poorly tailored, or inadequate to advance the city's compelling or sufficiently important interests. But the city, not any speaker, bears the burden of showing that the city's solution is properly tailored. Given the city's severe imposition on Plaintiffs' core political speech, and on the public's right to receive that speech, the city's justification for choosing its approach over other, less harmful alternatives should be meaningful. An argument that secondary donor disclosure must appear on advertising because it is easier for voters to get that information on ads than from the Commission's website is insufficient. Mere "convenience" is too weak an interest to justify an

infringement on core First Amendment rights. *AFPF*, 141 S. Ct. at 2387 (noting that "[m]ere administrative convenience does not remotely 'reflect the seriousness of the actual burden," and "the weakness of the [government's] interest in administrative convenience").

"[P]olitical speech must prevail against laws that would suppress it, whether by design or inadvertence." *Citizens United*, 558 U.S. at 340. Whether under strict scrutiny, as in *Heller*, or under exacting scrutiny, San Francisco's on-communication secondary donor disclosure fails tailoring and is facially unconstitutional.

D.   San Francisco's compelled messaging violates Plaintiff's freedom of association.

In driving away potential donors who do not wish disclose their own donors, or who do not wish to be named as someone else's secondary donors, San Francisco forces Plaintiffs and others to give up their First Amendment right to freely associate with others. "[T]he right of association is a basic constitutional freedom that is closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society." *Fed. Election Comm'n v. Nat'l Right to Work Comm.*, 459 U.S. 197, 206–07 (1982) (citation and quotation marks omitted). "Protected association furthers a wide variety of

political, social, economic, educational, religious, and cultural ends, and is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." *AFPF*, 141 S. Ct. at 2382 (quotation marks omitted). In particular, "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action." *Id*. (quotation marks omitted).

As discussed above, Ed Lee Dems has donors who would be upset to have their names listed on ads advocating positions in which they have no interest or even oppose. ER-24 ¶ 9. They would withdraw their funding, making it harder for the organization to pursue its many other goals. *Id*.

The district court brushed aside Plaintiffs' assertion that donors are concerned about donating when they could unknowingly be listed on a communication they did not intend to support, ER-14, suggesting that *AFPF*'s record of "threats, harassing calls, intimidating and obscene emails, and even pornographic letters" exemplifies a threshold level of deterrence, ER-13 (quoting *AFPF*, 141 S. Ct. at 2381). But Ed Lee Dems and SPB are in direct contact with their donors, and hear their

concerns, which need not be similar to those experienced in *AFPF* to deter donations. Many donors are dissuaded from associating long before the penalty for doing so entails "bomb threats, protests, stalking, and physical violence." *AFPF*, 141 S. Ct. at 2388.

Moreover, it is not for the court to determine whether an association is sufficiently controversial for potential donors to be justifiably deterred by its exposure. ER-14 ("[I]t is difficult for the Court to infer that the Building Inspection Commission is a controversial topic about which SPB's secondary contributors invariably have strong views"). Many viewpoints that are hotly debated today were unremarkable in the recent past. In 2008, the same California voters who sent President Obama to the White House enacted Proposition 8, banning same-sex marriage, by a wide margin. Six years later, Mozilla's CEO was forced to resign when his $1,000 donation to that campaign became widely known. *Mozilla CEO Brendan Eich Resigns After Backlash Over Support For Prop 8 Same-Sex Marriage Ban*, CBS News (Apr. 3, 2014, 12:46 PM), https://cbsn.ws/3ubwlsM.

In any event, SPB donor Ed Lee Dems declared its intent to withdraw its support of the committee if it were to cause the secondary

disclosure of David Chiu for Assembly 2022. The problems that would be caused by that disclosure may not be of the same kind or degree as those experienced by AFPF's donors, but they are real nonetheless and sufficient to deter association. More to the point, the city lacked a constitutionally adequate reason to put the Plaintiffs in that predicament.

## II. THE CHALLENGED PROVISIONS IRREPARABLY HARM PLAINTIFFS.

"Irreparable harm is relatively easy to establish in a First Amendment case," as a party need only "demonstrate[] the existence of a colorable First Amendment claim." *CTIA - The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019) (quotation marks omitted). That is because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *accord CTIA*, 928 F.3d at 851. "When, as here, a party seeks to engage in political speech in an impending election, a delay of even a day or two may be intolerable." *Sanders Cnty. Republican Cent. Comm. v. Bullock*, 698 F.3d 741, 748 (9th Cir. 2012) (quotation marks omitted).

As long as San Francisco's compelled speech requirement is in place, Plaintiffs will be restricted from speaking about and associating in relation to elections.

## III.   THE BALANCE OF EQUITIES, AND THE PUBLIC INTEREST, FAVOR PLAINTIFFS.

"Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Associated Press v. Otter*, 682 F.3d 821, 826 (9th Cir. 2012) (internal quotation marks omitted). "Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (internal quotation marks omitted); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (noting that the government "cannot suffer harm from an injunction that merely ends an unlawful" or unconstitutional practice). Accordingly, "[t]he public interest and the balance of the equities favor preventing the violation of [Plaintiffs'] constitutional rights." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017) (quotation marks omitted).

52

CONCLUSION

The district court's order should be vacated, and the case should be remanded with instructions to enter a preliminary injunction against enforcement of S.F. Code § 1.161(a) and S.F. Reg. 1-161.3.

Dated: July 1, 2022          Respectfully submitted,

                            /s/ Alan Gura

James R. Sutton                Alan Gura

THE SUTTON LAW FIRM       INSTITUTE FOR FREE SPEECH

150 Post Street, Suite 405     1150 Connecticut Ave., N.W.

San Francisco, CA 94108       Suite 801

415.732.7700                  Washington, DC 20036

jsutton@campaignlawyers.com  202.301.3300

                            agura@ifs.org

                            *Counsel for Appellants*

STATEMENT OF RELATED CASES

Plaintiffs are unaware of any related cases pending before this Court.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____22-15824_____

I am the attorney or self-represented party.

**This brief contains _____10,006_____ words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** _____s/Alan Gura_____ **Date** ____July 1, 2022_____
*(use "s/[typed name]" to sign electronically-filed documents)*

54

ADDENDUM

# ADDENDUM TABLE OF CONTENTS

Cal. Gov't Code § 82013 ..................................................... Add. 1

Cal. Gov't Code § 82036 ..................................................... Add. 1

Cal. Gov't Code § 82047.5 .................................................. Add. 2

Cal. Gov't Code § 84101 ..................................................... Add. 2

Cal. Gov't Code § 84107 ..................................................... Add. 3

Cal. Gov't Code § 84200 ..................................................... Add. 4

Cal. Gov't Code § 84200.5 .................................................. Add. 5

Cal. Gov't Code § 84200.8 .................................................. Add. 6

Cal. Gov't Code § 84203 ..................................................... Add. 7

Cal. Gov't Code § 84211 ..................................................... Add. 8

Cal. Gov't Code § 84501 ..................................................... Add. 13

Cal. Gov't Code § 84502 ..................................................... Add. 16

Cal. Gov't Code § 84503 ..................................................... Add. 17

Cal. Gov't Code § 84504 ..................................................... Add. 18

Cal. Gov't Code § 84504.1 .................................................. Add. 18

Cal. Gov't Code § 84504.2 .................................................. Add. 20

Cal. Gov't Code § 84504.3 .................................................. Add. 21

Cal. Gov't Code § 84504.6 .................................................. Add. 23

Cal. Gov't Code § 84505 ........................................................ Add. 27

Cal. Gov't Code § 84506.5 ..................................................... Add. 28

Cal. Gov't Code § 84509 ........................................................ Add. 28

Cal. Gov't Code § 84510 ........................................................ Add. 29

Cal. Gov't Code § 84511 ........................................................ Add. 29

S.F. Charter § 6.102(10) ........................................................ Add. 31

S.F. Charter, appendix C, § C3.699-13 ...................................... Add. 31

S.F. Code § 1.112 ................................................................. Add. 34

S.F. Code § 1.161 ................................................................. Add. 36

S.F. Code § 1.162 ................................................................. Add. 39

S.F. Code § 1.170 ................................................................. Add. 41

S.F. Reg. § 1.161-3 ............................................................... Add. 44

## Cal. Gov't Code § 82013 — Committee

"Committee" means any person or combination of persons who directly or indirectly does any of the following:

(a) Receives contributions totaling two thousand dollars ($2,000) or more in a calendar year;

(b) Makes independent expenditures totaling one thousand dollars ($1,000) or more in a calendar year; or

(c) Makes contributions totaling ten thousand dollars ($10,000) or more in a calendar year to or at the behest of candidates or committees.

A person or combination of persons that becomes a committee shall retain its status as a committee until such time as that status is terminated pursuant to Section 84214.

## Cal. Gov't Code § 82036 — Late Contribution

"Late contribution" means any of the following:

(a) A contribution, including a loan, that totals in the aggregate one thousand dollars ($1,000) or more and is made to or received by a candidate, a controlled committee, or a committee formed or existing primarily to support or oppose a candidate or measure during the 90-day period preceding the date of the election, or on the date of the election, at which the candidate or measure is to be voted on. For purposes of the Board of Administration of the Public Employees' Retirement System and the Teachers' Retirement Board, "the date of the election" is the deadline to return ballots.

(b) A contribution, including a loan, that totals in the aggregate one thousand dollars ($1,000) or more and is made to or received by a political party committee, as defined in Section 85205, within 90 days before the date of a state election or on the date of the election.

## Cal. Gov't Code § 82047.5 — Primarily Formed Committee

"Primarily formed committee" means a committee pursuant to subdivision (a) of Section 82013 which is formed or exists primarily to support or oppose any of the following:

 (a) A single candidate.

 (b) A single measure.

 (c) A group of specific candidates being voted upon in the same city, county, or multicounty election.

 (d) Two or more measures being voted upon in the same city, county, multicounty, or state election.


## Cal. Gov't Code § 84101 — Statement of Organization; Filing.

(a) A committee that is a committee by virtue of subdivision (a) of Section 82013 shall file a statement of organization. The committee shall file the original of the statement of organization with the Secretary of State and shall also file a copy of the statement of organization with the local filing officer, if any, with whom the committee is required to file the originals of its campaign reports pursuant to Section 84215. The original and copy of the statement of organization shall be filed within 10 days after the committee has qualified as a committee. The Secretary of State shall assign a number to each committee that files a statement of organization and shall notify the committee of the number. The Secretary of State shall send a copy of statements filed pursuant to this section to the county elections official of each county that the Secretary of State deems appropriate. A county elections official who receives a copy of a statement of organization from the Secretary of State pursuant to this section shall send a copy of the statement to the clerk of each city in the county that the county elections official deems appropriate.

(b) In addition to filing the statement of organization as required by subdivision (a), if a committee qualifies as a committee under subdivision (a) of Section 82013 before the date of an election in

connection with which the committee is required to file preelection statements, but after the closing date of the last campaign statement required to be filed before the election pursuant to Section 84200.8 or 84200.9, the committee shall file, by facsimile transmission, online transmission, guaranteed overnight delivery, or personal delivery within 24 hours of qualifying as a committee, the information required to be reported in the statement of organization. The information required by this subdivision shall be filed with the filing officer with whom the committee is required to file the originals of its campaign reports pursuant to Section 84215.

(c) If an independent expenditure committee qualifies as a committee pursuant to subdivision (a) of Section 82013 during the time period described in Section 82036.5 and makes independent expenditures of one thousand dollars ($1,000) or more to support or oppose a candidate or candidates for office, the committee shall file, by facsimile transmission, online transmission, guaranteed overnight delivery, or personal delivery within 24 hours of qualifying as a committee, the information required to be reported in the statement of organization. The information required by this section shall be filed with the filing officer with whom the committee is required to file the original of its campaign reports pursuant to Section 84215, and shall be filed at all locations required for the candidate or candidates supported or opposed by the independent expenditures. The filings required by this section are in addition to filings that may be required by Section 84204. (d) For purposes of this section, in calculating whether two thousand dollars ($2,000) in contributions has been received, payments for a filing fee or for a statement of qualifications to appear in a sample ballot shall not be included if these payments have been made from the candidate's personal funds.

## Cal. Gov't Code § 84107 — Ballot Measure Committee; Identification.

Within 30 days of the designation of the numerical order of propositions appearing on the ballot, any committee which is primarily formed to support or oppose a ballot measure, shall, if supporting the measure,

include the statement, "a committee for Proposition___," or, if opposing the measure, include the statement, "a committee against Proposition ___," in any reference to the committee required by law.

## Cal. Gov't Code § 84200 — Semi-Annual Statements.

(a) Except as provided in paragraphs (1), (2), and (3), elected officers, candidates, and committees pursuant to subdivision (a) of Section 82013 shall file semiannual statements each year no later than July 31 for the period ending June 30, and no later than January 31 for the period ending December 31.

(1) A candidate who, during the past six months has filed a declaration pursuant to Section 84206 shall not be required to file a semiannual statement for that six-month period.

(2) Elected officers whose salaries are less than two hundred dollars ($200) a month, judges, judicial candidates, and their controlled committees shall not file semiannual statements pursuant to this subdivision for any six-month period in which they have not made or received any contributions or made any expenditures.

(3) A judge who is not listed on the ballot for reelection to, or recall from, any elective office during a calendar year shall not file semiannual statements pursuant to this subdivision for any six-month period in that year if both of the following apply:

(A) The judge has not received any contributions.

(B) The only expenditures made by the judge during the calendar year are contributions from the judge's personal funds to other candidates or committees totaling less than one thousand dollars ($1,000).

(b) All committees pursuant to subdivision (b) or (c) of Section 82013 shall file campaign statements each year no later than July 31 for the period ending June 30, and no later than January 31 for the period ending December 31, if they have made contributions or independent expenditures, including payments to a slate mailer organization, during the six-month period before the closing date of the statements.

**Cal. Gov't Code § 84200.5 — Preelection Statements.**

(a) In addition to the semiannual campaign statements required by Section 84200, the following elected officers, candidates, and committees shall file preelection statements under Section 84200.8:

(1) All candidates appearing on the ballot at the next election, their controlled committees, and committees primarily formed to support or oppose an elected officer, candidate, or measure appearing on the ballot for the next election.

(2) All elected state officers and candidates for elective state office who are not appearing on the ballot at the next state primary or general election, and who, during the preelection reporting periods covered by Section 84200.8, make contributions or independent expenditures totaling five hundred dollars ($500) or more to a state or county general purpose committee, or to support or oppose a candidate or measure appearing on the ballot at the next state primary or general election.

(3) A state or county general purpose committee formed pursuant to subdivision (a) of Section 82013, other than a political party committee as defined in Section 85205, that, during the preelection reporting periods covered by Section 84200.8, makes contributions or independent expenditures totaling five hundred dollars ($500) or more to a state or county general purpose committee, or to support or oppose a candidate or measure appearing on the ballot at the next state primary or general election. However, a state or county general purpose committee formed pursuant to subdivision (b) or (c) of Section 82013 is not required to file the preelection statements specified in Section 84200.8.

(4) A political party committee as defined in Section 85205 that, during the preelection reporting periods covered by Section 84200.8, receives contributions totaling one thousand dollars ($1,000) or more, or makes contributions or independent expenditures totaling five hundred dollars ($500) or more, to a state or county general purpose committee, or to support or oppose a candidate or measure appearing on the ballot at a state election.

(5) A city general purpose committee formed pursuant to subdivision (a) of Section 82013 that, during the preelection reporting periods covered

by Section 84200.8, makes contributions or independent expenditures totaling five hundred dollars ($500) or more to a city general purpose committee formed within the same jurisdiction, or to support or oppose a candidate or measure appearing on the ballot at the next city election. However, a city general purpose committee formed pursuant to subdivision (b) or (c) of Section 82013 is not required to file the preelection statements specified in Section 84200.8.

(b) During an election period for the Board of Administration of the Public Employees' Retirement System or the Teachers' Retirement Board, the following candidates and committees shall file the preelection statements specified in Section 84200.9:

(1) All candidates for these boards, their controlled committees, and committees primarily formed to support or oppose the candidates.

(2) A state or county general purpose committee formed pursuant to subdivision (a) of Section 82013 that, during the preelection reporting periods covered by Section 84200.9, makes contributions or independent expenditures totaling five hundred dollars ($500) or more to support or oppose a candidate for the Board of Administration of the Public Employees' Retirement System or the Teachers' Retirement Board. However, a general purpose committee formed pursuant to subdivision (b) or (c) of Section 82013 is not required to file the statements specified in Section 84200.9.


**Cal. Gov't Code § 84200.8 — Timing for Filing Preelection Statements.**

Preelection statements shall be filed under this section as follows:

(a) For the period ending 45 days before the election, the statement shall be filed no later than 40 days before the election.

(b) For the period ending 17 days before the election, the statement shall be filed no later than 12 days before the election. All candidates being voted upon in the election in connection with which the statement is filed, their controlled committees, and committees formed primarily

to support or oppose a candidate or measure being voted upon in that election shall file this statement by guaranteed overnight delivery service or by personal delivery.

(c) For runoff elections held within 60 days of the qualifying election, an additional preelection statement for the period ending 17 days before the runoff election shall be filed no later than 12 days before the election. All candidates being voted upon in the election in connection with which the statement is filed, their controlled committees, and committees formed primarily to support or oppose a candidate or measure being voted upon in that election shall file this statement by guaranteed overnight delivery service or personal delivery.

## Cal. Gov't Code § 84203 — Late Contribution; Reports.

(a) Each candidate or committee that makes or receives a late contribution, as defined in Section 82036, shall report the late contribution to each office with which the candidate or committee is required to file its next campaign statement pursuant to Section 84215. The candidate or committee that makes the late contribution shall report the candidate or committee's full name and street address and the full name and street address of the person to whom the late contribution has been made, the office sought if the recipient is a candidate, or the ballot measure number or letter if the recipient is a committee primarily formed to support or oppose a ballot measure, and the date and amount of the late contribution. The recipient of the late contribution shall report the recipient's full name and street address, the date and amount of the late contribution, and whether the contribution was made in the form of a loan. The recipient shall also report the full name of the contributor, the contributor's street address, occupation, and the name of the contributor's employer, or, if self-employed, the name of the business.

(b) A late contribution shall be reported by facsimile transmission, guaranteed overnight delivery, or personal delivery within 24 hours of the time it is made in the case of the candidate or committee that makes the contribution and within 24 hours of the time it is received in

the case of the recipient. If a late contribution is required to be reported to the Secretary of State, the report to the Secretary of State shall be by online or electronic transmission only. A late contribution shall be reported on subsequent campaign statements without regard to reports filed pursuant to this section.

(c) A late contribution need not be reported nor shall it be deemed accepted if it is not cashed, negotiated, or deposited and is returned to the contributor within 24 hours of its receipt.

(d) A report filed pursuant to this section shall be in addition to any other campaign statement required to be filed by this chapter.

(e) The report required pursuant to this section is not required to be filed by a candidate or committee that has disclosed the late contribution pursuant to subdivision (a) or (b) of Section 85309.

## Cal. Gov't Code § 84211 — Contents of Campaign Statements.

Each campaign statement required by this article shall contain all of the following information:

(a) The total amount of contributions received during the period covered by the campaign statement and the total cumulative amount of contributions received.

(b) The total amount of expenditures made during the period covered by the campaign statement and the total cumulative amount of expenditures made.

(c) The total amount of contributions received during the period covered by the campaign statement from persons who have given a cumulative amount of one hundred dollars ($100) or more.

(d) The total amount of contributions received during the period covered by the campaign statement from persons who have given a cumulative amount of less than one hundred dollars ($100).

(e) The balance of cash and cash equivalents on hand at the beginning and the end of the period covered by the campaign statement.

(f) If the cumulative amount of contributions (including loans) received from a person is one hundred dollars ($100) or more and a contribution or loan has been received from that person during the period covered by the campaign statement, all of the following:

(1) That person's full name.

(2) That person's street address.

(3) That person's occupation.

(4) The name of that person's employer, or, if self-employed, the name of the business.

(5) The date and amount received for each contribution received during the period covered by the campaign statement and, if the contribution is a loan, the interest rate for the loan.

(6) The cumulative amount of contributions.

(g) If the cumulative amount of loans received from or made to a person is one hundred dollars ($100) or more, and a loan has been received from or made to a person during the period covered by the campaign statement, or is outstanding during the period covered by the campaign statement, all of the following:

(1) That person's full name.

(2) That person's street address.

(3) That person's occupation.

(4) The name of that person's employer, or, if self-employed, the name of the business.

(5) The original date and amount of each loan.

(6) The due date and interest rate of the loan.

Add. 9

(7) The cumulative payment made or received to date at the end of the reporting period.

(8) The balance outstanding at the end of the reporting period.

(9) The cumulative amount of contributions.

(h) For each person, other than the filer, who is directly, indirectly, or contingently liable for repayment of a loan received or outstanding during the period covered by the campaign statement, all of the following:

(1) That person's full name.

(2) That person's street address.

(3) That person's occupation.

(4) The name of that person's employer, or, if self-employed, the name of the business.

(5) The amount of that person's maximum liability outstanding.

(i) The total amount of expenditures made during the period covered by the campaign statement to persons who have received one hundred dollars ($100) or more.

(j) The total amount of expenditures made during the period covered by the campaign statement to persons who have received less than one hundred dollars ($100).

(k) For each person to whom an expenditure of one hundred dollars ($100) or more has been made during the period covered by the campaign statement, all of the following:

(1) That person's full name.

(2) That person's street address.

(3) The amount of each expenditure.

(4) A brief description of the consideration for which each expenditure was made.

(5) In the case of an expenditure which is a contribution to a candidate, elected officer, or committee or an independent expenditure to support or oppose a candidate or measure, in addition to the information required in paragraphs (1) to (4) above, the date of the contribution or independent expenditure, the cumulative amount of contributions made to a candidate, elected officer, or committee, or the cumulative amount of independent expenditures made relative to a candidate or measure; the full name of the candidate, and the office and district for which the candidate seeks nomination or election, or the number or letter of the measure; and the jurisdiction in which the measure or candidate is voted upon.

(6) The information required in paragraphs (1) to (4), inclusive, for each person, if different from the payee, who has provided consideration for an expenditure of five hundred dollars ($500) or more during the period covered by the campaign statement.

For purposes of subdivisions (i), (j), and (k) only, the terms "expenditure" or "expenditures" mean any individual payment or accrued expense, unless it is clear from surrounding circumstances that a series of payments or accrued expenses are for a single service or product.

(l) In the case of a controlled committee, an official committee of a political party, or an organization formed or existing primarily for political purposes, the amount and source of any miscellaneous receipt.

(m) If a committee is listed pursuant to subdivision (f), (g), (h), (k), (l), or (q), the number assigned to the committee by the Secretary of State shall be listed, or, if no number has been assigned, the full name and street address of the treasurer of the committee.

(n) In a campaign statement filed by a candidate who is a candidate in both a state primary and general election, such a candidate's controlled committee, or a committee primarily formed to support or oppose such a candidate, the total amount of contributions received and the total amount of expenditures made for the period January 1 through June 30

and the total amount of contributions received and expenditures made for the period July 1 through December 31.

(o) The full name, residential or business address, and telephone number of the filer, or in the case of a campaign statement filed by a committee defined by subdivision (a) of Section 82013, the name, street address, and telephone number of the committee and of the committee treasurer. In the case of a committee defined by subdivision (b) or (c) of Section 82013, the name that the filer uses on campaign statements shall be the name by which the filer is identified for other legal purposes or any name by which the filer is commonly known to the public.

(p) If the campaign statement is filed by a candidate, the name, street address, and treasurer of any committee of which that candidate has knowledge which has received contributions or made expenditures on behalf of the candidate's candidacy and whether the committee is controlled by the candidate.

(q) A contribution need not be reported nor shall it be deemed accepted if it is not cashed, negotiated, or deposited and is returned to the contributor before the closing date of the campaign statement on which the contribution would otherwise be reported.

(r) If a committee primarily formed for the qualification or support of, or opposition to, an initiative or ballot measure is required to report an expenditure to a business entity pursuant to subdivision (k) and 50 percent or more of the business entity is owned by a candidate or person controlling the committee, by an officer or employee of the committee, or by a spouse of any of these individuals, the committee's campaign statement shall also contain, in addition to the information required by subdivision (k), that person's name, the relationship of that person to the committee, and a description of that person's ownership interest or position with the business entity.

(s) If a committee primarily formed for the qualification or support of, or opposition to, an initiative or ballot measure is required to report an expenditure to a business entity pursuant to subdivision (k), and a candidate or person controlling the committee, an officer or employee of

the committee, or a spouse of any of these individuals is an officer, partner, consultant, or employee of the business entity, the committee's campaign statement shall also contain, in addition to the information required by subdivision (k), that person's name, the relationship of that person to the committee, and a description of that person's ownership interest or position with the business entity.

(t) If the campaign statement is filed by a committee, as defined in subdivision (b) or (c) of Section 82013, information sufficient to identify the nature and interests of the filer, including:

(1) If the filer is an individual, the name and address of the filer's employer, if any, or the filer's principal place of business if the filer is self-employed, and a description of the business activity in which the filer or the filer's employer is engaged.

(2) If the filer is a business entity, a description of the business activity in which it is engaged.

(3) If the filer is an industry, trade, or professional association, a description of the industry, trade, or profession which it represents, including a specific description of any portion or faction of the industry, trade, or profession which the association exclusively or primarily represents.

(4) If the filer is not an individual, business entity, or industry, trade, or professional association, a statement of the person's nature and purposes, including a description of any industry, trade, profession, or other group with a common economic interest which the person principally represents or from which its membership or financial support is principally derived.

## Cal. Gov't Code § 84501 — Advertisement.

For purposes of this article, the following definitions apply:

(a)(1) "Advertisement" means any general or public communication that is authorized and paid for by a committee for the purpose of supporting

or opposing a candidate or candidates for elective office or a ballot measure or ballot measures.

(2) Advertisement" does not include any of the following:

(A) A communication from an organization, other than a political party, to its members.

(B) An electronic media communication addressed to recipients, such as email messages or text messages, from an organization to persons who have opted in or asked to receive messages from the organization. This subparagraph does not apply to a customer who has opted in to receive communications from a provider of goods or services, unless the customer has provided express approval to receive political messages from that provider of goods or services.

(C) Any communication that was solicited by the recipient, including, but not limited to, acknowledgments for contributions or information that the recipient communicated to the organization, or responses to an electronic message sent by the recipient to the same mobile number or email address.

(D) A campaign button smaller than 10 inches in diameter; a bumper sticker smaller than 60 square inches; or a small tangible promotional item, such as a pen, pin, or key chain, upon which the disclosure required cannot be conveniently printed or displayed.

(E) Wearing apparel.

(F) Sky writing.

(G) Any other type of communication, as determined by regulations of the Commission, for which inclusion of the disclosures required by Sections 84502 to 84509, inclusive, is impracticable or would severely interfere with the committee's ability to convey the intended message due to the nature of the technology used to make the communication.

(b) "Cumulative contributions" means the cumulative amount of contributions received by a committee beginning 12 months before the date of the expenditure and ending seven days before the time the advertisement is sent to the printer or broadcaster.

(c)(1) "Top contributors" means the persons from whom the committee paying for an advertisement has received its three highest cumulative contributions of fifty thousand dollars ($50,000) or more.

(2) A tie between two or more contributors qualifying as top contributors shall be resolved by determining the contributor who made the most recent contribution to the committee, in which case the most recent contributor shall be listed before any other contributor of the same amount.

(3) If a committee primarily formed to support or oppose a state candidate or ballot measure contributes funds to another committee primarily formed to support or oppose the same state candidate or ballot measure and the funds used for the contribution were earmarked to support or oppose that candidate or ballot measure, the committee receiving the earmarked contribution shall disclose the contributors who earmarked their funds as the top contributor or contributors on the advertisement if the definition of top contributor provided for in paragraph (1) is otherwise met. If the committee receiving the earmarked contribution contributes any portion of the contribution to another committee primarily formed to support or oppose the specifically identified ballot measure or candidate, that committee shall disclose the true source of the contribution to the new committee receiving the earmarked funds. The new committee shall disclose the contributor on the new committee's advertisements if the definition of top contributor provided for in paragraph (1) is otherwise met.

(A) The primarily formed committee making the earmarked contribution shall provide the primarily formed committee receiving the earmarked contribution with the name, address, occupation, and employer, if any, or principal place of business, if self-employed, of the contributor or contributors who earmarked their funds and the amount of the earmarked contribution from each contributor at the time the contribution is made. If the committee making the contribution received earmarked contributions that exceed the amount contributed or received contributions that were not earmarked, the committee making the contribution shall use a reasonable accounting method to determine which top contributors to identify pursuant to this subparagraph, but in

no case shall the same contribution be disclosed more than one time to avoid disclosure of additional contributors who earmarked their funds.

(B) The committee receiving the earmarked contribution may rely on the information provided pursuant to subparagraph (A) for purposes of complying with the disclosure required by Section 84503 and shall be considered in compliance with Section 84503 if the information provided pursuant to subparagraph (A) is disclosed as otherwise required.

(C) For purposes of this paragraph, funds are considered "earmarked" if any of the circumstances described in subdivision (b) of Section 85704 apply.

(4) If an advertisement paid for by a committee supports or opposes a candidate, the determination of top contributors pursuant to paragraphs (1) and (2) shall not include any nonprofit organization exempt from federal income taxation pursuant to Section 501(c)(3) of the United States Internal Revenue Code or any person who has prohibited in writing the use of that person's contributions to support or oppose candidates if the committee does not use such contributions to support or oppose candidates.

## Cal. Gov't Code § 84502 — Disclosure; Committee Name.

(a)(1) Any advertisement not described in subdivision (b) of Section 84504.3 that is paid for by a committee pursuant to subdivision (a) of Section 82013, other than a political party committee or a candidate controlled committee established for an elective office of the controlling candidate, shall include the words "Ad paid for by" followed by the name of the committee as it appears on the most recent Statement of Organization filed pursuant to Section 84101.

(2) Any advertisement not described in subdivision (b) of Section 84504.3 that is paid for by a committee pursuant to subdivision (a) of Section 82013 that is a political party committee or a candidate controlled committee established for an elective office of the controlling candidate shall include the words "Ad paid for by" followed by the name of the committee as it appears on the most recent Statement of

Organization filed pursuant to Section 84101 if the advertisement is any of the following:

(A) Paid for by an independent expenditure.

(B) An advertisement supporting or opposing a ballot measure.

(C) A radio or television advertisement.

(D) A text message advertisement that is required to include a disclosure pursuant to Section 84504.7.

(b) Any advertisement not described in subdivision (b) of Section 84504.3 that is paid for by a committee pursuant to subdivision (b) or (c) of Section 82013 shall include the words "Ad paid for by" followed by the name that the filer is required to use on campaign statements pursuant to subdivision (o) of Section 84211.

(c) Notwithstanding subdivisions (a) and (b), if an advertisement is a printed letter, internet website, or email message, the text described in subdivisions (a) and (b) may include the words "Paid for by" instead of "Ad paid for by."

(d) Notwithstanding subdivisions (a) and (b), if an advertisement is a text message, the text described in subdivisions (a) and (b) may include the words "Paid for by" or "With," instead of "Ad paid for by."


### Cal. Gov't Code § 84503 — Top Contributor Disclosure.

(a) Any advertisement not described in subdivision (b) of Section 84504.3 that is paid for by a committee pursuant to subdivision (a) of Section 82013, other than a political party committee or a candidate controlled committee established for an elective office of the controlling candidate, shall include the words "committee major funding from" followed by the names of the top contributors to the committee paying for the advertisement. If fewer than three contributors qualify as top contributors, only those contributors that qualify shall be disclosed pursuant to this section. If there are no contributors that qualify as top contributors, this disclosure is not required.

(b) The disclosure of a top contributor pursuant to this section need not include terms such as "incorporated," "committee," "political action committee," or "corporation," or abbreviations of these terms, unless the term is part of the contributor's name in common usage or parlance.

(c) If this article requires the disclosure of the name of a top contributor that is a committee pursuant to subdivision (a) of Section 82013 and is a sponsored committee pursuant to Section 82048.7 with a single sponsor, only the name of the single sponsoring organization shall be disclosed.

(d) This section does not apply to a committee as defined by subdivision (b) or (c) of Section 82013.

## Cal. Gov't Code § 84504 — Disclosure; Radio and Telephone Ads.

(a) An advertisement paid for by a committee, other than a political party committee or a candidate controlled committee established for an elective office of the controlling candidate, that is disseminated over the radio or by telephonic means shall include the disclosures required by Sections 84502, 84503, and 84506.5 at the beginning or end of the advertisement, read in a clearly spoken manner and in a pitch and tone substantially similar to the rest of the advertisement, and shall last no less than three seconds.

(b) Notwithstanding the definition of "top contributors" in paragraph (1) of subdivision (c) of Section 84501, radio and prerecorded telephonic advertisements shall disclose only the top two contributors of fifty thousand dollars ($50,000) or more unless the advertisement lasts 15 seconds or less or the disclosure statement would last more than eight seconds, in which case only the single top contributor of fifty thousand dollars ($50,000) or more shall be disclosed.

## Cal. Gov't Code § 84504.1 — Disclosure; Video and Television Ads.

(a) An advertisement paid for by a committee, other than a political party committee or a candidate controlled committee established for an

elective office of the controlling candidate, that is disseminated as a video, including advertisements on television and videos disseminated over the Internet, shall include the disclosures required by Sections 84502 and 84503 at the beginning or end of the advertisement.

(b) The disclosure required by subdivision (a) shall be written and displayed for at least five seconds of a broadcast of 30 seconds or less or for at least 10 seconds of a broadcast that lasts longer than 30 seconds.

(1) The written disclosure required by subdivision (a) shall appear on a solid black background on the entire bottom one-third of the television or video display screen, or bottom one-fourth of the screen if the committee does not have or is otherwise not required to list top contributors, and shall be in a contrasting color in Arial equivalent type, and the type size for the smallest letters in the written disclosure shall be 4 percent of the height of the television or video display screen. The top contributors, if any, shall each be disclosed on a separate horizontal line separate from any other text, in descending order, beginning with the top contributor who made the largest cumulative contributions on the first line. All disclosure text shall be centered horizontally in the disclosure area. If there are any top contributors, the written disclosures shall be underlined in a manner clearly visible to the average viewer, except for the names of the top contributors, if any.

(2) The name of the top contributor shall not have its type condensed or have the spacing between characters reduced to be narrower than a normal non-condensed Arial equivalent type, unless doing so is necessary to keep the name of the top contributor from exceeding the width of the screen.

(c) An advertisement that is an independent expenditure supporting or opposing a candidate shall include the appropriate statement from Section 84506.5 in the solid black background described in paragraph (1) of subdivision (b) below all other text required to appear in that area in a contrasting color and in Arial equivalent type no less than 2.5 percent of the height of the television or video display screen. If including this statement causes the disclosures to exceed one-third of the television or video display screen, then it may instead be printed

immediately above the background with sufficient contrast that is easily readable by the average viewer.

## Cal. Gov't Code § 84504.2 — Disclosure; Print Ads.

(a) A print advertisement paid for by a committee, other than a political party committee or a candidate controlled committee established for an elective office of the controlling candidate, shall include the disclosures required by Sections 84502, 84503, and 84506.5, displayed as follows:

(1) The disclosure area shall have a solid white background and shall be in a printed or drawn box on the bottom of at least one page that is set apart from any other printed matter. All text in the disclosure area shall be in contrasting color and centered horizontally in the disclosure area.

(2) The text shall be in an Arial equivalent type with a type size of at least 10-point for printed advertisements designed to be individually distributed, including, but not limited to, mailers, flyers, and door hangers.

(3) The top of the disclosure area shall include the disclosure required by Sections 84502 and 84503. The text of the disclosure shall be underlined if there are any top contributors.

(4) The top contributors, if any, shall each be disclosed on a separate horizontal line separate from any other text, in descending order, beginning with the top contributor who made the largest cumulative contributions on the first line. The name of each of the top contributors shall be centered horizontally in the disclosure area and shall not be underlined. The names of the top contributors shall not be printed in a type that is condensed to be narrower than a normal noncondensed Arial equivalent type.

(5) A committee subject to Section 84506.5 shall include the disclosure required by Section 84506.5, which shall be underlined and on a separate line below any of the top contributors.

(6) A committee subject to Section 84223 shall next include the text "Funding Details At [insert Commission Internet Web site]," which shall be underlined and printed on a line separate from any other text.

(b) Notwithstanding paragraphs (2) and (4) of subdivision (a), the disclosures required by Sections 84502, 84503, and 84506.5 on a printed advertisement that is larger than those designed to be individually distributed, including, but not limited to, yard signs or billboards, shall be in Arial equivalent type with a total height of at least 5 percent of the height of the advertisement, and printed on a solid background with sufficient contrast that is easily readable by the average viewer. The text may be adjusted so it does not appear on separate horizontal lines, with the top contributors separated by a comma.

(c) Notwithstanding the definition of "top contributors" in paragraph (1) of subdivision (c) of Section 84501, newspaper, magazine, or other public print advertisements that are 20 square inches or less shall be required to disclose only the single top contributor of fifty thousand dollars ($50,000) or more.

## Cal. Gov't Code § 84504.3 — Disclosure; Electronic Media Ads.

(a) This section applies to an electronic media advertisement if either of the following is true:

(1) The advertisement is paid for by a committee other than a political party committee or a candidate controlled committee established for an elective office of the controlling candidate.

(2) The advertisement is paid for by a political party committee or a candidate controlled committee established for an elective office of the controlling candidate, and is either of the following:

(A) Paid for by an independent expenditure.

(B) An advertisement supporting or opposing a ballot measure.

(b) An electronic media advertisement that is a graphic, image, animated graphic, or animated image that the online platform hosting

Add. 21

the advertisement allows to link to an internet website paid for by a committee shall comply with both of the following:

(1) Include the text "Who funded this ad?," "Paid for by," or "Ad Paid for by" in a contrasting color and a font size that is easily readable by the average viewer for the duration of the advertisement.

(2) The text shall be included or displayed as a hyperlink, icon, button, or tab to an internet website containing the disclosures required by Sections 84502, 84503, and 84506.5 in a contrasting color and in no less than 8-point font.

(c) Notwithstanding subdivision (b), the text required by paragraph (1) of subdivision (b) is not required if including the language in an 8-point font would take up more than one-third of the graphic or image. In those circumstances, the advertisement need only include a hyperlink to an internet website containing the disclosures required by Sections 84502, 84503, and 84506.5.

(d) Notwithstanding subdivisions (b) and (c), an email message or internet website paid for by a committee shall include the disclosures required by Sections 84502, 84503, and 84506.5 printed clearly and legibly in a contrasting color and in no less than 8-point font at the top or bottom of the email message, or at the top or bottom of every publicly accessible page of the internet website, as applicable.

(e) An internet website that is linked as provided for in paragraph (2) of subdivision (b) shall remain online and available to the public until 30 days after the date of the election in which the candidate or ballot measure supported or opposed by the advertisement was voted upon.

(f) An advertisement made via a form of electronic media that is audio only and therefore cannot include either of the disclosures in subdivision (b) shall comply with the disclosure requirements for radio advertisements in Section 84504.

(g) An electronic media advertisement that is disseminated as a video shall comply with the disclosure requirements of Sections 84504.1 and 84504.5, depending on the type of committee that paid for it. If the video is longer than 30 seconds, the disclosures required by Sections

84504.1 and 84504.5 shall be made at the beginning of the advertisement.

(h)(1) An advertisement made via a form of electronic media that allows users to engage in discourse and post content, or any other type of social media, shall only be required to include the disclosures required by Sections 84502, 84503, and 84506.5 in a contrasting color that is easily readable by the average viewer and in no less than 10- point font on the cover or header photo of the committee's profile, landing page, or similar location and shall not be required to include the disclosure required by subdivision (b) on each individual post, comment, or other similar communication. The disclosures specified in this subdivision shall be fully visible on the cover or header photo when the profile, landing page, or similar location is viewed from any electronic device that is commonly used to view this form of electronic media, including, but not limited to, a computer screen, laptop, tablet, or smart phone.

(2) Notwithstanding paragraph (1), if making the disclosures specified in paragraph (1) fully visible on a commonly used electronic device would be impracticable, the cover or header photo of the profile, landing page, or similar location need only include a hyperlink, icon, button, or tab to an internet website containing the disclosures specified in paragraph (1).

(i) The disclosures required by this section do not apply to advertisements made via social media for which the only expense or cost of the communication is compensated staff time unless the social media account where the content is posted was created only for the purpose of advertisements governed by this title.

**Cal. Gov't Code § 84504.6 — Disclosure; Online Platform.**

(a) For purposes of this article, the following terms have the following meanings:

(1) "Online platform" means a public-facing internet website, web application, or digital application, including a social network, ad network, or search engine, that sells advertisements directly to

advertisers. A public-facing internet website, web application, or digital application is not an online platform for purposes of this article to the extent that it displays advertisements that are sold directly to advertisers through another online platform.

(2)(A) "Online platform disclosed advertisement" means either of the following:

(i) A paid electronic media advertisement on an online platform made via a form of electronic media that allows users to engage in discourse and post content, or any other type of social media, for which the committee pays the online platform, unless all advertisements on the platform are video advertisements that can comply with Section 84504.1. Individual posts, comments, or other similar communications are not considered online platform disclosed advertisements if they are posted without payment to the online platform.

(ii) A paid electronic media advertisement on an online platform that is not any of the following:

(I) A graphic, image, animated graphic, or animated image that the online platform hosting the advertisement allows to hyperlink to an internet website containing required disclosures, as described in subdivision (b) of Section 84504.3.

(II) Video, audio, or email.

(B) Electronic media advertisements that are not online platform disclosed advertisements as defined in subparagraph (A) shall follow disclosure requirements for electronic media advertisements under Section 84504.3.

(b) A committee that disseminates an online platform disclosed advertisement shall do all of the following:

(1) Upon requesting the dissemination, expressly notify the online platform through which the advertisement would be disseminated, using the online platform's chosen notification method, that the advertisement is an advertisement as defined in Section 84501.

(2)(A) Provide the online platform with the disclosure name of the committee.

(B) For purposes of this section, "disclosure name" means the text required by Section 84503, followed by a colon, followed by, surrounded in quotation marks, the name of the committee as it appears on the most recent Statement of Organization filed pursuant to Section 84101 or the name that the filer is required to use on campaign statements pursuant to subdivision (o) of Section 84211. If no disclosure text is required by Section 84503, "disclosure name" means the name of the committee as it appears on the most recent Statement of Organization filed pursuant to Section 84101 or the name that the filer is required to use on campaign statements pursuant to subdivision (o) of Section 84211.

(C) If the disclosure name changes due to a change in the top contributors or the name of the committee, the committee shall provide the online platform with an updated disclosure name within five business days.

(3) Provide the online platform with the name of the candidate to which the advertisement refers and the office to which the candidate is seeking election, as applicable, or number or letter of the ballot measure and the jurisdiction to which the advertisement refers.

(4) Provide the online platform with the name and identification number of the committee that paid for the advertisement.

(c) An online platform that disseminates a committee's online platform disclosed advertisement shall do one of the following:

(1) Display "Paid for by" or "Ad Paid for by" followed by the disclosure name provided by the committee, easily readable to the average viewer, located adjacent to any text stating that the advertisement is an advertisement or is promoted or sponsored. The online platform may display only one hundred or more characters of the disclosure name if it is followed by a "…" that is clearly clickable and that links to a page as described in paragraph (3).

(2) The online platform may instead display a hyperlink, icon, button, or tab with the text "Who funded this ad?," "Paid for by," or "Ad Paid for by" that is clearly clickable in the same or similar font and in at least the same font size as the online platform's text, and easily readable to the average viewer, stating that the advertisement is an advertisement or is promoted or sponsored, that links to a page as described in paragraph (3).

(3) Hyperlinks, icons, buttons, or tabs used for the purposes described in paragraphs (1) and (2) shall be linked to the profile or landing page of the committee that paid for the advertisement; to another page to which the average viewer would normally navigate to view additional information about a committee containing the disclosure name in a manner that is easily seen and readable by the average viewer; or to an internet website containing the disclosure required by subdivision (d) of Section 84504.3.

(d) An online platform that disseminates committees' online platform disclosed advertisements shall meet all of the following requirements:

(1) Maintain, and make available for online public inspection in a machine readable format, a record of any advertisement disseminated on the online platform by a committee that purchased five hundred dollars ($500) or more in advertisements on the online platform during the preceding 12 months. Each record shall contain all of the following:

(A) A digital copy of the advertisement.

(B) The approximate number of views generated from the advertisement and the date and time that the advertisement was first displayed and last displayed.

(C) Information regarding the range charged or the total amount spent on the advertisement.

(D) The name of the candidate to which the advertisement refers and the office to which the candidate is seeking election, as applicable, or number or letter of the ballot measure and the jurisdiction to which the advertisement refers.

(E) The name and identification number of the committee that paid for the advertisement, if the committee is assigned an identification number.

(2) The information required under this subdivision shall be made available as soon as practicable and shall be retained by the online platform for no less than four years.

(3)(A) Display a prominent button, icon, tab, or hyperlink with the text "View Ads" or similar text in one of the following locations: (i) near the top of a profile, landing page, or similar location of a committee that paid for an advertisement in a position that the average viewer will readily see it upon viewing that page; (ii) on a page that displays the committee's profile information or biographical information; (iii) or on a page on which the average viewer would normally navigate to view additional information about a committee.

(B) The button, icon, tab, or hyperlink shall link to a page clearly showing all of the advertisement records required by paragraph (1).

(e) An online platform that creates a mechanism for a committee requesting dissemination of an online platform disclosed advertisement to expressly notify the online platform whether the advertisement is an advertisement as defined in Section 84501 and to provide all information necessary for the online platform to comply with the requirements of this section may rely in good faith on the information provided by the committee to the online platform to satisfy the online platform's obligations under subdivisions (c) and (d).


## Cal. Gov't Code § 84505 — Avoidance of Disclosure.

(a) In addition to the requirements of Sections 84502, 84503, and 84506.5, the committee placing the advertisement or persons acting in concert with that committee shall be prohibited from creating or using a noncandidate-controlled committee or a nonsponsored committee to avoid, or that results in the avoidance of, the disclosure of any individual, industry, business entity, controlled committee, or sponsored committee as a top contributor.

(b) Written disclosures required by Sections 84503 and 84506.5 shall not appear in all capital letters, except that capital letters shall be permitted for the beginning of a sentence, the beginning of a proper name or location, or as otherwise required by conventions of the English language.

## Cal. Gov't Code § 84506.5 — Disclosure; Independent Expenditure Ads; Not Authorized by Candidate.

An advertisement supporting or opposing a candidate that is paid for by an independent expenditure shall include a statement that it was not authorized by a candidate or a committee controlled by a candidate. If the advertisement was authorized or paid for by a candidate for another office, the expenditure shall instead include a statement that "This advertisement was not authorized or paid for by a candidate for this office or a committee controlled by a candidate for this office."

## Cal. Gov't Code § 84509 — Amended Disclosures.

If the order of top contributors required to be disclosed pursuant to this article changes or a new contributor qualifies as a top contributor, the disclosure in the advertisement shall be updated as follows:

(a) A television, radio, telephone, electronic billboard, or other electronic media advertisement shall be updated to reflect the new top contributors within five business days. A committee shall be deemed to have complied with this subdivision if the amended advertisement is delivered, containing a request that the advertisement immediately be replaced, to all affected broadcast stations or other locations where the advertisement is placed no later than the fifth business day.

(b) A print media advertisement, including nonelectronic billboards, shall be updated to reflect the new top contributors before placing a new or modified order for additional printing of the advertisement.

**Cal. Gov't Code § 84510 — Remedies for Article Violations; Civil Action; Fines.**

(a)(1) In addition to the remedies provided for in Chapter 11 (commencing with Section 91000), a person who violates Section 84503 or 84506.5 is liable in a civil or administrative action brought by the Commission or any person for a fine up to three times the cost of the advertisement, including placement costs.

(2) Notwithstanding paragraph (1), a person who intentionally violates a provision of Sections 84504 to 84504.3, inclusive, or Section 84504.5 or 84504.6, for the purpose of avoiding disclosure is liable in a civil or administrative action brought by the Commission or any person for a fine up to three times the cost of the advertisement, including placement costs.

(b) The remedies provided in subdivision (a) shall also apply to any person who purposely causes any other person to violate any of the sections described in paragraph (1) or (2) of subdivision (a) or who aids and abets any other person in a violation.

(c) If a judgment is entered against the defendant or defendants in an action brought under this section, the plaintiff shall receive 50 percent of the amount recovered. The remaining 50 percent shall be deposited in the General Fund of the state. In an action brought by a local civil prosecutor, 50 percent shall be deposited in the account of the agency bringing the action and 50 percent shall be paid to the General Fund of the state.

**Cal. Gov't Code § 84511 — Ballot Measure Ads; Paid Spokesperson Disclosure.**

(a) This section applies to a committee that does either of the following:

(1) Makes an expenditure of five thousand dollars ($5,000) or more to an individual for the individual's appearance in an advertisement that supports or opposes the qualification, passage, or defeat of a ballot measure.

(2) Makes an expenditure of any amount to an individual for the individual's appearance in an advertisement that supports or opposes the qualification, passage, or defeat of a ballot measure and that states or suggests that the individual is a member of an occupation that requires licensure, certification, or other specialized, documented training as a prerequisite to engage in that occupation.

(b) A committee described in subdivision (a) shall file, within 10 days of the expenditure, a report that includes all of the following:

(1) An identification of the measure that is the subject of the advertisement.

(2) The date of the expenditure.

(3) The amount of the expenditure.

(4) The name of the recipient of the expenditure.

(5) For a committee described in paragraph (2) of subdivision (a), the occupation of the recipient of the expenditure.

(c) An advertisement paid for by a committee described in paragraph (1) of subdivision (a) shall include a disclosure statement stating "(spokesperson's name) is being paid by this campaign or its donors" in highly visible font shown continuously if the advertisement consists of printed or televised material, or spoken in a clearly audible format if the advertisement is a radio broadcast or telephonic message. If the advertisement is a television or video advertisement, the statement shall be shown continuously, except when the disclosure statement required by Section 84504.1 is being shown.

(d)(1) An advertisement paid for by a committee described in paragraph (2) of subdivision (a) shall include a disclosure statement stating "Persons portraying members of an occupation in this advertisement are compensated spokespersons not necessarily employed in those occupations" in highly visible font shown continuously if the advertisement consists of printed or televised material, or spoken in a clearly audible format if the advertisement is a radio broadcast or telephonic message. If the advertisement is a television or video

advertisement, the statement shall be shown continuously, except when the disclosure statement required by Section 84504.1 is being shown.

(2) A committee may omit the disclosure statement required by this subdivision if all of the following are satisfied with respect to each individual identified in the report filed pursuant to subdivision (b) for that advertisement:

(A) The occupation identified in the report is substantially similar to the occupation portrayed in the advertisement.

(B) The committee maintains credible documentation of the appropriate license, certification, or other training as evidence that the individual may engage in the occupation identified in the report and portrayed in the advertisement and makes that documentation immediately available to the Commission upon request.

## S.F. Charter § 6.102(10) — City Attorney.

The City Attorney shall:

(10) During his or her tenure, not contribute to, solicit contributions to, publicly endorse or urge the endorsement of or otherwise participate in a campaign for a candidate for City elective office, other than himself or herself or of a City ballot measure or be an officer, director or employee of or hold a policy-making position in an organization that makes political endorsements regarding candidates for City elective office or City ballot measures.

## S.F. Charter, appendix C § C3.699-13 — Investigations and Enforcement Proceedings.

The commission shall conduct investigations in accordance with this subdivision of alleged violations of this charter and City ordinances relating to campaign finance, lobbying, conflicts of interest and governmental ethics.

(a) Investigations.

If the commission, upon the receipt of a sworn compliant of any person or its own initiative, has reason to believe that a violation of this charter or City ordinances relating to campaign finance, lobbying, conflicts of interest or governmental ethics has occurred, the commission immediately shall forward the complaint or information in its possession regarding the alleged violation to the district attorney and City attorney. Within ten working days, after receipt of the complaint or information, the district attorney and City attorney shall inform the commission in writing regarding whether the district attorney or City attorney has initiated or intends to pursue an investigation of the matter

If the commission, upon the sworn complaint or on its own initiative, determines that there is sufficient cause to conduct an investigation, it shall investigate alleged violations of this charter or City ordinances relating to campaign finance, lobbying, conflicts of interest and governmental ethics. A complaint filed with the commission shall be investigated only if it identifies the specific alleged violations which form the basis for the complaint and the commission determines that the complaint contains sufficient facts to warrant an investigation.

Within 14 days after receiving notification that neither the district attorney nor City attorney intends to pursue an investigation, the commission shall notify in writing the person who made the complaint of the action, if any, the commission has taken or plans to take on the complaint, together with the reasons for such action or non-action. If no decision has been made within 14 days, the person who made the complaint shall be notified of the reasons for the delay and shall subsequently receive notification as provided above.

The investigation shall be conducted in a confidential manner. Records of any investigation shall be considered confidential information to the extent permitted by state law. Any member or employee of the commission or other person who, prior to a determination concerning probable cause, discloses information about any preliminary investigation, except as necessary to conduct the investigation, shall be deemed guilty of official misconduct. The unauthorized release of

confidential information shall be sufficient grounds for the termination of the employee or removal of the commissioner responsible for such release.

(b) Findings of Probable Cause.

No finding of probable cause to believe that a provision of this charter or City ordinances relating to campaign finance, lobbying, conflicts of interest or governmental ethics has been violated shall be made by the commission unless, at least 21 days prior to the commission's consideration of the alleged violation, the person alleged to have committed the violation is notified of the alleged violation by service of process or registered mail with return receipt requested, is provided with a summary of the evidence, and is informed of his or her right to be present in person and to be represented by counsel at any proceeding of the commission held for the purpose of considering whether probable cause exists for believing the person committed the violation. Notice to the alleged violator shall be deemed made on the date of service, the date the registered mail receipt is signed, or, if the registered mail receipt is not signed, the date returned by the post office. A proceeding held for the purpose of considering probable cause shall be private to the extent permitted by state law unless the alleged violator files with the commission a written request that the proceeding be public.

(c) Administrative Orders and Penalties.

(i) When the commission determines there is probable cause for believing a provision of this charter or City ordinance has been violated, it may hold a public hearing to determine if such a violation has occurred. When the commission determines on the basis of substantial evidence presented at the hearing that a violation has occurred, it shall issue an order which may require the violator to:

(1) Cease and desist the violation;

(2) File any reports, statements or other documents or information required by law; and/or

(3) Pay a monetary penalty to the general fund of the City of up to five thousand dollars ($5,000) for each violation or three times the amount

which the person failed to report properly or unlawfully contributed, expended, gave or received, whichever is greater. Penalties that are assessed but uncollected after 60 days shall be referred to the bureau of delinquent revenues for collection.

In addition, with respect to City officers other than those identified in Section 8.107 of this charter, when the commission determines on the basis of substantial evidence presented at the hearing that a violation has occurred, the commission may recommend to the appointing officer that the officer be removed from office.

When the commission determines that no violation has occurred, it shall publish a declaration so stating.

 (d) In addition to any other penalty that may be imposed by law, any person who violates any provision of this charter or of a City ordinance relating to campaign finance, lobbying, conflicts of interest or governmental ethics, or who causes any other person to violate any such provision, or who aids and abets any other person in such violation, shall be liable under the provisions of this section.


## S.F. Code § 1.112 — Electronic Campaign Disclosure.

(a) FILING ELECTRONIC CAMPAIGN STATEMENTS.

(1) Filing Electronic Copies of Campaign Statements Required by State Law. Whenever any committee that meets the requirements of Subsection (b) of this Section is required by the California Political Reform Act, California Government Code Section 81000 *et seq.*, to file a campaign disclosure statement or report with the Ethics Commission, the committee shall file the statement or report in an electronic format with the Ethics Commission, provided the Ethics Commission has prescribed the format at least 60 days before the statement or report is due to be filed.

(2) Filing Electronic Copies of Campaign Statements Required by Local Law. Whenever any committee is required to file a campaign disclosure statement or report with the Ethics Commission under this Chapter,

the committee shall file the statement or report in an electronic format, provided the Ethics Commission has prescribed the format at least 60 days before the statement or report is due to be filed.

(3) Continuous Filing of Electronic Statements. Once a committee is subject to the electronic filing requirements imposed by this Section, the committee shall remain subject to the electronic filing requirements, regardless of the amount of contributions received or expenditures made during each reporting period, until the committee terminates pursuant to this Chapter and the California Political Reform Act, California Government Code Section 81000 et seq.

(4) Disclosure of Expenditure Dates. All electronic statements filed under this Section shall include the date any expenditure required to be reported on the statement was incurred, provided that the Ethics Commission's forms accommodate the reporting of such dates.

(b) COMMITTEES SUBJECT TO ELECTRONIC FILING REQUIREMENTS.

(1) A committee must file electronic copies of statements and reports if it receives contributions or makes expenditures that total $1,000 or more in a calendar year and is:

(A) a committee controlled by a candidate for City elective office;

(B) a committee primarily formed to support or oppose a local measure or a candidate for City elective office; or

(C) a general purpose recipient, independent expenditure or major donor committee that qualifies, under state law, as a county general purpose committee in the City and County of San Francisco; or

(D) a committee primarily formed to support or oppose a person seeking membership on a San Francisco county central committee, including a committee controlled by the person seeking membership on a San Francisco county central committee.

(2) The Ethics Commission may require additional committees not listed in this Section to file electronically through regulations adopted at least 60 days before the statement or report is due to be filed.

Add. 35

(c) VOLUNTARY ELECTRONIC FILING. Any committee not required to file electronic statements by this Section may voluntarily opt to file electronic statements by submitting written notice to the Ethics Commission. A committee that opts to file electronic statements shall be subject to the requirements of this Section.

## S.F. Code § 1.161 — Campaign Advertisements.

(a) DISCLAIMERS. In addition to complying with the disclaimer requirements set forth in Chapter 4 of the California Political Reform Act, California Government Code sections 84100 *et seq.*, and its enabling regulations, all committees making expenditures which support or oppose any candidate for City elective office or any City measure shall also comply with the following additional requirements:

(1) TOP THREE CONTRIBUTORS. The disclaimer requirements for primarily formed independent expenditure committees and primarily formed ballot measure committees set forth in the Political Reform Act with respect to a committee's top three major contributors shall apply to contributors of $5,000 or more. Such disclaimers shall include both the name of and the dollar amount contributed by each of the top three major contributors of $5,000 or more to such committees. If any of the top three major contributors is a committee, the disclaimer must also disclose both the name of and the dollar amount contributed by each of the top two major contributors of $5,000 or more to that committee. The Ethics Commission may adjust this monetary threshold to reflect any increases or decreases in the Consumer Price Index. Such adjustments shall be rounded off to the nearest five thousand dollars.

(2) WEBSITE REFERRAL. Each disclaimer required by the Political Reform Act or its enabling regulations and by this Section 1.161 shall be followed in the same required format, size, and speed by the following phrase: "Financial disclosures are available at sfethics.org." A substantially similar statement that specifies the web site may be used as an alternative in audio communications.

(3) MASS MAILINGS AND SMALLER WRITTEN ADVERTISEMENTS. Any disclaimer required by the Political Reform

Act and by this section on a mass mailing, door hanger, flyer, poster, oversized campaign button or bumper sticker, or print advertisement shall be printed in at least 14-point, bold font.

(4) CANDIDATE ADVERTISEMENTS. Advertisements by candidate committees shall include the following disclaimer statements: "Paid for by _____ (insert the name of the candidate committee)." and "Financial disclosures are available at sfethics.org." Except as provided in subsections (a)(3) and (a)(5), the statements' format, size and speed shall comply with the disclaimer requirements for independent expenditures for or against a candidate set forth in the Political Reform Act and its enabling regulations.

(5) AUDIO AND VIDEO ADVERTISEMENTS. For audio advertisements, the disclaimers required by this Section 1.161 shall be spoken at the beginning of such advertisements, except that such disclaimers do not need to disclose the dollar amounts of contributions as required by subsection (a)(1). For video advertisements, the disclaimers required by this Section 1.161 shall be spoken at the beginning of such advertisements, except that such disclaimers do not need to disclose the dollar amounts of contributions as required by subsection (a)(1).

(b) FILING REQUIREMENTS.

(1) INDEPENDENT EXPENDITURE ADVERTISEMENTS. Committees required by state law to file late independent expenditure reports disclosing expenditures that support or oppose a candidate for City elective office shall also file with the Ethics Commission on the same date a copy of the associated advertisement(s), an itemized disclosure statement with the Ethics Commission for that advertisement(s), and

(A) if the advertisement is a telephone call, a copy of the script and, if the communication is recorded, the recording shall also be provided;

(B) if the advertisement is audio or video, a copy of the script and an audio or video file shall be provided;

Add. 37

(C) if the advertisement is an electronic or digital advertisement, a copy of the advertisement as distributed shall be provided; or

(D) if the advertisement is a door hanger, flyer, pamphlet, poster, or print advertisement, a copy of the advertisement as distributed shall be provided.

(2) INDEPENDENT EXPENDITURE MASS MAILINGS.

(A) Each committee making independent expenditures that pays for a mass mailing shall, within five working days after the date of the mailing, file a copy of the mailing and an itemized disclosure statement with the Ethics Commission for that mailing.

(B) Each committee making independent expenditures that pays for a mass mailing shall file a copy of the mailing and the itemized disclosure statement required by subsection (b)(2) within 48 hours of the date of the mailing if the date of the mailing occurs within the final 16 days before the election.

(C) Exception. Committees making independent expenditures to support or oppose a candidate for City elective office are not subject to the filing requirements imposed by this subsection (b)(2) during the time period that they are required by state law to file late independent expenditure reports and if they also file the itemized disclosure statement required by subsection (b)(1).

(3) CANDIDATE MASS MAILINGS.

(A) Each candidate committee that pays for a mass mailing shall, within five working days after the date of the mailing, file a copy of the mailing and an itemized disclosure statement with the Ethics Commission for that mailing.

(B) Each candidate committee that pays for a mass mailing shall file a copy of the mailing and the itemized disclosure statement required by subsection (b)(3) within 48 hours of the date of the mailing if the date of the mailing occurs within the final 16 days before the election.

(3) The Ethics Commission shall specify the method for filing copies of advertisements and mass mailings.

**S.F. Code § 1.162 — Electioneering Communications.**

(a) DISCLAIMERS.

(1) Every electioneering communication for which a statement is filed pursuant to subsection (b) shall include the following disclaimer: "Paid for by _____ (insert the name of the person who paid for the communication)." and "Financial disclosures are available at sfethics.org."

(2) Any disclaimer required by this Section 1.162 shall be included in or on an electioneering communication in a size, speed, or format that complies with the disclaimer requirements for independent expenditures supporting or opposing candidates set forth in the Political Reform Act and its enabling regulations.

(3) Notwithstanding subsection (a)(2), any disclaimer required by this Section 1.162

(A) to appear on a mass mailing, door hanger, flyer, poster, oversized campaign button or bumper sticker, or print advertisement, shall be printed in at least 14-point font;

(B) to be included in an audio advertisement, shall be spoken at the beginning of such advertisements; or

(C) to be included in a video advertisement, shall be spoken at the beginning of such advertisements.

(b) REPORTING OBLIGATIONS.

(1) Every person who makes payments for electioneering communications in an aggregate amount of $1,000 per candidate during any calendar year shall, within 24 hours of each distribution, file a disclosure statement with the Ethics Commission. For the purposes of this subsection, payments for a communication that refers only to one candidate shall be attributed entirely to that candidate. Payments for a communication that refers to more than one candidate, or also refers to one or more ballot measures, shall be apportioned among each candidate and measure according to the relative share of the communication dedicated to that candidate or measure.

(2) Each disclosure statement required to be filed under this Section shall contain the following information for each communication:

(A) the full name, street address, city, state and zip code of the person making payments for electioneering communications;

(B) the name of any individual sharing or exercising direction and control over the person making payments for electioneering communications;

(C) the distribution date of the electioneering communication, the name(s) and office(s) of the candidate(s) for City elective office or City elective officer(s) referred to in the communication, the payments for the communication attributable to each such candidate or officer, a brief description of the consideration for which the payments were made, whether the communication supports, opposes, or is neutral with respect to each such candidate or officer, and the total amount of reportable payments made by the person for electioneering communications referencing each such candidate or officer during the calendar year;

(D) for any payments of $100 or more that the person has received from another person, which were used for making electioneering communications, the date of the payment's receipt, the name, street address, city, state, and zip code of the person who made such payment, the occupation and employer of the person who made such payment, if any, or, if the person is self-employed, the name of the person's business, and the cumulative amount of payments received from that person during the calendar year which were used for making electioneering communications;

(E) a legible copy of the electioneering communication, including any electioneering communication distributed electronically, and

(i) if the communication is a telephone call, a copy of the script and if the communication is recorded, the recording shall be provided; or

(ii) if the communication is audio or video, a copy of the script and an audio or video file shall be provided.

(F) any other information required by the Ethics Commission consistent with the purposes of this Section.

(3) The filer shall verify, under penalty of perjury, the accuracy and completeness of the information provided in the disclosure statement, and shall retain for a period of five years all books, papers and documents necessary to substantiate the statements required by this Section.

(4) The Ethics Commission shall determine the method for filing the disclosure statement and the copy of the communication, which may include electronic filing.

(c) REGULATIONS. The Ethics Commission may issue regulations implementing this Section.

## S.F. Code § 1.170 — Penalties.

(a) CRIMINAL. Any person who knowingly or willfully violates any provision of this Chapter 1 shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not more than $5,000 for each violation or by imprisonment in the County jail for a period of not more than six months or by both such fine and imprisonment; provided, however, that any willful or knowing failure to report contributions or expenditures done with intent to mislead or deceive or any willful or knowing violation of the provisions of Sections 1.114, 1.126, or 1.127 of this Chapter 1 shall be punishable by a fine of not less than $5,000 for each violation or three times the amount not reported or the amount received in excess of the amount allowable pursuant to Sections 1.114, 1.126, or 1.127 of this Chapter 1, or three times the amount expended in excess of the amount allowable pursuant to Section 1.130 or 1.140, whichever is greater.

(b) CIVIL. Any person who intentionally or negligently violates any of the provisions of this Chapter 1 shall be liable in a civil action brought by the City Attorney for an amount up to $5,000 for each violation or three times the amount not reported or the amount received in excess of the amount allowable pursuant to Sections 1.114, 1.126, or 1.127 or

three times the amount expended in excess of the amount allowable pursuant to Section 1.130 or 1.140, whichever is greater. In determining the amount of liability, the court may take into account the seriousness of the violation, the degree of culpability of the defendant, and the ability of the defendant to pay.

(c) ADMINISTRATIVE. Any person who violates any of the provisions of this Chapter 1 shall be liable in an administrative proceeding before the Ethics Commission held pursuant to the Charter for any penalties authorized therein.

(d) LATE FILING FEES

(1) Fees for Late Paper Filings. In addition to any other penalty, any person who files a paper copy of any statement or report after the deadline imposed by this Chapter shall be liable in the amount of ten dollars ($10) per day after the deadline until the statement is filed.

(2) In addition to any other penalty, any person who files an electronic copy of a statement or report after the deadline imposed by this Chapter shall be liable in the amount of twenty-five dollars ($25) per day after the deadline until the electronic copy or report is filed.

(3) Limitation on Liability. Liability imposed by Subsection (d)(1) shall not exceed the cumulative amount stated in the late statement or report, or one hundred dollars ($100), whichever is greater. Liability imposed by Subsection (d)(2) shall not exceed the cumulative amount stated in the late statement or report, or two hundred fifty dollars ($250), whichever is greater.

(4) Reduction or Waiver. The Ethics Commission may reduce or waive a fee imposed by this subsection if the Commission determines that the late filing was not willful and that enforcement will not further the purposes of this Chapter.

(e) MISUSE OF PUBLIC FUNDS. Any person who willfully or knowingly uses public funds, paid pursuant to this Chapter, for any purpose other than the purposes authorized by this Chapter shall be subject to the penalties provided in this Section.

(f) PROVISION OF FALSE OR MISLEADING INFORMATION TO THE ETHICS COMMISSION; WITHHOLDING OF INFORMATION. Any person who knowingly or willfully furnishes false or fraudulent evidence, documents, or information to the Ethics Commission under this Chapter, or misrepresents any material fact, or conceals any evidence, documents, or information, or fails to furnish to the Ethics Commission any records, documents, or other information required to be provided under this Chapter shall be subject to the penalties provided in this Section.

(g) PERSONAL LIABILITY. Candidates and treasurers are responsible for complying with this Chapter and may be held personally liable for violations by their committees. Nothing in this Chapter shall operate to limit the candidate's liability for, nor the candidate's ability to pay, any fines or other payments imposed pursuant to administrative or judicial proceedings.

(h) JOINT AND SEVERAL LIABILITY. If two or more persons are responsible for any violation of this Chapter, they shall be jointly and severally liable.

(i) EFFECT OF VIOLATION ON CANDIDACY.

(1) If a candidate is convicted, in a court of law, of a violation of this Chapter at any time prior to his or her election, his or her candidacy shall be terminated immediately and he or she shall be no longer eligible for election, unless the court at the time of sentencing specifically determines that this provision shall not be applicable. No person convicted of a misdemeanor under this Chapter after his or her election shall be a candidate for any other City elective office for a period of five years following the date of the conviction unless the court shall at the time of sentencing specifically determine that this provision shall not be applicable.

(2) If a candidate for the Board of Supervisors certified as eligible for public financing is found by a court to have exceeded the Individual Expenditure Ceiling in this Chapter by ten percent or more at any time prior to his or her election, such violation shall constitute official misconduct. The Mayor may suspend any member of the Board of

Supervisors for such a violation, and seek removal of the candidate from office following the procedures set forth in Charter Section 15.105(a).

(3) A plea of *nolo contendere*, in a court of law, shall be deemed a conviction for purposes of this Section.


## S.F. Reg. § 1.161-3 — Disclaimers – Top Three Contributors.

(a) To comply with the requirements of section 1.161(a)(1), a committee must adhere to the following disclaimer formatting requirements, in addition to any and all formatting requirements imposed by the Political Reform Act or Campaign and Governmental Conduct Code:

(1) Each of the committee's top three major contributors must be numbered by placing the numerals 1, 2, and 3, respectively, before each major contributor's name. Each numeral must appear in the same font and size as the names of the major contributors and each numeral must be separated from the corresponding name of the major contributor by one period and one space.

(2) For any major contributor that is a recipient committee, the names of the top two major contributors of $5,000 or more to that committee ("secondary major contributors") must be included immediately following the name and contribution amount of the relevant major contributor. The names of secondary major contributors must appear in the same font and size as the names of the major contributors and must be separated from the name of and dollar amount contributed by the corresponding major contributor by one space, followed by one em dash, followed by one space, followed by the words "contributors include," followed by one space.

(3) If two secondary major contributors must be included for a single major contributor, the secondary major contributor who has contributed more to the major contributor shall be listed before the other secondary major contributor; the name of and dollar amount contributed by the first secondary major contributor must be separated from the name of and dollar amount contributed by the second secondary major contributor by a single comma followed by a single space.

(4) Whenever a major contributor or secondary major contributor is included in a disclaimer, the amount of relevant contributions made by that major contributor or secondary major contributor must appear in the same font and size as the names of the major contributors. This dollar amount must immediately follow the name of the corresponding major contributor or secondary major contributor, must be placed inside parentheses, and must include the dollar symbol immediately before the numerals indicating the amount. Each set of three numerals in the dollar amount must be separated by a comma.

(b) If a major contributor included in a disclaimer is a recipient committee and secondary major contributors must therefore be included in the disclaimer, the committee paying for the advertisement shall seek in writing the names of and dollar amounts contributed by the secondary major contributors to that major contributor at the time of the major contributor's last contribution to the committee paying for the advertisement. If the committee paying for the advertisement requests such information from the major contributor in writing but does not receive such information as of the time the advertisement is printed or otherwise produced, the committee may rely on public disclosures filed by the major contributor to discern the names of and dollar amounts contributed by the major contributor's secondary major contributors.