**No. 22-15824**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

SAN FRANCISCANS SUPPORTING PROP B, EDWIN M. LEE  ASIAN
PACIFIC DEMOCRATIC CLUB PAC SPONSORED BY NEIGHBORS FOR A
BETTER SAN FRANCISCO ADVOCACY, AND TODD DAVID,

*Plaintiffs-Appellants,*

v.

DAVID CHIU, SAN FRANCISCO ETHICS COMMISSION, CHESA BOUDIN,
AND CITY AND COUNTY OF SAN FRANCISCO,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:22-cv-02785-CRB
The Honorable Charles R. Breyer

---

**APPELLEES' ANSWERING BRIEF**

---

DAVID CHIU, State Bar #189542
City Attorney
WAYNE K. SNODGRASS, State Bar #148137
TARA M. STEELEY, State Bar #231775
Deputy City Attorney
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4602
Telephone:   (415) 554-4655
Facsimile:    (415) 554-4699
tara.steeley@sfcityatty.org

*Attorneys for Defendants-Appellees*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................iv

INTRODUCTION .........................................................................................1

STATEMENT OF JURISDICTION...............................................................2

ISSUES PRESENTED...................................................................................2

STATEMENT OF THE CASE.......................................................................3

      I.      PROPOSITION F.................................................................3

      II.     PRIOR LITIGATION CHALLENGING PROPOSITION F. ..............4

      III.    PROCEDURAL HISTORY ....................................................5

SUMMARY OF ARGUMENT .......................................................................7

STANDARD OF REVIEW ............................................................................9

ARGUMENT .................................................................................................10

      I.      THIS APPEAL IS MOOT.....................................................10

      II.     PROPOSITION F'S SECONDARY CONTRIBUTOR
            DISCLAIMER REQUIREMENT IS CONSTITUTIONAL. .............16

            A.    PROPOSITION F'S DISCLAIMER REQUIREMENT
                    SHOULD BE EVALUATED UNDER THE EXACTING
                    SCRUTINY STANDARD.....................................................16

            B.    PROPOSITION F'S SECONDARY CONTRIBUTOR
                      DISCLAIMER REQUIREMENT SATISFIES
                    EXACTING SCRUTINY. ....................................................20

                1.    The City Has An Important Governmental Interest
                        In Providing The Electorate With Information
                        About The Sources Of Election-Related Spending........20

                2.    Proposition F's Disclaimer Requirements Are
                        Substantially Related To The City's Important
                        Interest In Providing Information To The Voters. .........22

                    i.     Proposition F Does Not Burden
                              Association Rights. ...................................26

                    ii.    Proposition F Does Not
                              Impermissibly Chill Fundraising. ..............31

3. The Secondary Contributor Disclaimer Requirements Are Narrowly Tailored To Achieving San Francisco's Purposes ............................ 35

    a. Appellants' Proposed Alternatives Fail To Advance The City's Important Governmental Interests. ....................................... 35

    b. Appellants' Argument That The Disclaimers Take Too Much Space Should Be Rejected ......... 38

III. THE REMAINING EQUITABLE FACTORS FAVOR THE CITY .................................................................................. 43

CONCLUSION ..................................................................................... 45

CERTIFICATE OF SERVICE ............................................................. 48

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*ACLU v. Heller*
  378 F.3d 979 (9th Cir. 2004) ....................................................... 18, 19, 22, 23, 24

*Alaska Right To Life Comm. v. Miles*
  441 F.3d 773 (9th Cir. 2006) ....................................................................... 23, 24

*Am. Beverage Ass'n v. City and County of San Francisco*
  916 F.3d 749 (9th Cir. 2019) .................................................................... 40, 41, 42

*Americans for Prosperity Found. v. Bonta*
  141 S. Ct. 2373 (2021) ................................................................................. *passim*

*Amoco Prod. Co. v. Village of Gambell*
  480 U.S. 531 (1987) ........................................................................................... 10

*Buckley v. Valeo*
  424 U.S. 1 (1976) ...................................................................................... *passim*

*Cal. Pro-Life Council, Inc. v. Getman*
  328 F.3d 1088 (9th Cir. 2003) ..................................................................... *passim*

*Chula Vista Citizens for Jobs and Fair Competition v. Norris*
  782 F.3d 520 (9th Cir. 2015) ............................................................................ 24

*Citizens United v. Fed. Election Comm'n*
  558 U.S. 310 (2010) .................................................................................. *passim*

*Citizens United v. Gessler*
  773 F.3d 200 (10th Cir. 2014) ......................................................................... 43

*Doe v. Harris*
  772 F.3d 563 (9th Cir.2014) ............................................................................ 44

*Dominguez v. Schwarzenegger*
  596 F.3d 1087 (9th Cir. 2010) ......................................................................... 10

*Family PAC v. McKenna*
  685 F.3d 800 (9th Cir. 2012) ..................................................................... *passim*

*Fed. Election Comm'n v. Wis. Right To Life, Inc.*
  551 U.S. 449 (2007) .................................................................................. 12, 13

*Fed. Trade Comm'n v. Affordable Media, LLC*
  179 F.3d 1228 (9th Cir. 1999) .............................................................. 43

*First National Bank of Boston v. Bellotti*
  435 U.S. 765 (1978) ........................................................................... 22

*Fund For Animals, Inc. v. Lujan*
  962 F.2d 1391 (9th Cir. 1992) .............................................................. 44

*Gentiva Healthcare Corp. v. Sebelius*
  723 F.3d 292 (D.C.Cir.2013) ............................................................... 29

*Harris v. Bd. of Supervisors, Los Angeles Cnty.*
  366 F.3d 754 (9th Cir. 2004) ................................................................ 10

*Human Life of Wash. Inc. v. Brumsickle*
  624 F.3d 990 (9th Cir. 2010) .................................................... *passim*

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Group of Boston*
  515 U.S. 557 (1995) ........................................................................... 25

*In re E.R. Fegert, Inc.*
  887 F.2d 955 (9th Cir. 1989) ........................................................ 11, 38

*Indep. Inst. v. Fed. Election Comm'n*
  216 F. Supp. 3d 176 (D.D.C. 2016) ..................................................... 30

*Indep. Inst. v. Williams*
  812 F.3d 787 (10th Cir. 2016) .............................................................. 30

*Iowa Right to Life Comm., Inc. v. Tooker*
  133 F. Supp. 3d 1179 (S.D. Iowa 2015) ............................................... 41

*John Doe No. 1 v. Reed*
  561 U.S. 186 (2010) ........................................................................... 17

*Kuba v. 1-A Agric. Ass'n*
  387 F.3d 850 (9th Cir. 2004) ........................................................ 36, 38

*Lakewood Citizens Watchdog Group v. City of Lakewood*
  21-CV-01488-PAB, 2021 WL 4060630 (D. Colo. Sept. 7, 2021) ....................... 30

*Lee v. Schmidt-Wenzel*
   766 F.2d 1387 (9th Cir. 1985) ...............................................................11

*Majors v. Abell*
   361 F.3d 349 (7th Cir. 2004). ......................................................... 6, 37

*McConnell v. Fed. Election Comm'n*
   251 F. Supp. 2d 176 (D.D.C. 2003) ............................................. 32, 45

*McConnell v. Fed. Election Comm'n*
   540 U.S. 93 (2003) .................................................... 18, 22, 23, 32, 45

*McIntyre v. Ohio Elections Comm'n,*
   514 U.S. 334 (1995) ...................................................................... 24, 25

*Miller v. Fairchild Indus., Inc.*
   797 F.2d 727 (9th Cir. 1986) .......................................................... 7, 11

*Murphy v. Hunt*
   455 U.S. 478 (1982) ...................................................................... 12, 15

*Planned Parenthood of Blue Ridge v. Camblos*
   116 F.3d 707 (4th Cir. 1997) ................................................................44

*Protectmarriage.com-Yes on 8 v. Bowen*
   752 F.3d 827 (9th Cir. 2014) ..................................................... *passim*

*Riley v. Nat'l Fed'n of Blind*
   487 U.S. 781 (1988) .............................................................................25

*Sports Form, Inc. v. United Press Int'l, Inc.*
   686 F.2d 750 (9th Cir. 1982) .................................................................9

*Sw. Voter Registration Educ. Project v. Shelley*
   344 F.3d 914 (9th Cir.2003) .................................................................9

*Tashjian v. Republican Party of Conn.*
   479 U.S. 208 (1986) ...........................................................................28

*Thalheimer v. City of San Diego*
   645 F.3d 1109 (9th Cir. 2011) .............................................................10

*Turtle Island Restoration Network v. U.S. Dep't of Com.*
  672 F.3d 1160 (9th Cir. 2012) ...............................................................11

*U.S. v. Raines*
  362 U.S. 17 (1960) ...............................................................................31

*Van Hollen v. Fed. Election Comm'n*
  811 F.3d 486 (D.C. Cir. 2016) ...........................................................29

*Wash. State Grange v. Wash. State Republican Party*
  552 U.S. 442 (2008) ............................................................ 2, 9, 27, 28

*Weinberger v. Romero–Barcelo*
  456 U.S. 305 (1982) ...........................................................................44

*Western Radio Services Co. v. Qwest Corp.*
  678 F.3d 970 (9th Cir. 2012) ..............................................................12

*Winter v. Natural Res. Def. Council*
  555 U.S. 7 (2008) ......................................................................... 10, 43

*Yamada v. Snipes*
  786 F.3d 1182 (9th Cir. 2015) .............................................................24

*Yes on Prop B v. City and Cnty. of San Francisco*
  826 Fed. Appx. 648 (9th Cir. 2020) ........................................... *passim*

*Zauderer v. Office of Disciplinary Counsel of S. Ct. of Ohio*
  471 U.S. 626 (1985) ...................................................................... 41, 42

*Zepeda v. U.S. I.N.S.*
  753 F.2d 719 (9th Cir. 1983) ..............................................................10

**Federal Statutes**
28 U.S.C.
  § 1331 .................................................................................................2

I.R.C.
  § 501(c)(3) ...................................................................................29, 30

**Rules**
Fed. R. Evid. 701 ...............................................................................28, 33

**State Statutes & Codes**

Cal. Gov. Code

§ 84200 ................................................................................4

§ 84200.5 .............................................................................4

§ 84202.3 .............................................................................4

§ 84203 ................................................................................4

§ 84501 ................................................................................4

§ 84502 ................................................................................4

§ 84511 ................................................................................4

**San Francisco Statutes, Codes & Ordinances**

S.F. Camp. & Gov. Conduct Code

§ 1.161 ......................................................................... 4, 26

§ 1.161(a) .................................................................... 5, 10

§ 1.161(a)(1) ........................................................... 3, 5, 34

§ 1.161(a)(3). ....................................................................38

§ 1.170(g) ..........................................................................13

S.F. Ethics Comm. Reg. Code

§ 1.161-3 ...............................................................5, 10, 11

**Other References**

Benjamin Schneider, *In a big election year, money is pouring into key San Francisco campaigns* (Jan 5, 2022; updated Jun 16, 2022), available at https://www.sfexaminer.com/the_fs/findings/in-a-big-election-year-money-is-pouring-into-key-san-francisco-campaigns/article_340c79e1-7cb0-5aa0-98dc-113632eff14e.html ........................................................................33

Joe Kukura, *Tons of Super PAC Cash Enters Supervisor Races*, SFWeekly.com, (Sept. 27, 2018), available at https://www.sfweekly.com/news/tons-of-super-pac-cash-enters-supervisor-races..................................................................22

Joshua Sabatini, *Voters to decide on increased campaign finance disclosures, new limits on contributions*, SFExaminer.com, (Jul. 15, 2019), available at https://www.sfexaminer.com/the-city/voters-to-decide-on-increased-campaign-finance-disclosures-new-limits-on-contributions/................................................22

# INTRODUCTION

Proposition F seeks to shine a light on political spending in San Francisco. To make it harder for committees to hide behind misleading or uninformative names that obscure their funding sources, Proposition F requires committees to disclose both their direct contributors and the major donors to those contributors in their campaign advertisements. That "secondary contributor" requirement allows voters to follow the money, and gives voters fuller and better information about who is behind the campaign ads that inundate their mailboxes, social media feeds and newspapers in the run-up to an election.

Appellants challenged Proposition F's secondary contributor disclaimer requirement as applied to San Franciscans Supporting Prop B's proposed advertisements for the June 2022 election. Now that the election is over, Appellants' appeal is moot because Appellants cannot obtain meaningful relief or satisfy the "capable of repetition, yet evading review" exception to the mootness doctrine. In fact, Appellants do not even try and thus have waived the argument that the "capable of repetition, yet evading review" exception applies.

Even if their appeal were not moot, Appellants' arguments fail on the merits. Based on out of context quotations from easily distinguishable cases, Appellants try to cast Proposition F's disclaimers as a compelled speech requirement that must satisfy strict scrutiny, but Appellants' argument cannot be squared with Citizens United v. Fed. Election Comm'n, 558 U.S. 310 (2010). *Citizens United* makes clear that exacting scrutiny is the proper standard of review. Applying that standard, Proposition F is constitutional. An unbroken line of cases recognizes the importance of providing donor information to the voters so that they can know who is speaking and evaluate the credibility of the speech. *Family PAC v. McKenna*, 685 F.3d 800, 806 (9th Cir. 2012); *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1005 (9th Cir. 2010); *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d

1088, 1105-06 (9th Cir. 2003). Appellants speculate about voter confusion, but Appellants offer no evidence to show that voters will be confused by the requirement they overwhelmingly approved just a few years ago. As the district court correctly held, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 457 (2008) does not allow courts to assume voter confusion in the absence of evidence.

Finally, Appellants argue that the required disclaimers are too large, but Appellants do not challenge the provisions of law that control the size of the disclaimer. ER 14 n. 6. In any event, the City agreed not to enforce Proposition F as applied to San Franciscans Supporting Prop B's small format advertisements where the disclaimer would take a large portion of the advertising space. Contrary to Appellants' unsupported claims, the City has never enforced Proposition F in a way that would prevent committees from running effective advertisements or force committees to "give up speaking altogether." AOB at 43. Indeed, other committees have complied with Proposition F's requirements without any apparent difficulty. SER 38.

Accordingly, Appellants' appeal is moot, and should be dismissed. If the Court does not dismiss the appeal, the City respectfully requests that the Court affirm the decision of the district court.

## STATEMENT OF JURISDICTION

On June 1, 2022, the district court denied Appellants' motion for a temporary restraining order and preliminary injunction. ER 15. The district court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Appellants timely filed a Notice of Appeal on June 6, 2022. ER 59.

## ISSUES PRESENTED

1.      Is Appellants' appeal moot where Appellants can no longer obtain meaningful relief because the election is over, and Appellants have not

demonstrated that the "capable of repetition, yet evading review" exception to the mootness doctrine applies?

2.      Did the district court abuse its discretion when denying Appellants' Motion for a Temporary Restraining Order and Preliminary Injunction which challenged Proposition F's secondary contributor disclosure requirement as applied to Appellants, where that requirement is substantially related to, and narrowly tailored to further, the City's important informational interest?

3.      Did the district court abuse its discretion when denying Appellants' Motion for a Temporary Restraining Order and Preliminary Injunction where Appellants failed to demonstrate that they were likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, or that an injunction is in the public interest?

## STATEMENT OF THE CASE

### I.      PROPOSITION F

On November 5, 2019, San Francisco voters approved Proposition F with 76.89% of the vote.  Supplemental Excerpts of Record ("SER") 073.  Proposition F, known as the "Sunlight on Dark Money Initiative," sought to increase the "disclosures of the true sources of funds behind campaign ads by Dark Money SuperPACs . . . to help voters understand who is paying for the campaign ads they see in the mail, on television, and online."  SER 77, 80.  To that end, Proposition F requires "primarily formed independent expenditure committees" and "primarily formed ballot measure committees" to include disclaimers on their print advertisements that include "both the name of and the dollar amount contributed by each of the top three major contributors of $5,000 or more."  S.F. Campaign and Gov't Conduct Code § 1.161(a)(1).[1]  In addition, if "any of the top three major

---

[1] "Disclaimers" refers to information on a political advertisement, and "disclosures" refer to public reports filed with government entities.

contributors is a committee, the disclaimer must also disclose both the name of and the dollar amount contributed by each of the top two major contributors of $5,000 or more to that committee." *Id.*

Proposition F exists among well-established disclaimer and disclosure requirements under California and San Francisco law that are not challenged in this litigation. ER 4 (citing Cal. Gov't Code §§ 84200, 84200.5, 84202.3, 84203, 84502; *see also, e.g.* SF Campaign and Gov't Conduct Code § 1.161). For instance, California law requires political advertisements to include a disclaimer identifying the advertising committee and the committee's top three contributors of $50,000 or more. *See* Cal. Gov't Code §§ 84501-84511. Also, before the voters enacted Proposition F, San Francisco law already required primarily formed committees to include written and spoken disclaimers on their advertisements that disclosed their top three major donors of $10,000 or more. SER 75. Appellants do not challenge those requirements.

## II. PRIOR LITIGATION CHALLENGING PROPOSITION F.

Before the March 3, 2020 election, Appellant Todd David and an independent expenditure committee he formed called Yes on Prop B challenged Proposition F's requirements.[2] In that litigation, the district court enjoined Proposition F as applied to Yes on Prop B's smaller advertisements where the required disclaimer would take up a majority of space on the advertisement. ER 7. The district court also held that Proposition F's secondary contributor disclaimer requirement is constitutional. ER 7-9.

On appeal, the Ninth Circuit concluded that the case was moot because the record was "devoid of any detail indicating that Appellants would engage in the

---

[2] The Prop B in the 2020 case and the Prop B in the June 2022 election are unrelated. The March 2020 measure concerned an earthquake safety and emergency response bond, and the June 2022 proposal involved proposed changes to the City's Building Inspection Commission. ER 6 n. 1.

type of conduct subject to Proposition F—i.e., running advertisements." *Yes on Prop B v. City and Cnty. of San Francisco*, 826 Fed. Appx. 648, 649 (9th Cir. 2020) (unpublished). Therefore, the "capable of repetition yet evading review" exception to the mootness doctrine did not apply. *Id.*

## III.  PROCEDURAL HISTORY

On May 12 2022, Appellants filed a Motion for a Temporary Restraining Order and Preliminary Injunction. SER 86. Although Proposition F was enacted over two years earlier and other committees complied with its requirements without any apparent difficulty, ER 14, SER 38, Appellants claimed the need for emergency relief to enjoin Proposition F's requirements.

In its Motion, Appellants challenged Proposition F's secondary contributor disclaimer requirements codified in San Francisco Campaign and Gov't Conduct Code § 1.161(a)(1) as applied. ER 5, 7; SER 96, 124. Appellants did not seek any facial relief or challenge any other requirements in Section 1.161(a), including the requirements concerning the size of the disclaimers. *Id.*; ER 14 n. 16. Although Appellants now contend on appeal that they challenged "S.F. Code § 1.161(a) and S.F. Reg. 1.161-3's secondary donor" requirement "on its face and as-applied," AOB at 22, its motion before the district court challenged only Section 1.161(a)(1) and only as applied. ER 5, 7; ER 14 n. 16; SER 124.

Appellants did not seek any relief with respect to Appellant Edwin M. Lee Asian Pacific Democratic Club Pac Sponsored By Neighbors For A Better San Francisco Advocacy ("Ed Lee Dems") before the district court. Appellants asked the Court to enjoin the City from "enforcing against Appellants the on-communication disclosure requirements for secondary donors at S.F. Code § 1.161(a)," but Ed Lee Dems does not produce any advertisements and therefore does not face a risk that Section 1.161's secondary contributor disclaimer requirement would be enforced against it. SER 124; AOB at 20-21.

On June 1, 2022, the district court denied Appellants' motion. The district court concluded that Proposition F's secondary contributor disclaimer requirement should be evaluated under exacting scrutiny. Applying that standard, the court concluded that the secondary contributor disclaimer requirement is substantially related to the City's important governmental interest in providing information to the voters about who is speaking in election communications. The district court explained that "voters may struggle to cast an informed and meaningful vote if they do not know who is speaking." ER 11. "Proposition F assists voters in determining who is speaking, and if that speaker has a 'creative and misleading' name, who is most closely associated with that speaker." ER 12. The district court explained that Appellants rested their arguments on "entirely speculative" claims of voter confusion and unfounded assertions that voters will be misled by the secondary contributor disclaimer requirement. ER 13. Likewise, Appellants claimed that their donations would be chilled, but those assertions were "conclusory and speculative," unsupported by any "concrete evidence." ER 14.

The district court also concluded that Proposition F is narrowly tailored. *Id.* Appellants claimed that the City's governmental interests could be achieved through less restrictive means, including requiring disclosures that voters could view on line or at the Ethics Commission's office. *Id.* But the district court concluded that Appellants' proposals were "unlikely to achieve the governmental interest at all" because Appellants "provide[d] no plausible reason to think that either of their proposals would succeed at informing voters." *Id.* Because "fewer people are likely to see" disclosures, disclosure requirements are a "less effective method of conveying information" to voters than disclaimers. *Id.* (quoting *Majors v. Abell*, 361 F.3d 349, 353 (7th Cir. 2004). In addition, disclaimers provide information to voters "contemporaneously with the speech" that is trying to influence their vote, unlike disclosures which are viewed later (if at all). *Id.*

Accordingly, the district court rejected Appellants' claim that there were less restrictive means that would serve the City's important governmental interest. *Id.*

After concluding that Appellants failed to demonstrate a likelihood of success on the merits, the district court held that Appellants failed to satisfy their burden on the remaining preliminary injunction factors. Appellants failed to show irreparable harm. Likewise, Appellants failed to show that the balancing of equities or the public interest favors an injunction. ER 15. While Appellants at most showed a modest burden on their rights, the City has an important interest in informing voters before an election. *Id.* Accordingly, the district court denied Appellants' motion for injunctive relief.

## SUMMARY OF ARGUMENT

This appeal is moot. Appellants sought a preliminary injunction as applied to election advertisements concerning the June 2022 election. Now that the election is over, Appellants cannot obtain meaningful relief. *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014). Presumably, Appellants will argue that the appeal is not moot under the "capable of repetition, yet evading review" exception to the mootness doctrine, but Appellants waived that argument by not making it in their opening brief. *Miller v. Fairchild Indus., Inc*., 797 F.2d 727, 738 (9th Cir. 1986).

Even if Appellants had not waived the argument, Appellants' reliance on the "capable of repetition, yet evading review" fails. The "capable of repetition, yet evading review" exception applies only in "exceptional situations" where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Protectmarriage.com,* 752 F.3d at 836-37. Here, Appellants have not satisfied their burden to demonstrate a "reasonable expectation" that any of them will be subject to Proposition F's

secondary contributory requirements in future elections.  Appellants offer conclusory assertions, but the record remains "devoid of any detail" supporting their claim that they will face harm from Proposition F's disclaimer requirement in upcoming elections.  *Yes on Prop B v. City and County of San Francisco*, 826 Fed. Appx. 648, 649 (9th Cir. 2020) (unpublished).  This Court already concluded that the mootness doctrine barred consideration of a nearly identical case Appellant David brought in 2020 on behalf of another primarily formed committee, and this case is moot for the same reasons.  *Id.*

If this appeal is not moot, Appellants' claim fails on the merits.  The district court did not abuse its discretion when concluding that Proposition F's secondary contributor requirement satisfies the applicable exacting scrutiny standard. *Citizens United*, 558 U.S. at 366–67 (holding disclaimer and disclosure requirements are subjected to "exacting scrutiny").  Exacting scrutiny requires that there be a "substantial relation" between Proposition F's disclaimer requirement and a "sufficiently important" governmental interest.  *Id*.  In addition, "the challenged requirement must be narrowly tailored to the interest it promotes." *Americans for Prosperity Found*., 141 S. Ct. at 2384.  Here, Proposition F—also called the Sunlight on Dark Money Initiative— is substantially related to San Francisco's important governmental interest in ensuring an informed electorate. Proposition F furthers that interest by requiring political advertisements to inform voters about "the true source of funds behind campaign ads."  SER 77.  "Providing information to the electorate is vital to the efficient functioning of the marketplace of ideas, and thus to advancing the democratic objectives underlying the First Amendment."  *Brumsickle*, 624 F.3d at 1005.  By "revealing information about the contributors to and participants in public discourse and debate," disclaimer and disclosure "laws help ensure that voters have the facts they need to evaluate the various messages competing for their attention."  *Id.*

Appellants advance three arguments against Proposition F's disclaimer requirement. First, Appellants object that the disclaimers are a form of compelled speech that reduces the quantity and effectiveness of their advertisements. Those arguments were already rejected in *Citizens United* and fail here as well. *Citizens United*, 558 U.S. at 368. Second, Appellants assert that disclaimers are unnecessary because inquisitive voters can already find the same information if they visit the Ethics Commission or know how to find the information on websites. But the district court did not abuse its discretion when it determined that Appellants' proposed alternatives would not serve the City's important governmental interests because voters are less likely to see information in government files and will not have access to that information at the time they see the advertisement. Third, Appellants speculate that Proposition F's disclaimers will mislead voters but the district court properly rejected Appellants' unfounded speculation because courts cannot assume voter confusion in the absence of evidence. *Wash. State Grange*, 552 U.S. at 457.

Accordingly, the district court did not abuse its discretion when denying Appellants' Motion for a Temporary Restraining Order and Preliminary Injunction. The appeal should either be dismissed as moot, or the Court should affirm the district court.

## STANDARD OF REVIEW

This Court's review of an order granting or denying a preliminary injunction "is limited and deferential." *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir.2003) (*en banc*). The Court "is not empowered to substitute its judgment for that of the (district court)." *Sports Form, Inc. v. United Press Int'l, Inc*., 686 F.2d 750, 752 (9th Cir. 1982) (alternation in original). "As long as the district court got the law right, it will not be reversed simply because the appellate court would have arrived at a different result if it had applied the law to

the facts of the case." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) (quoting *Dominguez v. Schwarzenegger,* 596 F.3d 1087, 1092 (9th Cir. 2010)) (internal quotation marks omitted). Ordinarily, "[t]he grant or denial of a motion for a preliminary injunction lies within the discretion of the district court. Its order granting or denying the injunction will be reversed only if the district court abused its discretion." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 724 (9th Cir. 1983). "When the district court is alleged to have relied on an erroneous legal premise, we review the underlying issues of law de novo." *Harris v. Bd. of Supervisors, Los Angeles Cnty.*, 366 F.3d 754, 760 (9th Cir. 2004).

To obtain injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)).

## ARGUMENT

## I. THIS APPEAL IS MOOT.

San Franciscans Supporting Prop B is a primarily formed ballot measure committee. As its name suggests, San Franciscans Supporting Prop B was formed to support Proposition B, a measure that the San Francisco voters approved during the June 2022 election. Before the election, Appellants sought relief from Proposition F's requirements as applied to San Franciscans Supporting Prop B's advertisements.[3] ER 5; SER 96; 102-04; 124. Now that the election is over and

---

[3] Appellants now contend on appeal that they are challenging "S.F. Code § 1.161(a) and S.F. Reg. 1.161-3's secondary donor" requirement "on its face and as-applied," AOB at 22, but Appellants did not challenge San Francisco Ethics

Proposition B has already passed, Appellants can no longer receive meaningful relief. *Protectmarriage.com*, 752 F.3d at 834 (holding court "loses its power to render a decision on the merits" of a claim where "a federal court can no longer effectively remedy a 'present controversy' between the parties"). As in the case Appellant David brought in 2020 on behalf of another primarily formed committee, this case is moot. *Yes on Prop B*, 826 Fed. Appx. at 649.

Appellants do not dispute that ordinarily the passage of Proposition B would moot their appeal. Instead, they simply ignore their mootness problem altogether. Despite this Court's prior decision in *Yes on Prop B*, Appellants do not include any legal argument in their brief to show that their appeal is not moot or that the "capable of repetition, yet evading review" exception applies. Appellants have the burden to show that the exception applies, *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985), but nonetheless they do not even mention it in their opening brief. Therefore, Appellants have waived the argument. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986) (holding Appellant waived argument not "specifically and distinctly argued in appellant's opening brief"). Likewise, Appellants cannot assert that the "capable of repetition, yet evading review" exception applies for the first time in their reply brief. "[A]rguments raised for the first time in a reply brief are waived." *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1166 n. 8 (9th Cir. 2012) (internal quotation marks omitted). This Court should not "do an appellant's work for it, either by manufacturing its legal arguments, or by combing the record on its behalf for

---

Comm'n Reg. 1.161-3 or bring a facial challenge before the district court. ER 5, 7; ER 14 n. 16; SER 96, 124. Accordingly, those arguments are waived. *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) (explaining that appellate courts will not consider arguments that are not "raised sufficiently for the trial court to rule on it"). Further, Appellants cannot satisfy the requirements for facial relief because they have not shown that other committees face unconstitutional burdens from Proposition F's disclaimer requirements. Indeed, the record demonstrates otherwise. SER 38.

factual support." *Western Radio Services Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012).

In any event, Appellants' appeal would still be moot even if they had not waived the argument. The "capable of repetition, yet evading review" exception applies only in "exceptional situations." *Protectmarriage.com*, 752 F.3d at 836-37. Under that exception, the Court retains jurisdiction over an otherwise moot appeal where: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* at 836 (quoting *Fed. Election Comm'n v. Wis. Right To Life, Inc.*, 551 U.S. 449, 462 (2007)).

Here, Appellants have failed to satisfy the second prong because they have not shown a "'reasonable expectation' or a 'demonstrated probability' that 'the same controversy will recur involving the same complaining party.'" *Wis. Right To Life*, 551 U.S. at 463 (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982). Appellants do not argue that San Franciscans Supporting Prop B will face any on-going harm from Proposition F. Indeed, they concede (as they must) that the June election is over and Proposition B already was enacted by the voters. AOB at 19. Appellants do not attempt to show that San Franciscans Supporting Prop B will even continue to exist—let alone will face any ongoing harm from Proposition F's requirements—now that the election is over.

Appellants also fail to make the required showing for Appellant Todd David. Appellants assert that Appellant David will face the same controversy again because "San Francisco will continue to hold elections," and Appellant David "will continue to participate in them." AOB at 19. However, merely "participating" in future elections is not sufficient. *Yes on Prop B*, 826 Fed. Appx. at 649. Proposition F's secondary contributor disclaimer requirement applies only where

(1) a "primarily formed independent expenditure committee" or "primarily formed ballot measure committee" decides to run an advertisement concerning an upcoming election, (2) the "primarily formed independent expenditure committee" or "primarily formed ballot measure committee" has as one of its top three donors another committee that has donated $5,000 or more, and (3) that committee also received funding from other contributors in amounts of $5,000 or more. SER 81. And Appellant David can only face liability under Proposition F is he is the treasurer of a "primarily formed independent expenditure committee" or "primarily formed ballot measure committee" that violates Proposition F's requirements. S.F. Campaign & Governmental Conduct Code Section 1.170(g). Thus, to satisfy the "reasonable expectation" requirement, Appellant David would have to show a reasonable expectation that he will run advertisements in the future as a treasurer acting on behalf of primarily formed independent expenditure committees or primarily formed ballot measure committees that is funded through a chain of committees sufficient to trigger Proposition F's secondary contributor disclaimer requirements. *Wis. Right To Life*, 551 U.S. at 463.

Appellants failed to make that showing. Appellants note that Mr. David is the treasurer and principal of Save John F. Kennedy Promenade, a primarily formed committee for the November 2022 election. AOB at 19-20. But Appellants offer nothing to show that the committee has any intention of running advertisements in the upcoming election or that the committee's funding would trigger the secondary contributor requirement if it did. Likewise, Appellants assert that Mr. David is "an additional principal officer" of another committee called Affordable Homes Now San Francisco, but he does not show that he faces any liability as an "additional principal officer." Nor does he show that Affordable Homes Now San Francisco has any intention of running advertisements for any upcoming election or that their donations would trigger Proposition F's secondary

contributor disclaimer requirements. As in *Yes on Prop B*, Appellants have failed to come forward with any evidence showing that Appellant David intends to "engage in the type of conduct subject to Proposition F." *Yes on Prop B*, 826 Fed. Appx. at 649. Those omissions are glaring given that the November 2022 election is only months away. *Id.*

Unable to show any "reasonable expectation" that Mr. David will face the "same action again," *Protectmarriage.com*, 752 F.3d at 836, Appellants are left only with speculation and conclusory assertions. Appellants claim that Mr. David will "continue creating primarily formed committees in future elections, and will seek to share ads and communications substantially and materially similar to those" at issue in this appeal, AOB at 20, but the record remains "devoid of any detail" supporting those assertions. *Yes on Prop B*, 826 Fed. Appx. at 649. Appellants do not offer any evidence to show when Mr. David will next create a primarily formed committee, what type of ballot measure the committee will support, what Mr. David's involvement will entail, whether the committee is likely to run advertisements before an election, whether the committee will receive donations from other committees, or whether the committee will have contributors that trigger Proposition F's secondary contributor disclaimer requirement. Without that information, the Court cannot "discern a concrete plan to engage in protected conduct," or a reasonable expectation that Mr. David will be subject to Proposition F's secondary contributor disclaimer requirement in the future. *Protectmarriage.com*, 752 F.3d at 840. Appellants assert that the secondary contributor disclosure requirement "will continue to pose problems in future elections, as it has been in past elections," AOB at 20, but they offer no facts supporting that claim and the evidence in the records shows the opposite. ER 14 n. 5 (noting that "there is no evidence that other committees or donors have been burdened by the [secondary contributor disclaimer requirement] during the more

than two years that it has been in effect—indeed, the opposite appears to be true."); SER 38 ¶ 2. In short, the scant and conclusory information Appellants provide merely shows "[a] general intent to [engage in protected conduct] at some unknown date in the future," but that is insufficient to invoke the jurisdiction of this Court. *Id.*; *see also Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (holding that the "mere physical or theoretical possibility" of future harm insufficient for the "capable of repetition, yet evading review" exception).

Appellants have done even less to show a live controversy concerning Ed Lee Dems. Appellants do not suggest that Ed Lee Dems engages in any conduct subject to Proposition F's requirements. Indeed, Appellants' own brief makes clear that Ed Lee Dems does not "engage in the type of conduct subject to Proposition F—i.e., running advertisements." *Yes on Prop B*, 826 Fed. Appx. at 649. Because Ed Lee Dems is not subject to Proposition F's requirements, Appellants did not even seek injunctive relief that would apply to Ed Lee Dems before the district court, and Ed Lee Dems has no interest in this appeal. While Appellants sought an injunction to prevent the City from enforcing Proposition F's secondary contributor disclaimer requirement against "Plaintiffs," SER 124, the requested injunction did not apply to Ed Lee Dems because Ed Lee Dems does not produce election advertisements, and therefore Proposition F's requirement cannot be enforced against them. ER 23.

In any event, even assuming that Ed Lee Dems should be considered in the mootness analysis, Appellants offer nothing to show a "reasonable expectation" that Ed Lee Dems will face any harm from Proposition F's requirements. *Protectmarriage.com*, 752 F.3d at 836. Appellants offer the conclusory allegations that Ed Lee Dems is a "familiar player in the city's political landscape," has donated to other committees in the past, and intends to do so in the future. AOB at 21. But nothing in Proposition F prevents Ed Lee Dems from donating to

primarily formed committees. Ed Lee Dems presumably does not wish to have its major donors appear on disclaimers, but Ed Lee Dems has not shown a "reasonable expectation" that will happen in the future. *Id.* Even assuming Ed Lee Dem's desire to obscure its funding sources from voters is a valid consideration in the mootness analysis, Ed Lee Dems has not demonstrated that it is—or reasonably expects to be—one of the top three major donors to the Alice B. Toklas Lesbian & Gay Democratic Club PAC, the San Francisco Democratic County Central Committee or any of the other committees to which Ed Lee Dems wishes to donate; and therefore, Ed Lee Dems has not shown that it is like to be a secondary contributor under Proposition F. AOB 20-21; ER 23-25.

Accordingly, this appeal is moot. As in *Yes on Prop B*, Appellants have failed to satisfy the "reasonable expectation" requirement, and therefore the "capable of repetition yet evading review" exception does not apply. *Yes on Prop B*, 826 Fed. Appx. at 649; *Protectmarriage.com*, 752 F.3d at 836.

## II. PROPOSITION F'S SECONDARY CONTRIBUTOR DISCLAIMER REQUIREMENT IS CONSTITUTIONAL.

If the Court concludes that the appeal is not moot, the City requests that the Court affirm the decision of the district court. Appellants' arguments provide no basis to reverse the district court's careful and well-reasoned opinion. Appellants' arguments fail because they rely on the wrong legal standard, inapposite case law, and speculation to support their claims.

### A. PROPOSITION F'S DISCLAIMER REQUIREMENT SHOULD BE EVALUATED UNDER THE EXACTING SCRUTINY STANDARD.

Appellants' argument fails at the outset because exacting scrutiny—not strict scrutiny—provides the appropriate standard. Courts generally look favorably upon disclaimer and disclosure requirements for political and campaign spending. *See, e.g., Citizens United*, 558 U.S. at 371 ("disclosure permits citizens and

shareholders to react to the speech of corporate entities in a proper way");
*Brumsickle*, 624 F.3d at 1008 ("Campaign finance disclosure requirements thus
advance the important and well-recognized governmental interest of providing the
voting public with the information with which to assess the various messages
vying for their attention in the marketplace of ideas.").  Given the important
purposes they serve and the smaller burden they place on speech when compared
to other regulations of campaign activities, the Supreme Court and Ninth Circuit
have made clear that disclosure and disclaimer requirements are subject to exacting
scrutiny, not strict scrutiny.  *Citizens United*, 558 U.S. at 366-67 (holding
disclaimer and disclosure requirements are subjected to "exacting scrutiny"); *John
Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010) (holding that "challenges to
disclosure requirements in the electoral context" are reviewed under "exacting
scrutiny"); *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) (*per curiam*) (holding
disclosure requirements are subject to exacting scrutiny); *Davis v. Fed. Election
Comm'n*, 554 U.S. 724, 744 (2008) (holding governmental interest in disclosure
"must survive exacting scrutiny"); *Family PAC*, 685 F.3d at 805–06 ("Disclosure
requirements are subject to exacting scrutiny."); *Brumsickle*, 624 F.3d at 1005
(explaining that "a campaign finance disclosure requirement is constitutional if it
survives exacting scrutiny," holding that the Supreme Court has clarified that that
disclosure requirements are not subject to strict scrutiny).

Appellants acknowledge, as they must, that the Supreme Court and Ninth
Circuit apply the exacting scrutiny standard when evaluating disclosure and
disclaimer requirements.  AOB at 28.  They claim that the level of scrutiny "may
be increasing" based on their reading of the tea leaves from two Supreme Court
concurring opinions, AOB at 28, but the Supreme Court's majority opinion
recently re-affirmed the exacting scrutiny standard.  *Americans for Prosperity*

*Found. v. Bonta*, 141 S. Ct. 2373, 2383 (2021) (holding "compelled disclosure requirements are reviewed under exacting scrutiny").

Appellants claim that the disclaimers at issue in this case are not "true disclaimers," but they offer no support for that claim. Disclaimers are statements that appear on the advertisement or are spoken as part of the advertisement. Disclosures are statements and information filed with governmental entities. *Citizens United*, 558 U.S. at 366. Appellants cite no authority for the proposition that disclaimers may only state the entity who paid for the advertisement. AOB at 29. Indeed, in *Citizens United*, the Supreme Court upheld a disclaimer requirement that required that additional information be provided to voters, including the name and address (or Web site address) of the person or group that funded the advertisement and a statement that the advertisement that the advertisement "is not authorized by any candidate or candidate's committee." *Citizens United,* 558 U.S. at 366.

In any event, even if disclaimers must be limited to describing who is responsible for the content of the advertisement, that is exactly what Proposition F's disclaimers do. Proposition F addresses the problem of election communications from entities that have joined together "in ad hoc organizations with creative but misleading names" designed to obscure the interests that support a ballot measure and thus keep valuable information from the voters. *ACLU v. Heller,* 378 F.3d 979, 994 (9th Cir. 2004); *see also McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 197 n. 23 (2003) (overruled on other grounds by *Citizens United*, 558 U.S. 310). Proposition F's secondary contributor requirement allows voters to learn information about the "actual contributors to such groups and thereby provide useful information concerning the interests supporting or opposing a ballot proposition or a candidate." *Heller*, 378 F.3d at 994. Thus, Proposition F's secondary contributor disclaimer requirement provides the information necessary

for voters to understand who is responsible for the content of the advertisement. Proposition F does not create a "hybrid of disclosure and disclaimers." AOB at 28. Instead, Proposition F's disclaimer—like all disclaimers—provides information to voters on the advertisement to allow voters to understand the entities seeking to influence votes.

Appellants claim that the disclaimers are a form of compelled speech that must be evaluated under strict scrutiny based on *Heller*, but Appellants' reliance on that case is misplaced. As this Court explained in *Brumsickle*, courts applied strict scrutiny, or avoided deciding what type of scrutiny applied, during the time period when *Heller* was decided. Since then, "[r]ecent Supreme Court decisions" from 2010 to the present 'have eliminated the apparent confusion as to the standard of review,'" and have made clear that disclaimer requirements are subject to exacting scrutiny. *Id*. at 999, 1005.[4] Appellants argue that strict scrutiny should apply because disclaimers appear on the advertisements themselves, require information the election speaker might wish to hide from voters, and therefore alter communications. AB 25. But Appellants' argument cannot be squared with *Citizens United* and *Brumsickle*. The disclaimer requirements upheld in those cases were also "communication-altering" because they appeared on the advertisement, required the advertisement to include certain information, and reduce the amount of space left for the advertisement. Nonetheless, the Supreme Court and this Court have made it clear that exacting scrutiny is the standard of review for disclaimers. *Citizens United*, 558 U.S. at 366-68; *Brumsickle*, 624 F.3d at 1005. Likewise, Appellants complain that Proposition F's disclaimers are not short, but Appellants cite no authority for the proposition that the standard of review turns on the length of the required disclaimer. AOB at 29.

---

[4] In addition, *Heller* is easily distinguishable because it is an anonymous speech case, not an election disclaimer case.

In short, Appellants offer nothing to overcome the district court's conclusion that exacting scrutiny provides the appropriate standard for evaluating the challenge to Proposition F. ER 10; *Citizens United*, 558 U.S. at 366-67.

**B. PROPOSITION F'S SECONDARY CONTRIBUTOR DISCLAIMER REQUIREMENT SATISFIES EXACTING SCRUTINY.**

Exacting scrutiny requires that there be a "substantial relation" between Proposition F's disclaimer requirement and a "sufficiently important" governmental interest. *Citizens United*, 558 U.S. at 366-67. In addition, "the challenged requirement must be narrowly tailored to the interest it promotes." *Americans for Prosperity Found.*, 141 S. Ct. at 2384. Contrary to Appellants' assertion, exacting scrutiny does not require a law to be struck down whenever "less restrictive means exist." AOB at 32. Instead, while the law must be tailored to the government's important interest, the government need not chose "the least restrictive means of achieving that end." *Americans for Prosperity Found.*, 141 S. Ct. at 2384.

Proposition F's disclaimer requirements satisfy exacting scrutiny because Proposition F substantially relates to the City's important interest in providing information to the voters and is narrowly tailored to the interest it promotes.

**1. The City Has An Important Governmental Interest In Providing The Electorate With Information About The Sources Of Election-Related Spending.**

Proposition F's disclaimer requirement serves the City's important interest in providing the electorate with information about the sources of election-related spending and the entity who is speaking in political advertisements. SER 80 (stating that purposes of San Francisco Campaign Finance Reform Ordinance, which Proposition F amended, include "assisting voters in making informed electoral decisions through increased disclosure . . ."). Proposition F seeks to

further that interest by requiring political advertisements to inform the public about "the true source of funds behind campaign ads." SER 77.

The interests served by Proposition F are certainly important. "In a republic where the people are sovereign, the ability of the citizenry to make informed choices" in elections is "essential." *Buckley*, 424 U.S. at 14-15. Thus, "[p]roviding information to the electorate is vital to the efficient functioning of the marketplace of ideas, and thus to advancing the democratic objectives underlying the First Amendment." *Brumsickle*, 624 F.3d at 1005. By "revealing information about the contributors to and participants in public discourse and debate," disclaimer and disclosure "laws help ensure that voters have the facts they need to evaluate the various messages competing for their attention." *Id.* Indeed, because "[a]n appeal to cast one's vote a particular way might prove persuasive when made or financed by one source, but the same argument might fall on deaf ears when made or financed by another," disclaimer and disclosure requirements "advance the important and well-recognized governmental interest of providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas." *Id.* at 1008.

The need to provide transparency to the voters has repeatedly been recognized as an important—and even a compelling—governmental interest. *Brumsickle*, 624 F.3d at 1005-06; *Getman*, 328 F.3d at 1104-05 (holding California's interest in providing information to voters is "sufficiently compelling to survive strict judicial scrutiny").[5] As the Supreme Court explained in *Citizens United*, the increased "transparency" provided by disclosure and disclaimer requirements "enables the electorate to make informed decisions and give proper

_____

[5] Therefore, even if strict scrutiny were the appropriate standard, Proposition F would satisfy that standard because its disclaimers promote a compelling governmental interest and are the least restrictive means for furthering that interest.

weight to different speakers and messages." *Citizens United,* 558 U.S. at 371.
"[T]he people in our democracy are entrusted with the responsibility for judging
and evaluating the relative merits of conflicting arguments.  They may consider, in
making their judgment, the source and credibility of the advocate." *Bellotti*, 435
U.S. at 791-92.  Proposition F's disclaimer requirements gives San Francisco
voters the tools they need to make those determinations.

      2.      **Proposition F's Disclaimer Requirements Are Substantially Related To The City's Important Interest In Providing Information To The Voters.**

      Proposition F's disclaimer requirements are substantially related to the
City's interest in providing information to the voters.  Appellants challenge
Proposition F's efforts to address "stealth" and "dark money" influences in San
Francisco elections.  As courts have repeatedly recognized, "individuals and
entities interested in funding election-related speech often join together in ad hoc
organizations with creative but misleading names" designed to obscure the
interests that support a ballot measure and thus keep valuable information from the
voters.  *Heller*, 378 F.3d at 994; *see also McConnell v. Fed. Election Comm'n*, 540
U.S. 93, 197 n. 23 (2003) (overruled on other grounds by *Citizens United*, 558 U.S.
310).  For instance, in San Francisco, committee names such as "San Franciscans
for Change" and "Safe and Clean Sunset" have been used to obscure that funding
actually comes from Progress San Francisco, a state political committee which
itself is "largely funded by developer and tech interests."[6]  To prevent efforts to
hide information from the voters, Proposition F requires the committee paying for
the advertisement to identify its top three largest donors who donated $5,000 or
more and the amount contributed to the committee.  If any of the three major

---

      [6] *See* https://www.sfexaminer.com/the-city/voters-to-decide-on-increased-campaign-finance-disclosures-new-limits-on-contributions/; *also*
https://www.sfweekly.com/news/tons-of-super-pac-cash-enters-supervisor-races/.

donors is another committee, the committee running the advertisement must disclose the top two donors to that committee as well. SER 81; SF Campaign and Gov't Conduct Code § 1.161.

Proposition F's secondary contributor requirement allows voters to learn information about the "actual contributors to such groups and thereby provide useful information concerning the interests supporting or opposing a ballot proposition or a candidate." *Heller*, 378 F.3d at 994; *see also Alaska Right To Life Comm. v. Miles,* 441 F.3d 773, 793 (9th Cir. 2006) ("[W]e believe that there is a compelling state interest in informing voters who or what entity is trying to persuade them to vote in a certain way."); *Family PAC*, 685 F.3d at 806 ("We have repeatedly recognized an important (and even compelling) informational interest in requiring ballot measure committees to disclose information about contributions."). Indeed, given that initiative campaigns have become a "money game, where average citizens are subjected to advertising blitzes of distortion and half-truths," "[k]nowing which interested parties back or oppose a ballot measure is critical, especially when one considers that ballot-measure language is typically confusing, and the long-term policy ramifications of the ballot measure are often unknown. At least by knowing who backs or opposes a given initiative, voters will have a pretty good idea of who stands to benefit from the legislation." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1105-06 (9th Cir. 2003); *see also ProtectMarriage.com v. Bowen*, 599 F. Supp. 2d 1197, 1208 (E.D. Cal. 2009). Proposition F's secondary contributor requirement provides "critical" information to the voters, while making it more difficult for political committees to evade existing disclaimer requirements by using misleading or uninformative names to hide the sources of their funding from the public. *Id.*; *see also McConnell*, 540 U.S. at 197.

Appellants cannot dispute that Proposition F advances the City's important informational interests. Instead, Appellants assert that the need to provide information to the voters cannot justify a disclaimer requirement because that requirement could force a speaker to "make statements or disclosures she would otherwise omit." AOB at 34. Appellants are simply wrong. All disclaimer requirements—including those that have been repeatedly upheld by the Supreme Court—force election communications to include information the speaker would otherwise omit. *Citizens United*, 558 U.S. at 366. Nonetheless, disclaimers are constitutional because of the compelling state interests in providing information to the voters about the persons or entities trying to influence their voters. *Id.*

Appellants attempt to support their argument based on out of context quotations from *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995), but Appellants' reliance on that case is misplaced. As this Court explained *en banc* in *Chula Vista Citizens for Jobs and Fair Competition v. Norris,* 782 F.3d 520 (9th Cir. 2015), *McIntyre* considered the minimal "informational interest in knowing the identity of ordinary pamphleteers," based on "extremely broad statutes requiring any person publishing material relating to an election or ballot measure to include his name on the face of the publication*." Id.* at 540 n. 15. That case has no relevance in cases concerning disclaimers on campaign speech. This Circuit has repeatedly recognized that, aside from "McIntyre-type communications" concerning an individual pamphleteer's interest in maintaining anonymity, "there is a compelling state interest in informing voters who or what entity is trying to persuade them to vote in a certain way." *Alaska Right To Life Comm. v. Miles*, 441 F.3d 773, 793 (9th Cir. 2006); *see also Yamada*, 786 F.3d at 1203 n.14 (describing *Heller* and *McIntyre* as cases about the interest of an "individual pamphleteer . . . in maintaining anonymity"); *Getman*, 328 F.3d at 1104 (distinguishing *McIntyre* and its progeny that concern "the distribution of anonymous literature" from cases

that concern "the mandatory disclosure of campaign-related expenditures and contributions."). Indeed, *McIntyre* itself distinguished the burdensome obligation to identify ordinary pamphleteers at issue in that case from campaign finance disclosures. *See McIntyre*, 514 U.S. at 355.

Appellants' reliance on *Riley v. Nat'l Fed'n of Blind*, 487 U.S. 781 (1988) and *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995) is similarly misplaced. *Riley* is not an election law case, but instead is a case concerning permitting and fee requirements for charitable solicitations by professional fundraisers. *Hurley* also is not an election law case, but instead concerns whether Massachusetts public accommodations law could require private citizens who organize a parade to include among the marchers a group imparting a message that the organizers do not wish to convey. Those cases have no relevance to this case which concerns the well-recognized and important governmental interests in having an informed electorate. *Citizens United,* 558 U.S. at 368; *Buckley*, 424 U.S. at 66-67. Appellants' inapposite cases provide no basis to dispute that the City has a sufficiently important interest in ensuring that San Francisco voters can "make informed decisions and give proper weight to different speakers and messages." *Citizens United,* 558 U.S. at 371.

Appellants also assert that disclaimer requirements must serve the "public interest in knowing who is spending and receiving money to support of oppose a ballot issue," AOB at 34, but Appellants seem to forget that Proposition F's secondary contributor disclaimers do exactly that. The disclaimers inform voters about the entity trying to influence their votes. While the name San Franciscans Supporting Prop B tells the voters little about the persons or entities behind that committee, understanding its funding sources goes a long way to helping voters evaluate the speaker and give "proper weight" to the advertisement. *Citizens United,* 558 U.S. at 371. Proposition F's disclaimers provide the electorate with

information so that voters can be informed in real time about the committee that is speaking through the advertisement. By providing voters the information they need to evaluate an advertisement at the same time they see or hear it, Proposition F's disclaimer requirements advance the well-recognized and important governmental interests in having an informed electorate. *Citizens United,* 558 U.S. at 368; *Buckley*, 424 U.S. at 66-67.

Despite that substantial relationship, Appellants claim that Proposition F's secondary contribution disclaimer requirement is unconstitutional as applied to their speech before the June 2022 election because it forces entities to associate with each other, and will chill donations. The district court did not abuse its discretion when rejecting those speculative and unsubstantiated arguments, and this Court should affirm.

### i. Proposition F Does Not Burden Association Rights.

Proposition F does not force entities to associate with each other. Individuals, political committees and others remain free to decide to whom they wish to contribute and in what amount. Proposition F does not compel anyone to give money to support any candidates, ballot measures or any matters of public debate. Nor does Proposition F force anyone to take a position on any matter at issue before the voters. Instead, Proposition F simply requires political action committees to disclose to voters their sources of funding—money that was voluntarily given to them by donors and voluntarily received by the committees. *See* SF Campaign and Gov't Conduct Code § 1.161.

Recognizing that Proposition F does not actually force anyone to involuntarily associate with anyone else, Appellants contend that Proposition F should be struck down because the voters might misunderstand the associations that exist. For instance, Appellants assert that voters will ignore that the disclaimer

states that David Chiu for Assembly 2022 contributed money to Ed Lee Dems, and will falsely believe that David Chiu for Assembly 2022 donated money directly to San Franciscans Supporting Prop B.  AOB at 38.  Likewise, Appellants assert there is a "chance" that San Francisco voters would assume, despite the plain text of the disclaimer, that "Mr. Chiu is running for another office and improperly taking positions on City issues."  AOB at 39.  Of course, City Attorney David Chiu is not running for Assembly.[7]  Nor has he taken any position on any ballot measures before the voters.  San Francisco Charter Section 6.102 expressly prohibits the City Attorney from contributing to, soliciting contributions to, publicly endorsing or otherwise participating in a campaign for a City ballot measure, and City Attorney David Chiu fully complies with Charter Section 6.102.  David Chiu for Assembly 2022 did not donate money to support Proposition B.  David Chiu for Assembly 2022 donated money to Ed Lee Dems with no knowledge or intent that Ed Lee Dems would take a position on Proposition B.

In any event, Appellants' speculation about voter confusion is insufficient to support their challenge against Proposition F.  Indeed, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 457 (2008) forecloses Appellants' argument.  In *Wash. State Grange*, the Supreme Court considered a challenge to a voter-approved initiative that provided that candidates for office shall be identified on the ballot by their self-designated "party preference"; that voters may vote for any candidate; and, that the top two candidates who obtained the highest vote totals for each office, regardless of party preference, advance to the general election.  The state republican party claimed that the initiative would burden the party's associational rights because voters will assume that candidates on the general

---

[7] City Attorney David Chiu previously served in the California Assembly representing the 17th Assembly District before becoming San Francisco's City Attorney in 2021.

election ballot are the nominees of their preferred parties. That misunderstanding, the party claimed, would "compel the party to associate with candidates they do not endorse, alter the messages they wish to convey, or force them to engage in counterspeech to disassociate themselves from the candidates and their positions on the issues." *Wash. State Grange*, 552 U.S. at 454. The Supreme Court rejected that argument because, as here, the argument "rests on factual assumptions about voter confusion," and, in the absence of evidence, courts should not "assume" that "voters will be misled." *Id.* Indeed, case law "reflect[s] a greater faith in the ability of individual voters to inform themselves about campaign issues.'" *Id.* (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 220 (1986).) The Supreme Court explained that "[t]here is simply no basis to presume that a well-informed electorate" will misunderstand information provided, and noted that that conclusion is "especially true here, given that it was the voters . . . themselves, rather than their elected representatives, who enacted" the challenged requirements. *Id.* at 454-55.

This case is on all fours with *Wash. State Grange*. The voters of San Francisco resoundingly approved Proposition F, after being informed that the measure would "increase[ ] disclosures of the true sources of funds behind campaign ads" by requiring disclosure of secondary contributors. SER 77. Appellants do not cite any evidence showing that voters will be confused by the very disclaimers they voted to require. Appellants have not provided any voter surveys, studies of voter behavior, or any evidence at all to show that voters will actually misunderstand the disclaimers required by Proposition F. Appellant David and Mr. Cheng offer their *opinions* that the disclaimer will confuse or mislead voters, but they do not lay any foundation to support their speculative assertions. ER 20 ¶ 20; ER 24 ¶¶ 7-8. Accordingly, the district court properly refused to rely on those statements. Fed. R. Evid. 701; ER 13 n. 4 (explaining that "it is notable

that, although Prop F has been in effect for two years, Plaintiffs still have not produced evidence that actual San Francisco voters are confused or misled.").

In lieu of evidence showing voter confusion, Appellants rely on an easily distinguishable case from outside this circuit, *Van Hollen v. Fed. Election Comm'n*, 811 F.3d 486 (D.C. Cir. 2016). In *Van Hollen*, the D.C. Circuit considered a FEC rule that resolved an ambiguity in the Bipartisan Campaign Reform Act by requiring corporations and labor organizations to disclose only donations that were "made for the purpose of furthering electioneering communications." *Van Hollen*, 811 F.3d at 488. The D.C. Circuit noted that it was required to defer to the judgment of the FEC, and to uphold the FEC's interpretation of the statute "regardless whether there may be other reasonable, or even more reasonable, views." *Id.* at 492 (quoting *Gentiva Healthcare Corp. v. Sebelius*, 723 F.3d 292, 296 (D.C.Cir.2013)). Under that "very deferential" standard, the D.C. Circuit concluded that the challengers had not met their "heavy burden" to show that it was arbitrary and capricious for the FEC to conclude that a more "robust disclosure rule" would "mislead voters as to who really supports the communications." *Id.* at 495, 497. The D.C. Circuit concluded that the FEC's rationale was "at least enough to pass" the "very deferential scope of review" that applied in that case. *Id.* at 497-98.

*Van Hollen* is easily distinguishable from this case. The *Van Hollen* court considered the disclosure of funding sources for entities such as 501(c)(3) organizations, corporations, and labor unions that receive their money for non-political purposes from shareholders, members or donors who have no intention of participating in election communications. The court reasonably concluded that disclosure of individuals who pay membership dues to a union or persons who buy stock in a corporation tells the voters little about the actual funding sources for the election communication. Here, by contrast, Proposition F only requires disclosure

of the top donors to committees that voluntarily engage in election communications by donating money to primarily formed independent expenditure committees and primarily formed ballot measure committees.

The other cases Appellants cite similarly do not support Appellants' argument. In *Indep. Inst. v. Williams*, the Tenth Circuit considered a requirement that a 501(c)(3) organization disclose its donors who "specifically earmarked their contributions for electioneering purposes." *Indep. Inst. v. Williams*, 812 F.3d 787, 797 (10th Cir. 2016). *Williams* did state or imply that the requirement would be unconstitutional without that limitation. Appellants also rely on an unpublished, out-of-circuit district court case, but that case is inapposite. *Lakewood Citizens* concerned a disclaimer requirement as applied to a newsletter published three times per year concerning local issues in the town. That type of communication is a far cry from the election advertisements at issue in this case. *Lakewood Citizens Watchdog Group v. City of Lakewood,* 21-CV-01488-PAB, 2021 WL 4060630, at *1 (D. Colo. Sept. 7, 2021). Finally, Appellants rely on *Indep. Inst. v. Fed. Election Comm'n*, but that case supports the City, not Appellants because the court recognized the important governmental interests served by informing voters about both direct and indirect supporters of election communications. *Indep. Inst. v. Fed. Election Comm'n,* 216 F. Supp. 3d 176, 192 (D.D.C. 2016).

Appellants note that secondary contributors to San Franciscans Supporting Prop B made their donations to other organizations and might have done so for other purposes other than to fund the committee's advertising. AOB at 36-37. But Appellants miss the point. Of course, the secondary contributors, by definition, have not directly contributed to the committee. But knowing a committees' donors and their sources of funding speaks volumes about the committee, the sources of the committee's money, and "where a particular ballot measure or candidate falls on the political spectrum." It is common sense that a committee is known by the

company it keeps. Therefore, the secondary contributor requirement provides "the electorate with information about the source of campaign money, the individuals and interests seeking their vote, and where a particular ballot measure or candidate falls on the political spectrum" by allowing voters to understand who funds the committees that were the primary contributors to San Franciscans Supporting Prop B. *Bowen*, 752 F.3d at 832.[8] In any event, the hypothetical possibility that someday a secondary contributor "might" disagree with a ballot measure is relevant to Appellants' as-applied challenge because Appellants offer no evidence to show that has ever happened to Appellants (or anyone else). *U.S. v. Raines*, 362 U.S. 17, 21 (1960) ("[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional.").

### ii. Proposition F Does Not Impermissibly Chill Fundraising.

Appellants fare no better with their claim that Proposition F is unconstitutional because it might chill their fundraising and donations. Proposition F's requirements—like all disclosure and disclaimer requirements—might deter contributions from some entities that do not wish to disclose their major donors. *See Buckley v. Valeo*, 424 U.S. 1, 68 (1976) ("It is undoubtedly true that public disclosure of contributions to candidates and political parties will deter some

---

[8] Appellants are also mistaken when they assert that the secondary contributor disclaimer requirement is based on an assumption that "secondary donors must support the ads funded by their donations' recipients" AOB at 36. Proposition F and the City make no assumptions about the views of secondary contributors. The secondary contributor disclaimer is required because those disclaimers help voters understand the entity who is speaking through the advertisement. The requirement helps avoid the problem of committees hiding behind creative, misleading or uninformative names that obscure information from the voters concerning "the source of campaign money, the individuals and interests seeking their vote, and where a particular ballot measure or candidate falls on the political spectrum." *Bowen*, 752 F.3d at 832.

individuals who otherwise might contribute.")  But the Ninth Circuit has described that burden on First Amendment rights as "modest," and has held that small deterrent effect does not outweigh the government's interests in providing information about funding sources to the voters.  *Family PAC*, 685 F.3d at 806-09; *see also Citizens United*, 558 U.S. at 366 (upholding disclaimer requirements even though they "may burden the ability to speak," because "they impose no ceiling on campaign-related activities, and do not prevent anyone from speaking.")

The same is true here.  Without Proposition F, political committees would continue to be able to hoodwink the public by "hiding behind dubious and misleading names like: 'The Coalition–Americans Working for Real Change' (funded by business organizations opposed to organized labor), 'Citizens for Better Medicare' (funded by the pharmaceutical industry), 'Republicans for Clean Air' (funded by brothers Charles and Sam Wyly)."  *McConnell*, 540 U.S. at 197 (quoting *McConnell v. Fed. Election Comm'n,* 251 F. Supp. 2d 176, 237 (D.D.C. 2003).)  But such tactics are contrary to the spirit and purposes of the First Amendment.  As the Supreme Court recognized, "'uninhibited, robust, and wide-open' speech" cannot "occur when organizations hide themselves from the scrutiny of the voting public."  *Id.*  Appellants' chill argument hinges on the notion that committees should be able to hide their funding sources from voters and that donation will be chilled if they cannot.  But that argument is not consistent with "the precious First Amendment values that Appellants argue are trampled," but instead "ignores the competing First Amendment interests of individual citizens seeking to make informed choices in the political marketplace."  *Id.*; *Family PAC*, 685 F.3d at 809 (explaining that "an informed electorate . . . is of the utmost importance").  Appellants accuse the City of "doxing" supports of committees, but that argument reflects Appellants' misunderstanding of election law.  AOB at 34.  Proposition F's disclaimer does not reveal any private information about any entity

32

and certainly does not do so with malicious intent. The City simply requires primarily formed committees that run election advertisements to disclose to voters information about the funding sources so that voters can properly evaluate the communication.

Appellants have not cited any evidence showing that Proposition F's disclaimer requirements "actually and meaningfully" reduce contributions. *Family PAC*, 685 F.3d at 807. That absence is particularly striking given that Proposition F has been in effect for over two years through election cycles during which contributions to candidates and ballot measures continued to "pour in."[9] Appellants rely on a declaration from Plaintiff Todd David, who says that some unidentified committees have told him that they do not wish to contribute or "contribute the requested amounts" because "they do not want to offend their donors." ER 18 ¶ 8; 20 ¶ 20. Mr. David's description of what others have told him is nothing more than hearsay, which is inadmissible pursuant to Federal Rule of Evidence 802. Likewise, Mr. Cheng speculates that some donors would withdraw support if the public were informed about their donations, but that speculation about other entities' beliefs or future actions is not evidence. ER 24 ¶ 9; Fed. R. Evid. 701. Appellants assert that Appellants "are in direct contact with their donors, and hear their concerns," AOB at 48, but even so, Appellants must still submit evidence—not merely speculation and hearsay—to support their claims.

Even if the paragraphs in the David and Cheng declarations could be considered evidence, Appellants' speculation about hypothetical reactions that

---

[9] Benjamin Schneider, *In a big election year, money is pouring into key San Francisco campaigns*, published Jan 5, 2022 (updated Jun 16, 2022), available at https://www.sfexaminer.com/the_fs/findings/in-a-big-election-year-money-is-pouring-into-key-san-francisco-campaigns/article_340c79e1-7cb0-5aa0-98dc-113632eff14e.html.

some committees may have does not show that Proposition F will cause a meaningful deterrence in donations in San Francisco. *Family PAC*, 685 F.3d at 807. Indeed, because information about "secondary contributors" is already in the public record, it is hard to see why—and Appellants have offered no evidence to show—Proposition F's disclaimer requirements will have any meaningful effect on contributions. Appellants assert that one donor (Ed Lee Dems) would withdraw all its support for San Franciscans Supporting Prop B instead of allowing its contributors to be disclosed, but that arguments makes little sense. Ed Lee Dems would not be a secondary contributor subject to Proposition F's disclaimer requirement if it reduced its donation by *a single dollar.* S.F. Campaign and Gov't Conduct Code § 1.161(a)(1); ER 6. It is hard to see why one committee reducing its contribution by one dollar would have a meaningful effect on San Franciscans Supporting Prop B. In any event, one committee's desire to hide its funding sources from the voters during the two years Proposition F has been in effect does not show a meaningful deterrence in donations in San Francisco. *Buckley*, 424 U.S. at 68 *Family PAC*, 685 F.3d at 806-09.

Appellants rely on *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373 (2021), but that reliance is misplaced for two reasons. First, unlike here, the litigants in *Americans for Prosperity* introduced evidence that showed that the "deterrent effect feared by these organizations is real and pervasive." *Id.* at 2388. No similar showing has been made in this case. Second, *Americans for Prosperity* is not an election law case, but instead considers the separate question of forced disclosures of donations to charities. As the district court explained, *Americans for Prosperity* "provides relatively little direct guidance here, as this case arises in the distinct context of information that contextualizes political speech before an election." ER 11.

Appellants' remaining argument is just a straw man. Appellants spill much ink arguing that "it is not for the court to determine whether an association is sufficiently controversial for potential donors to be justifiably deterred by its exposure," but Appellants miss the point. AOB at 50. The district court explained that Appellants failed to introduce any evidence and relied solely on conclusory, speculative assertions about donor chill. Without evidence, the court could not infer donor chill or assume that Appellants' speech concerning Proposition B's changes to the "Building Inspection Commission is a controversial topic about which SPB's secondary contributors invariably have strong views." ER 14. The district court did not make a determination about whether Proposition B is controversial or not. The district court simply explained that it could not accept Appellants' unfounded speculation concerning donors' strong reactions to Proposition B in the absence of evidence. *Id.*

### 3. The Secondary Contributor Disclaimer Requirements Are Narrowly Tailored To Achieving San Francisco's Purposes.

#### a. Appellants' Proposed Alternatives Fail To Advance The City's Important Governmental Interests.

Appellants contend that the secondary contributor requirement is unnecessary, and therefore is not appropriately tailored, because committees already file campaign finance disclosure reports. Appellants note that "[i]nquisitive San Francisco voters" can already "visit the Ethics Commission's offices" to obtain campaign statements. AOB at 46. Appellants also suggest that San Francisco could design a regulatory scheme by which committees regularly notify the Ethics Commission of its secondary contributors so that the City could compile that information on a website. AOB at 46-47.

Appellants' arguments misunderstand the narrow tailoring requirement. As explained above, under exacting scrutiny, "the challenged requirement must be narrowly tailored to the interest it promotes, even if it is not the least restrictive

means of achieving that end." *Americans for Prosperity Found*., 141 S. Ct. at 2384. Narrow tailoring requires that the law promote "a substantial government interest that would be achieved less effectively absent the regulation," and not "burden substantially more speech than is necessary to further the government's legitimate interests." *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 861 (9th Cir. 2004).

Here, Proposition F's disclaimer requirement satisfies those requirements. Appellants assert that Proposition F burdens more speech than necessary because the City could simply rely on the existing disclosure requirements to inform the voters, but disclosures would not serve the City's important governmental interests. ER 12. We do not have to speculate about whether the voters found the existing disclosure requirements to be sufficient. San Francisco voters resoundingly demonstrated that they wanted disclaimers that would allow them to determine the secondary source of funds behind campaign ads when they approved Proposition F with 76.89% of the vote. SER 73. Appellants boldly assert that Proposition F's disclaimer requirement "rests on an unfounded presumption about voters' informational priorities that many voters probably do not share," AOB at 40, but that argument is plainly false because it was the voters themselves that enacted Proposition F and did so by an overwhelming margin. The Court should not credit Appellants speculation about what voters "might well" want, when the voters demonstrated what they actually want when they enacted Proposition F. AOB at 40.

The voters had good reason for concluding that the disclosure regime that Appellants prefer is inadequate to serve the voters' informational needs. Disclaimers provide benefits that disclosures do not. Disclaimers give voters the information they need to evaluate the speaker's message *at the same time they hear or see the message*; whereas, disclosures will only be viewed after the fact by individuals who have the time and motivation to search for them. "[F]ewer people

are likely to see" disclosure reports, which makes disclosure requirements "a less effective method of conveying information" to the voters than disclaimers. *Majors v. Abell*, 361 F.3d 349, 353 (7th Cir. 2004). As the Seventh Circuit explained, "[i]t's as if cigarette companies, instead of having to disclose the hazards of smoking in their ads, had only to file a disclosure statement with the Food and Drug Administration." *Id.* Appellants' proposed "less restrictive means" are no substitute for the disclaimers the voters required through Proposition F. As the district court concluded, "[i]t is hardly novel or implausible to suggest that the informational interest described above is better served by more noticeable, easier-to-read font or more obvious, difficult to ignore, and complete disclaimers." ER 12. Appellants' arguments fail because they "provide no plausible reason to think that either of their proposals would succeed at informing voters." [10] ER 12.

Appellants offer no response to those points. They ask the court to ignore the obvious benefits provided by disclaimers, dismissing those benefits as "mere convenience." AOB at 47. Appellants are mistaken. While governments may not unnecessarily burden First Amendment rights simply to further its own administrative convenience, nothing in that doctrine requires courts to close their eyes to the fact that Appellants' proposals fail to further the City's important governmental interests because the information will not be seen by voters in a timely manner and will not be seen by many voters at all. *Americans for Prosperity Found.*, 141 S. Ct. at 2376; ER 12. Appellants ignore that the City is

---

[10] Appellants assert that the disclaimers are unnecessary because California already requires donations given to one committee but earmarked for another committee, to be "reported by all parties as a contribution from the original source of the contribution," AOB at 35, but again Appellants miss the point. The City's governmental interest cannot be served by requiring additional filings with government agencies or by limiting disclosures to earmarked funds. Proposition F's disclaimers advance the City's interests because they are seen by all voters— but only voters so inquisitive that they review contribution reports—and because they are not limited to "earmarked" funds, but rather reveal all major donors.

not seeking to promote voter convenience, but instead is seeking to promote an informed electorate. The City cannot expect voters to "explore the myriad pressures to which they are regularly subjected" because "[p]eople have jobs, families, and other distractions. While we would hope that California voters will independently consider the policy ramifications of their vote, and not render a decision based upon a thirty-second sound bite they hear the day before the election, we are not that idealistic nor that naive." *Getman*, 328 F.3d at 1106. Proposition F's requirements provide information that voters need to make informed choices in the election. Appellants offer nothing to show that the City's interests could be served as effectively absent the regulation or that Proposition F burdens more speech than necessary to further the City's interests. Instead, it offers alternatives that only reach the most inquisitive voters and have already failed to further the City's interests. *Kuba*, 387 F.3d at 861; ER 12.

> **b.** **Appellants' Argument That The Disclaimers Take Too Much Space Should Be Rejected.**

Switching gears, Appellants assert for the first time on appeal that Proposition F's disclaimer requirement is not narrowly tailored because it takes too much space on their advertisements. Before the district court, Appellants noted that the disclaimer would take a significant amount of space on San Franciscans Supporting Prop B's advertisements, but Appellants did not tie that argument to any issue presented to the district court. ER 14 n. 6; SER 94-118. Appellants did not even challenge the provisions of San Francisco law that control the size of the disclaimer, including the 14-point font requirement. S.F. Campaign and Gov't Conduct Code § 1.161(a)(3). Thus, the district court did not have the opportunity to consider Appellants' arguments about the size of the disclaimer, and those arguments should not be considered on appeal. *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) (explaining that appellate courts will not consider

arguments that are not "raised sufficiently for the trial court to rule on it."); ER 14 n. 6.[11]

Even if it could be considered, Appellants' argument fails because it is inconsistent with the record. Appellants assert that the City requires disclaimers that take 53-100% of their advertising space, but the City has never done so. Most committees have not faced any similar problems complying with Proposition F's secondary contributory disclaimer requirement. SER 38. The City is aware of two instances in which Proposition F's disclaimers took up a majority of space on advertisements, and, in both cases, the advertisements were created by Appellant David (or the committees he represents) for litigation purposes. ER 18-19; SER 52. In any event, the City has readily agreed to not enforce Proposition F under those circumstances where disclaimers take up most or all of an advertisements' space. ER 14 n. 6; SER 55. Thus, it is simply false for Appellants to claim that "San Francisco forces individuals and groups to give up speaking altogether." AOB at 43.

Appellants also fail to support their argument with respect to their larger advertisement where the disclaimer takes 23-35% of Appellants advertising space. After recognizing the important role disclaimer requirements serve in providing information to the electorate, the Supreme Court in *Citizens United* upheld a law that required the Appellants to devote 40% (four seconds of their ten-second advertisements) to spoken disclaimers. *Citizens United*, 558 U.S. at 367-68. Thus, the Supreme Court recognized that disclaimers that take a significant portion of advertising space can satisfy exacting scrutiny.

---

[11] Likewise, Appellants mention in their brief the spoken disclaimer requirement in Administrative Code Section 1.161(a)(5), but Appellants did not challenge that requirement before the district court and offer no argument concerning that requirement on appeal. AOB at 17; SER 96.

The Supreme Court also expressly rejected the same argument that Appellants advance here that disclaimers amounting to 23-35% of the advertisement unconstitutionally "decrease[d] both the quantity and effectiveness of the group's speech." *Citizens United*, 558 U.S. at 368.  Although all disclaimer requirements necessarily decrease the available space for a speaker's own message, that burden is not an *undue* burden given the important role disclaimers play in our electoral system.  As the Supreme Court and Ninth Circuit have consistently recognized, disclaimers "provide the electorate with information," and "insure that the voters are fully informed about the person or group who is speaking." *Citizens United*, 558 U.S. at 368 (internal quotations and citations omitted); *see also Brumsickle*, 624 F.3d at 1006.  The disclaimers serve that interest more effectively than disclosures because disclaimers give voters the information they need to evaluate the speaker's message at the same time they hear or see the message.  Given the "cacophony of political communications through which California voters must pick out meaningful and accurate messages . . . being able to evaluate who is doing the talking is of great importance." *Cal. Pro-Life Council, Inc*., 328 F.3d at 1105.  Thus, the burden on Appellants from having to devote 23-35% of their advertising space to disclaimers in their large format advertisements is not an undue burden on their First Amendment rights.  Comp. ¶ 25.

Appellants' reliance on *Am. Beverage Ass'n v. City and County of San Francisco*, 916 F.3d 749 (9th Cir. 2019)—which involved consumer product advertising, not political campaign advertising—is misplaced.  In *Am. Beverage*, the Court held that the City could not require sugar sweetened beverage advertisers to devote 20% of their advertising space to a warning that stated "WARNING: Drinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay.  This is a message from the City and County of San Francisco." *Am. Beverage Ass'n*, 916 F.3d at 753.  The Court concluded that San Francisco's health

warning should be analyzed under the test established in *Zauderer v. Office of Disciplinary Counsel of S. Ct. of Ohio*, 471 U.S. 626, 631 (1985), which provides that a compelled warning on commercial products may be upheld where the warning is "(1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome." *Am. Beverage Ass'n*, 916 F.3d at 755-56. Under that test, San Francisco did not satisfy its burden to show that a 20% warning was required, where the evidence suggested that a 10% warning would accomplish the City's stated goals. *Id.* at 757.

*Am. Beverage* is easily distinguishable from this case. *Am. Beverage* is not an election law case, and Appellants have not cited any authority for the proposition that the holdings from commercial speech cases can be applied in the election law context. To the contrary, the Supreme Court has consistently recognized the unique nature of campaign and election-related disclosure and disclaimer requirements. *Citizens United*, 558 U.S. at 422 (recognizing that First Amendment protections applied in "[t]he election context is distinctive in many ways") (Stevens, J. concurring in part and dissenting in part); *Iowa Right to Life Comm., Inc. v. Tooker*, 133 F. Supp. 3d 1179, 1192 (S.D. Iowa 2015) (explaining that "*Citizens United* recognizes the unique nature of campaign and election-related law.")

Second, in *American Beverage*, the City sought to require commercial advertisers to include a warning that advertisers claimed would compete with their own message and potentially reduce demand for their product. In that context, the Court concluded that the City had not shown that the warning would not "drown[ ] out" the advertisers' messages and "effectively rule[ ] out the possibility of having [an advertisement] in the first place." *Am. Beverage Ass'n*, 916 F.3d at 757. Here, by contrast, the disclaimer does not threaten to undermine San Franciscans

Supporting Prop B's message. Instead, the disclaimer simply provides information that voters need to allow them to understand who is funding the advertisement.

Finally, *Am. Beverage* is distinguishable because that case applied a different legal test with a different purpose from the exacting scrutiny standard applicable here. As explained above, the *Zauderer* test requires the Court to consider whether a warning is "(1) purely factual, (2) noncontroversial, and (3) not unjustified or unduly burdensome." *Am. Beverage Ass'n*, 916 F.3d at 755-56. By contrast, courts evaluate election law disclaimer requirements under the exacting scrutiny test, which asks whether there is a "substantial relation" between the disclosure requirement and a "sufficiently important" governmental interest. *Citizens United*, 558 U.S. at 366-67. The Court's rejection of a 20% health warning when applying the *Zauderer* test says nothing about whether the Court would uphold election disclaimers under exacting scrutiny. Indeed, the Court acknowledged that in other circumstances, a more prominent disclaimer might be warranted. *Am. Beverage Ass'n*, 916 F.3d at 757 ("To be clear, we do not hold that a warning occupying 10% of product labels or advertisements necessarily is valid, nor do we hold that a warning occupying more than 10% of product labels or advertisements necessarily is invalid."). Further, while the evidence suggested that a smaller warning would satisfy the City's goals in *Am. Beverage*, Appellants offer no evidence to show the same in this case. *Id.* at 757. In short, the Court in *American Beverage* applied a different standard of review, for different reasons, and in a different context. Proposition F's constitutionality is controlled by *Citizens United* and other disclaimer cases, not *Am. Beverage.*

Appellants assert that its political speech should receive the fullest protection under the First Amendment; and, of course, that is true. But Proposition F's disclaimer requirements do not undermine or even impose undue burdens on Appellants' speech. *Citizens United*, 558 U.S. at 368. Instead, Proposition F

merely seeks to ensure that voters have the information they need to evaluate political ads so that the voters can make an informed choice. The purposes of the First Amendment are furthered—not hindered—by Prop F's disclaimers. *Brumsickle*, 624 F.3d at 1006; *see also Citizens United v. Gessler*, 773 F.3d 200, 215 (10th Cir. 2014) ("When a speaker "drops in" on an election and starts talking about candidates and issues, the electorate wants to know who the speaker is to better enable it to evaluate the message. Knowing who is financing the speaker can be helpful in this regard.")

## III. THE REMAINING EQUITABLE FACTORS FAVOR THE CITY.

As explained above, the district court did not abuse its discretion when it concluded that Appellants failed to show a likelihood of success on the merits. Likewise, the district court did not abuse its discretion when concluding that Appellants failed to demonstrate that they would face irreparable harm without an injunction, that the balance of equities favors an injunction, or that an injunction against a voter approved measure is in the public interest. *Winter*, 555 U.S. at 20.

With respect to the irreparable harm factor, Appellants note correctly that the loss of First Amendment freedoms constitutes irreparable injury. But, as explained above, Appellants are not likely to suffer any deprivation of their First Amendment rights. Appellants' interest in not disclosing information to the voters about their contributors and secondary contributors is a "modest" interest, at best. *Family PAC*, 685 F.3d at 806. By contrast, the City's interest in providing information to the voters about who is funding political speech concerning ballot measures is "of the utmost importance." *Id.* at 809; *Getman*, 328 F.3d at 1105–06.

The balancing of the equities factor also favors the City. In "balanc[ing] the hardships of the public interest against a private interest, the public interest should receive greater weight." *Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999); *Fund For Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400

(9th Cir. 1992) (if injunction would implicate public interest, Appellants must show the "public interest favors the[m]").  Appellants argue that there is a public interest in upholding First Amendment principles, *see Doe v. Harris*, 772 F.3d 563, 583 (9th Cir.2014), but "where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may [then] in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312-13 (1982).  Beyond the public's general interest in the implementation of laws enacted by the voters or their duly elected representatives, *see Planned Parenthood of Blue Ridge v. Camblos*, 116 F.3d 707, 721 (4th Cir. 1997), the public has an interest in making sure that voters have the information they need to make informed choices about ballot measures.  *Brumsickle*, 624 F.3d at 1008.  Proposition F furthers those interests.

Moreover, Appellants' argument about the balance of the hardships and the public interest depends on the merits of their First Amendment claims, and it fails for the same reasons.  Appellants contend that the public interest will be harmed if Appellants are required to provide information about secondary contributors, but that argument gets the law exactly backwards.  The public interest favors disclosure of the information the voters need to make informed decisions.  As the Ninth Circuit has explained, "[p]roviding information to the electorate is vital to the efficient functioning of the marketplace of ideas, and thus to advancing the democratic objectives underlying the First Amendment." *Brumsickle*, 624 F.3d at 1005.  Disclaimer requirements such as Proposition F "help ensure that voters have the facts they need to evaluate the various messages competing for their attention." *Id.*  Appellants' interest in hiding its secondary contributors from the public pales in comparison to the voters' need for information that would allow

them to make "informed choices in the political marketplace." *McConnell*, 540 U.S. at 197 (quoting *McConnell,* 251 F. Supp. 2d at 237.)  Thus, the district court did not abuse its discretion when concluding that the public interest favors the City, not Appellants.

## CONCLUSION

The City respectfully requests that the Court dismiss the appeal as moot.  In the alternative, the City requests that the Court affirm the decision of the district court, and award the City is costs on appeal.

Dated:  July 29, 2022
　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　DAVID CHIU
　　　　　　　　　　　　　　City Attorney
　　　　　　　　　　　　　　WAYNE K. SNODGRASS
　　　　　　　　　　　　　　TARA M. STEELEY
　　　　　　　　　　　　　　Deputy City Attorneys

　　　　　　　　　　　By:　s/Tara M. Steeley
　　　　　　　　　　　　　　TARA M. STEELEY
　　　　　　　　　　　　　　Deputy City Attorney

　　　　　　　　　　　　　　Attorneys for Defendants-Appellees
　　　　　　　　　　　　　　DAVID CHIU, SAN FRANCISCO
　　　　　　　　　　　　　　ETHICS COMMISSION, CHESA
　　　　　　　　　　　　　　BOUDIN, AND CITY AND COUNTY OF
　　　　　　　　　　　　　　SAN FRANCISCO

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**  22-15824

The undersigned attorney or self-represented party states the following:

☒  I am unaware of any related cases currently pending in this court.

☐  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

☐  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Dated:  July 29, 2022

DAVID CHIU
City Attorney
WAYNE K. SNODGRASS
TARA M. STEELEY
Deputy City Attorneys

By:  s/Tara M. Steeley
TARA M. STEELEY
Deputy City Attorney

Attorneys for Defendants-Appellees
DAVID CHIU, SAN FRANCISCO
ETHICS COMMISSION, CHESA
BOUDIN, AND CITY AND COUNTY OF
SAN FRANCISCO

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**   22-15824

    I am the attorney or self-represented party.

    This brief contains   13806   words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

    I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ☐ it is a joint brief submitted by separately represented parties;

    ☐ a party or parties are filing a single brief in response to multiple briefs; or

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature s/Tara M. Steeley      Date July 29, 2022
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

## CERTIFICATE OF SERVICE

I, Pamela Cheeseborough, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECFsystem on July 29, 2022.

### APPELLEES' ANSWERING BRIEF

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed July 29, 2022, at San Francisco, California.

_s/_Pamela Cheeseborough
Pamela Cheeseborough