No. 22-15824

# In the United States Court of Appeals for the Ninth Circuit

SAN FRANCISCANS SUPPORTING PROP B, EDWIN M. LEE ASIAN PACIFIC DEMOCRATIC CLUB PAC SPONSORED BY NEIGHBORS FOR A BETTER SAN FRANCISCO ADVOCACY, AND TODD DAVID,

*Plaintiffs-Appellants*,

v.

DAVID CHIU, SAN FRANCISCO ETHICS COMMISSION, CHESA BOUDIN, AND CITY AND COUNTY OF SAN FRANCISCO,

*Defendants-Appellees*.

Appeal from an order of the United States District Court for the Northern District of California, The Hon. Charles R. Breyer (Dist. Ct. No. 3:22-cv-02785-CRB)

REPLY BRIEF

James R. Sutton
THE SUTTON LAW FIRM
150 Post Street, Suite 405
San Francisco, CA 94108
415.732.7700
jsutton@campaignlawyers.com

Alan Gura
INSTITUTE FOR FREE SPEECH
1150 Connecticut Ave., N.W.
Suite 801
Washington, DC 20036
202.301.3300
agura@ifs.org

August 19, 2022

*Counsel for Appellants*

TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................iii

SUMMARY OF THE ARGUMENT ...................................................1

ARGUMENT..................................................................................3

    I.    THIS CASE IS NOT MOOT .............................................3

    II.   THIS DISPUTE FALLS WELL WITHIN THE "CAPABLE OF
        REPETITION, YET EVADING REVIEW" DOCTRINE .........5

        A.    Plaintiffs could not have waived response to a
              claim that San Francisco failed to raise—and on
              which it carries the burden...........................................5

        B.    The challenged action—censorship of election
              campaign ads—is too short in its duration to be
              fully litigated before it pauses ......................................7

        C.    Plaintiffs have established more than a
              reasonable expectation that they will be subject
              to the challenged laws in the future—they are
              subject to these restrictions today .................................8

    III.  SAN FRANCISCO'S SECONDARY DONOR DISCLOSURE LAW IS
        UNCONSTITUTIONAL ..............................................16

        A. San Francisco's hybrid disclaimer/disclosure
            requirement calls for strict scrutiny ...............................16

        B. Compelling speakers to name their donor's donors in
            their ads does not advance an informational interest.....22

        C. San Francisco's secondary donor disclosure
            requirement is not narrowly tailored...............................28

IV.    THE REMAINING EQUITABLE FACTORS FAVOR PLAINTIFFS .......31

CONCLUSION.............................................................................32

CERTIFICATE OF COMPLIANCE..................................................33

TABLE OF AUTHORITIES

**Cases**

*Alaska Right to Life Comm. v. Miles,*
    441 F.3d 773 (9th Cir. 2006)................................................................21

*Am. Beverage Ass'n v. City & County of San Francisco,*
    916 F.3d 749 (9th Cir. 2019)..............................................................30

*Am. Civil Liberties U. v. Lomax,*
    471 F.3d 1010 (9th Cir. 2006)...............................................................8

*Am. Civil Liberties Union of Nevada v. Heller,*
    378 F.3d 979 (9th Cir. 2004)..............................................20, 22, 23

*Baldwin v. Redwood City,*
    540 F.2d 1360 (9th Cir. 1976)........................................................14, 15

*Bayer v. Neiman Marcus Grp.,*
    861 F.3d 853 (9th Cir. 2017)..................................................................4

*Buckley v. Valeo,*
    424 U.S. 1 (1976) (per curiam) ...........................................................22

*Cal. Pro-Life Council, Inc. v. Getman,*
    328 F.3d 1088 (9th Cir. 2003).............................................................22

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.,*
    447 U. S. 557 (1980)............................................................................30

*Chula Vista Citizens for Jobs & Fair Competition v. Norris,*
    782 F.3d 520 (9th Cir. 2015) (en banc)................................................21

*Citizens United v. Fed. Election Comm'n,*
    558 U.S. 310 (2010)............................................................ 17, 18, 21, 22

*Eu v. San Francisco County Democratic Cent. Comm.,*
    489 U.S. 214 (1989)................................................................ 20

*Family PAC v. McKenna,*
    685 F.3d 800 (9th Cir. 2012)................................................. 22

*Fed. Election Comm'n v. Wisc. Right to Life, Inc.,*
    551 U.S. 449 (2007)............................................................. 5, 14

*Fikre v. FBI,*
    904 F.3d 1033 (9th Cir. 2018)................................................. 9

*Gaspee Project v. Mederos,* 13 F.4th 79
    (1st Cir. 2021) ....................................................................... 20

*Human Life of Wash., Inc. v. Brumsickle,*
    624 F.3d 990 (9th Cir. 2010)......................................... 7, 8, 21

*Karuk Tribe of Cal. v. United States Forest Serv.,*
    681 F.3d 1006 (9th Cir. 2012)................................................. 6

*Lee v. Schmidt-Wenzel,*
    766 F.2d 1387 (9th Cir. 1985)................................................. 6

*Los Angeles v. Lyons,*
    461 U.S. 95 (1983) .................................................................. 6

*Nat'l Ass'n for Gun Rights, Inc. v. Mangan,*
    933 F.3d 1102 (9th Cir. 2019)............................................... 22

*New Harvest Christian Fellowship v. City of Salinas,*
    29 F.4th 596 (9th Cir. 2022) .................................................. 3

*Porter v. Jones*,
   319 F.3d 483 (9th Cir. 2003)........................................................ 14, 15

*ProtectMarriage.com – Yes on 8 v. Bowen*,
   752 F.3d 827 (9th Cir. 2014)........................................................ 7, 13

*Sackett v. United States EPA*,
   8 F.4th 1075 (9th Cir. 2021) ................................................................3

*Super Tire Eng'g Co. v. McCorkle*,
   416 U.S. 115 (1974) ..............................................................................4

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) ...........................................................................3

*Van Hollen v. Fed. Election Comm'n*,
   811 F.3d 486 (D.C. Cir. 2016)...................................................... 26, 27

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008)...................................................................... 25, 26

*Yamada v. Snipes*,
   786 F.3d 1182 (9th Cir. 2015)............................................................21

*Yes on Prop B v. City & Cty. of San Francisco*,
   440 F. Supp. 3d 1049 (N.D. Cal. 2020)................................................8

*Yes on Prop B v. City & Cty. of San Francisco*,
   826 F. App'x 648 (9th Cir. 2020) ................................................. 8, 10

## Statutes, Codes and Regulations

S.F. Charter § 14.101 ...................................................................8

S.F. Code § 1.161(a).................................................................32

S.F. Reg. 1-161.3......................................................................32

## Other Authorities

San Francisco Dep't of Elections, June 7, 2022 Election Results-
Summary, https://sfelections.sfgov.org/ June-7-2022-election-results-
summary (last visited Aug. 16, 2022) ...................................................6

S.F. Ethics Comm'n, No on E, San Franciscans Opposing the
Affordable Housing Production Act, FPPC 410 Amendment,
Filing ID 204444625 (Aug. 16, 2022), https://public.netfile.com/
Pub2/RequestPDF.aspx?id=204444625 ...............................................12

S.F. Ethics Comm'n, No on E, San Franciscans Opposing the Affordable
Housing Production Act, FPPC 497 Contribution Report, Filing ID
204444966 (Aug. 16, 2022), https://public.netfile.com/Pub2/
RequestPDF.aspx?id=204444966.........................................................13

S.F. Ethics Comm'n, San Franciscans Supporting Prop B, FPPC 410
Amendment, Filing ID 204422769 (Aug. 12, 2022),
https://public.netfile.com/Pub2/ RequestPDF.aspx?id=204422769.....12

S.F. Ethics Comm'n, Viewing filings made by Save John F. Kennedy
Promenade (Aug. 18, 2022), https://public.netfile.com/Pub2/
AllFilingsByFiler.aspx? id=204096046.................................................11

SUMMARY OF THE ARGUMENT

This dispute concerning what people must say when speaking about elections is just getting started. Although the case persists—Plaintiffs seek relief beyond the past election, and nominal damages as well—San Francisco clings to the results of previous litigation that found that dispute moot. Yet the city fails to realize that the very fact of this litigation proves that disputes over its campaign speech laws are not merely *capable* of repetition—they are repeating.

Here, the dispute has repeated not only with a serial political activist subject to the challenged laws as he campaigns for the upcoming election, but also with a regular donor impacted by the secondary donor disclosure scheme. Plaintiffs' conduct with respect to the upcoming November election, and future elections, is specific enough: they speak to influence elections, and their speech is regulated, today, by the challenged provisions. There is no ripeness question. The dispute remains live. It will not end until this Court ends it.

The notion that Plaintiffs somehow waived their right to contest mootness by not raising the issue in their opening brief is specious. Neither San Francisco nor the district court mentioned mootness below.

Parties are not obligated to predict and rebut bad arguments that their adversaries *might* raise. San Francisco was free to make its mootness argument—an argument on which it carries the burden—but it was not required to do so. Until it did, Plaintiffs were not required to address what was (and should have remained) a non-issue.

"It is common sense that a committee is known by the company it keeps." Def. Br. 30-31. Perhaps. But it is also common sense that committees often keep no company with their donors' donors. Campaign speakers cannot be forced to overwhelm their messages with lengthy recitals of such attenuated, usually meaningless non-relationships.

At bottom, this is a compelled speech case. San Francisco compels speakers to say things instead of what they otherwise would when speaking about elections. The burden of justifying such mandates falls on the government. And here, San Francisco has failed to carry its burden. Even under exacting scrutiny, the secondary donor disclosure requirement is not narrowly tailored to its asserted informational interest. Without question, San Francisco has better, less intrusive options to inform its voters.

The district court's order should be vacated.

ARGUMENT

I. THIS CASE IS NOT MOOT.

Had this case concerned only injunctive relief related to the June 7, 2022 election, it would have become moot—barring any applicable exception—on June 8, 2022. But the pleadings are not that limited.

"A party asserting mootness bears the heavy burden of establishing that there remains no effective relief a court can provide. The question is not whether the precise relief sought at the time the case was filed is still available, but whether there can be any effective relief." *Sackett v. United States EPA*, 8 F.4th 1075, 1082-83 (9th Cir. 2021) (internal quotation marks omitted). Effective relief remains available.

First, Plaintiffs' "claim for nominal damages is sufficient to keep the case alive." *New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 601 (9th Cir. 2022) (citing *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021)); *see* ER-57, Prayer for Relief ¶ E. Even if the request for injunctive relief were moot, the case is not. It would return here soon enough once the district court decides it on the merits.

Also unlike the previous Prop B case, this case is not limited to this one single issue and this one single election. Todd David and the Ed Lee

3

Dems specifically complained that the challenged provisions hinder their expression about future elections. ER-54, ¶¶ 45, 46. Indeed, contrary to San Francisco's assertions and those of its amicus, the complaint explicitly raised facial challenges, ER-55, ¶ 53; ER-56, ¶ 59; ER-57, Prayer for Relief ¶¶ A, C, and Plaintiffs sought injunctive relief on their facial claims as well, SER-110, l. 11; SER-112, l. 17.

When challenging an on-going policy, plaintiffs avoid mootness if they "show that the policy 'has adversely affected and continues to affect a present interest.'" *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 868 (9th Cir. 2017) (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125-26 (1974)). Even if no injunctive relief is available with respect to the June election, declaratory and injunctive relief remain available, as the challenged regulations continue to impact Plaintiffs with respect to the November election, and all future elections. To be sure, had the district court granted Plaintiffs' requested injunction, it would have remained in effect notwithstanding the June election's passage, and San Francisco's appeal from that order would not be moot.

II.   THIS DISPUTE FALLS WELL WITHIN THE "CAPABLE OF REPETITION, YET EVADING REVIEW" DOCTRINE.

Election-related challenges often fall within the well-established exception to mootness for disputes that are "capable of repetition, yet evading review." This "exception applies where (1) the challenged actions is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) ("*WRTL*") (internal quotation marks and citation omitted).

Because the city's enforcement of the challenged provisions relative to the June election could not have been fully litigated prior to the election, and because Plaintiffs remain subject to the same actions with respect to future elections (including the upcoming November election), this dispute falls within the "capable of repetition yet evading review" exception even if it were otherwise moot.

A.   Plaintiffs could not have waived response to a claim that San Francisco failed to raise—and on which it carries the burden.

San Francisco's assertion that Plaintiffs waived argument under the "capable of repetition yet evading review" doctrine by not raising it in

5

their opening brief, Def. Br. 1, 7, is untenable. The proceedings giving rise to this appeal concluded before the election, with neither San Francisco nor the district court mentioning mootness. The district court rendered its decision on June 1. ER 3-15. Plaintiffs filed their notice of appeal from that order on June 3. ER 59-60.[1] The election enacting Proposition B occurred on June 7. *See* San Francisco Dep't of Elections, June 7, 2022 Election Results-Summary, https://sfelections.sfgov.org/ June-7-2022-election-results-summary (last visited Aug. 16, 2022).

Appeals are based on the record, not on clairvoyance as to which arguments might be made. Moreover, San Francisco is attempting to flip the burden regarding mootness. "The party asserting mootness bears a heavy burden," including pending appeal. *Karuk Tribe of Cal. v. United States Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (quotation marks omitted). Only should the city establish mootness would Plaintiffs have a burden to show that an exception to mootness applies. *See Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).

---

[1] San Francisco's claim that the appeal was noticed on June 6, Def. Br. 2, is wrong. As Plaintiffs stated, the correct date is June 3. *See* ER-67.

That the previous litigation ended in mootness does not change the equation. That was then, this is now. As demonstrated *infra*, the record here is different.

San Francisco should have recognized that the case is not moot, and thus refrained from making the argument. But having made the argument for the first time in its answering brief, it must now contend with the response.

B. The challenged action—censorship of election campaign ads—is too short in its duration to be fully litigated before it pauses.

Although San Francisco peppers its "capable of repetition" discussion with many citations to *ProtectMarriage.com – Yes on 8 v. Bowen*, 752 F.3d 827 (9th Cir. 2014), the doctrine did not apply in *ProtectMarriage* "because there was no 'inherent limit' on the duration of this controversy," *id*. at 837—an argument San Francisco does not raise here. But this Court has not questioned that the "inherently brief duration of an election is almost invariably too short to enable full litigation on the merits." *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1002 (9th Cir. 2010) (quotation marks omitted).

Periods ranging from 90 days to two years are "insufficient to allow full review." *Am. Civil Liberties U. v. Lomax*, 471 F.3d 1010, 1017 (9th

Cir. 2006) (collecting cases). Since San Francisco's Charter allows for an election on an initiative in as little as 105 days after a valid petition is submitted, *see* S.F. Charter § 14.101, and even less if there is an upcoming general or statewide election, the first prong applies here. The district court only had time to address the request for a preliminary injunction—hardly "full litigation on the merits." *Brumsickle*, 624 F.3d at 1002 (internal quotation marks omitted).

C.  Plaintiffs have established more than a reasonable expectation that they will be subject to the challenged laws in the future— they are subject to these restrictions today.

San Francisco looks to the wrong record in contending that Plaintiffs have no reasonable expectation of facing the same action again, Def. Br. at 13, asserting a false equivalence between the record here and that of the previous Prop B litigation, *Yes on Prop B v. City & Cty. of San Francisco*, 826 F. App'x 648 (9th Cir. 2020). But Plaintiffs are familiar with that litigation. They have not refiled the same thing.[2]

---

[2] Amicus unfortunately overstates the *Yes on B* victory. CLC Br. at 2. The district court rejected Yes on B's facial challenge, and limited relief to that committee, for that election. *Yes on Prop B v. City & Cty. of San Francisco*, 440 F. Supp. 3d 1049, 1061-62 (N.D. Cal. 2020). Under the voluntary cessation doctrine, San Francisco's litigating position that it will not enforce secondary donor disclosure in some contexts does not

A note before addressing the differences in the records: this second case was filed because the dispute recurred. Another Prop B, another election, the same treasurer refraining from running the ads he would run owing to the same laws. The "capable of repetition" analysis could end here. The Court can skip ahead to section III's merits discussion.

In any event, the previous litigation provides a useful contrast. The *Yes on Prop B* complaint focused only on the March 2020 election dispute. *See* Complaint, *Yes on Prop B v. City & Cty. of San Francisco*, N.D. Cal. No. 20-630, Dkt. 1 at 1, 2, 4 ¶ 6, 8 ¶ 22, 9 ¶ 23. Its only reference to future events was a statement that "Mr. David anticipates being active in the City's November 2020 election, either through the Committee or a different committee." *Id.* at 4, ¶ 4. To that end, David declared,

> Given my interest and involvement in San Francisco politics, I expect to participate in future ballot measure and other campaigns in San Francisco, and expect to be particularly active in connection with the November 3, 2020 presidential election cycle, either with this Committee or with another.

---

obviate the need for injunctive relief. *Fikre v. FBI*, 904 F.3d 1033, 1037-38 (9th Cir. 2018).

Decl. of Todd David, *Yes on Prop B v. City & Cty. of San Francisco*, N.D. Cal. No. 20-630, Dkt. 5-5, at 6, ¶ 35.

Accordingly, this Court observed that "the record is devoid of any detail indicating that Appellants would" run ads, . . . run[] advertisements," a "particularly significant" matter considering that "the November 2020 election is only a few weeks away and Appellants still have not provided any specificity as to how they plan to be 'active' in this election." *Yes on Prop B*, 826 F. App'x at 649.

The record here is quite different. The complaint does not limit itself to a single election. It declares that David "*will* engage in materially and substantially similar activity in the future, establishing committees and using them to speak about San Francisco candidates and measures," ER-54, ¶ 9 (emphasis added), and he has done so. As San Francisco concedes, David is the Treasurer of Save John F. Kennedy Promenade, a primarily formed committee subject to the challenged restrictions. Def. Br. 13. But San Francisco is wrong in claiming that Plaintiffs "offer nothing to show that the committee has any intention of running advertisements in the upcoming election or that the

committee's funding would trigger the secondary contributor

requirement if it did." *Id.*

Not that it is necessary to "prove" that campaign committees intend,

indeed *exist*, to advertise, but David declares that he

> will continue to create primarily formed committees in future
> elections, to share ads and communications substantially and
> materially similar to those we wanted to share in 2020 and that we
> want to share now. But I and the committees I form will be unable to
> share our messages, in this or in any future election, while San
> Francisco's requirements remain in place.

ER-21, ¶ 25. David's JFK Promenade committee has already received

substantial contributions, albeit from individuals. *See* S.F. Ethics

Comm'n, Viewing filings made by Save John F. Kennedy Promenade

(Aug. 18, 2022), https://public.netfile.com/Pub2/AllFilingsByFiler.aspx?

id=204096046. Although no particular committee donation is expected,

it is reasonable to expect that a committee might donate to this cause in

an amount triggering David's secondary donor disclosure obligations.

Also unlike the previous litigation, David is joined here by a donor,

the Ed Lee Dems PAC. PACs are in the business of donating, and Ed

Lee Dems leaves no doubt that the secondary donor disclosure

requirement impedes its donation activity. ER-24—25, ¶ 11.

But the ultimate example of this injury repeating yet again can be found by catching up with the first named plaintiff, San Franciscans Supporting Prop B. That committee did not dissolve after the June election. Rather, on August 12, it renamed itself "San Franciscans Opposing the Affordable Housing Production Act." *See* S.F. Ethics Comm'n, San Franciscans Supporting Prop B, FPPC 410 Amendment, Filing ID 204422769 (Aug. 12, 2022), https://public.netfile.com/Pub2/RequestPDF.aspx?id=204422769. Four days later, when the Department of Elections assigned the letter "E" to the November measure that Plaintiff opposes, Plaintiff changed its name accordingly as required. *See* S.F. Ethics Comm'n, No on E, San Franciscans Opposing the Affordable Housing Production Act, FPPC 410 Amendment, Filing ID 204444625 (Aug. 16, 2022), https://public.netfile.com/Pub2/RequestPDF.aspx?id=204444625.[3]

David remains No on E's treasurer. And he is subject to the challenged provisions, because No on E's top donor is none other than Plaintiff Ed Lee Dems. *See* S.F. Ethics Comm'n, No on E, San Franciscans Opposing the Affordable Housing Production Act, FPPC

---

[3] Plaintiff will separately move to amend this case's caption.

497 Contribution Report, Filing ID 204444966 (Aug. 16, 2022),

https://public.netfile.com/Pub2/RequestPDF.aspx?id=204444966. If it

ever went away, the same controversy involving the same litigants has

recurred.

Although the word "ripe" is absent from San Francisco's brief, the

city cites *Protectmarriage*'s ripeness discussion to raise a series of

pointless questions that are easily answered by perusing the filings in

this case and the San Francisco Ethics Commission website. Pointless,

because ripeness addresses a question different from "capable of

repetition:" it examines whether issues "are premature for judicial

review because the injury at issue is speculative, or may never occur."

*ProtectMarriage.com*, 752 F.3d at 838 (citation omitted). Plaintiffs are

affected by San Francisco's secondary donor disclosure requirement.

There are no ripeness issues.

And so it does not matter "when Mr. David will next create a

primarily formed committee," Def. Br. 14, because he already created

No on E and Save JFK Promenade. That also answers the question of

"what type of ballot measure the committee will support." *Id.* We know

what "Mr. David's involvement will entail," *id.*—he's listed as each

committees' treasurer. "[W]hether the committee[s] [are] likely to run advertisements before an election," *id.*, is directly answered by David's declaration, ER-21, ¶ 25, if not by the nature of committees and the money they've amassed. And "whether the committee[s] will receive donations from other committees, or whether the committee[s] will have contributors that trigger Proposition F's secondary contributor disclaimer requirement," Def. Br. 14, is already known with respect to No on E: yes and yes.

Of course, no such specific proof of actual repetition is strictly required. *WRTL* rejects the notion that a party must prove "repetition of every 'legally relevant' characteristic. . . down to the last detail." 551 U.S. at 463. The natural turnover of elections requires actors like David to constantly create new committees to support initiatives and candidates alike. David's intimate involvement as treasurer in various election efforts is enough to find "future confrontation . . . likely," *i.e.*, that an "immediate and real controversy exists." *Baldwin v. Redwood City*, 540 F.2d 1360, 1365 (9th Cir. 1976); *see also Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003).

*Baldwin* and *Porter* involved plaintiffs that created new political content in anticipation of various campaigns. In *Baldwin*, this Court reasoned that the plaintiff met the "capable of repetition, yet evading review" exception because the active participation in politics for "nearly 20 years" was enough to attest to his involvement in "future occasions in which he would want to use such political posters in a manner prohibited by the challenged provisions." 540 F.2d at 1365. Similarly, *Porter* found that the expressed intention to create election websites for future presidential elections, and the fact that the government expressed its intention to enforce election laws against the plaintiffs, sufficed to reject the argument that the case was moot. 319 F.3d at 490. As in *Baldwin* and *Porter*, future confrontation involving David is likely.

The record is replete with evidence of Plaintiffs' evidence of past, current, and future involvement in San Francisco politics triggering San Francisco's secondary donor disclosure requirement. The "capable of repetition, yet evading review" exception applies.

III.   SAN FRANCISCO'S SECONDARY DONOR DISCLOSURE LAW IS
       UNCONSTITUTIONAL.

San Francisco's demand that political speakers discuss their donor's

donors on their ads is no mere disclaimer law. This form of compelled

speech warrants strict scrutiny. But as Plaintiffs noted earlier, the

standard of review is not determinative. Because while San Francisco

may have an informational interest in advising the public as to who

supports a campaign, that interest only extends to knowledge of a

campaign's donors—not its donors' donors, who often have nothing to do

with the ad and may not know anything about it. This novel compelled

speech regime should be enjoined.

A.   San Francisco's hybrid disclaimer/disclosure requirement calls
     for strict scrutiny.

San Francisco views laws requiring campaign-related speech through

a rigid binary lens: everything is either a "disclaimer" or a "disclosure,"

and exacting scrutiny covers both. But the city fails to acknowledge the

novelty of its creation—a combination "disclaimer," in the sense that it

requires speakers to reveal an ad's funding; and "disclosure," a lengthy

and detailed report of the sort filed in a government office. The

resulting mandatory disquisition into next-degree relationships is

16

unlike true disclaimers with which courts are familiar. It overtakes and displaces a speaker's message to the point where it is best viewed as a form of compelled speech.

Strict scrutiny applies to San Francisco's hybrid disclaimer and disclosure requirement because it crosses the compelled speech line. Plaintiffs do not seek to redefine the concepts of disclaimers and disclosures, as San Francisco argues. They only ask that this Court recognize that San Francisco's unusual secondary donor disclosure requirement differs from other regulations. It should be evaluated based on its function, not on its characterization as a "disclaimer."

Plaintiffs use the term "true disclaimer" in referring to the Supreme Court's definition of a disclaimer: a communication stating who "is responsible for the content of th[e] advertising." *Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 366 (2010) (internal quotation marks and citation omitted). For example, *Citizens United* found that a four second disclaimer, on either two 10-second or a 30-second advertisement, to be constitutional due to its ability to clarify that certain "ads are not funded by a candidate or political party." *Id.* at 367-68.

Although San Francisco rejects the term "true disclaimer," it appears to acknowledge that "disclaimers" are not merely speech required on campaign communications, but speech required for the specific purpose of identifying ad responsibility. "[A]ll disclaimers . . . provide[] information to voters on the advertisement to allow voters to understand the entities seeking to influence votes." Def. Br. 19. The dispute surrounds the concept of responsibility.

Disclosure, on the other hand, refers to financial statements and donor information provided to the government. *See id.* (citation omitted). Both disclosures and disclaimers must "impose no ceiling on campaign-related activities." *Citizens United*, 558 U.S. at 366 (citation omitted).

Here, the speech San Francisco requires speakers to include on their communication to the public is not limited to clarifying who "is responsible for the [ad's] content." *Id.* at 366. Or at least, the city's concept of responsibility is a degree removed from the normal understanding reflected in more familiar, Plaintiffs would say "true," disclaimer requirements. The identities of a speaker's donors' donors are something more typically revealed by *disclosure* laws, which are not

18

typically thought of as on-communication requirements. Stuffing this amount of "disclosed" information into an ad, even on the theory that it serves a "disclaimer's" purpose, does not effect a change in degree but a change in kind. It transforms ads into primarily conveying the government's speech, not the speaker's.

And the government-mandated speech conveys a highly debatable message with which speakers and their supporters often disagree: that the donors' donors endorse, are somehow connected to, or are even aware of the ad and its message. Obviously, no such dispute attends the disclosure of *primary* donors.

Setting aside the substantive differences between the disclosure of primary and secondary donors, San Francisco notes that Plaintiffs "cite no authority for the proposition that the standard of review turns on the length of the required disclaimer." Def. Br. 19. But then, San Francisco cites no authority for the proposition that *anything* the government compels a speaker to say as part of a political ad—no matter how attenuated to an ad's funding or of whatever length—is a "disclaimer" and thus immune from strict scrutiny. Does *any* on-communication compelled speech requirement automatically qualify as a "disclaimer,"

19

or is there some distinction, some line between a mere "true" disclaimer, and the hijacking of the speaker's message? If a limiting principle exists, this case exposes it.[4]

In *Am. Civil Liberties Union of Nevada v. Heller*, 378 F.3d 979 (9th Cir. 2004), this Court applied strict scrutiny to invalidate a law that required persons paying for election material to identify their names and addresses on published printed or written matter. That law went "beyond the reporting of funds used to *finance* speech to affect the content of the communication itself." *Id.* at 987 (emphasis in original). "[P]roscribing the content of an election communication is a form of regulation of campaign activity subject to traditional strict scrutiny." *Id.* (footnote omitted). Even if the regulation struck down in *Heller* would

---

[4] Amicus endorses the only apparent precedent offering this remarkable suggestion. "[T]he 'election-related context implicated here is alone sufficient to distinguish' the compelled speech case law." CLC Br. 12 (quoting *Gaspee Project v. Mederos*, 13 F.4th 79, 95 (1st Cir. 2021)). The notion that the standard of review should be *reduced* for campaign speech is in tension with the long-held understanding that "the First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) (quotation marks omitted). And *Gaspee* did not consider a *secondary* donor disclosure/disclaimer scheme.

now be understood as a disclaimer, the concept that such mandates at some point pose a compelled speech issue remains apt.

Neither *Citizens United* nor any of this Court's post-*Heller* precedent upholding disclaimer or disclosure requirements involved anything approaching the transformational impact at issue here. The only advertising requirements at issue in *Brumsickle* asked that written ads identify their sponsor's name and address, that broadcast ads identify their sponsor's name, and that independent expenditures state that no candidate approved them. *Brumsickle*, 624 F.3d at 999. Also modest were the disclaimers contested in *Yamada v. Snipes*, 786 F.3d 1182, 1202 (9th Cir. 2015): requirements that ads prominently note whether they are approved by a candidate. Similarly, the disclaimers in *Alaska Right to Life Comm. v. Miles*, 441 F.3d 773, 792 (9th Cir. 2006) required only that speakers disclose their names and addresses, and if applicable, disclaim connection with any candidate.

The word "disclaimer" does not appear in *Chula Vista Citizens for Jobs & Fair Competition v. Norris*, 782 F.3d 520 (9th Cir. 2015) (en banc), which upheld a requirement that initiative petitions include their proponents' name. Nor were disclaimers at issue in *Nat'l Ass'n for Gun*

21

*Rights, Inc. v. Mangan*, 933 F.3d 1102 (9th Cir. 2019); *Family PAC v. McKenna*, 685 F.3d 800 (9th Cir. 2012); or the pre-*Heller* case of *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003), which applied strict scrutiny to disclosure and reporting requirements, *id.* at 1101 & n.16.

San Francisco's secondary donor requirement consumes a significant amount of time and space, practically displaces the message the speaker would choose to say, and fundamentally alters an advertisement's focus. It is not a mere disclaimer.

B. Compelling speakers to name their donor's donors in their ads does not advance an informational interest.

San Francisco expends great effort discussing its informational interest in ensuring that voters know who stands behind political advertising. But Plaintiffs do not dispute that disclaimers and disclosures can enhance transparency and provide useful information. AOB 24-25, 34; *Citizens United*, 558 U.S. at 371; *Buckley v. Valeo*, 424 U.S. 1, 66-67 (1976) (per curiam); *Brumsickle*, 624 F.3d at 1005; *Heller*, 378 F.3d at 994. The main question is whether disclosing *secondary* donors advances that interest. It does not.

San Francisco views the secondary donor disclosure regime as a means of exposing cynically named political committees. It decries the fact that "committee names such as 'San Franciscans for Change' and 'Safe and Clean Sunset' have been used to obscure that funding actually comes from Progress San Francisco, a state political committee which itself is 'largely funded by developer and tech interests.'" Def. Br. 22 (footnote omitted). Setting aside San Francisco's political bias (why can't developer and tech interests want change in San Francisco, or a "safe and clean sunset?" Have their opponents brought change, safety, and cleanliness to the city?), the city has a point: voters may be interested to look behind the euphemisms in which *all* political actors paint themselves.

But every case cited on behalf of the informational interest, discussed the informational interest with respect to *primary* donors. Not a single precedent is offered extending this logic to *secondary* donors, who are decidedly not the "actual contributors to such groups." *Heller*, 378 F.3d at 994. This is new territory. Would San Francisco next require political speakers to report the identities of their individual donors' parents? They may be responsible for creating and sustaining

the donor, but that does not mean they directed or endorsed the donor's donation to the speaker, or even know about it.

San Francisco claims that Plaintiffs "cannot dispute that Proposition F advances the City's important informational interests." Def. Br. 24. They can and they do. *See, e.g.,* AOB 38. More to the point, even under exacting scrutiny, the burden of showing that San Francisco's law advances some important interest is the city's, not Plaintiffs'. It is not enough to merely assert, as the city does, that secondary donor disclosure achieves serves the same interest as primary donor disclosure. And then, why not tertiary donor disclosure? What, if not the First Amendment, stops the city from reaching the popular six degrees of separation in its quest to ferret out cynical, straw donations?

Indeed, secondary disclosure impairs the informational interest by associating attenuated donors with causes they might oppose, or of which they may have no knowledge. Without a sense of irony, San Francisco spends half a page *confirming* Ed Lee Dems's concern about associating Defendant Chiu with Prop B. "Of course, City Attorney David Chiu is not running for Assembly." Def. Br. 27 (footnote omitted). Of course. San Francisco can explain that within its word limits here,

24

but someone may have to explain it to voters who hear Chiu's name in connection with Prop B. Someone may also have to assure voters that Chiu "fully complies" with the law barring his involvement with Prop B. *Id.* And someone may have to explain to the voters that Chiu's Assembly committee "donated money to Ed Lee Dems with no knowledge or intent that Ed Lee Dems would take a position on Proposition B." *Id.* So why mention it in the first place.

Undaunted, San Francisco leans on *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008) in an effort to burden Plaintiffs with proving confusion (something that, considering the city's extended discussion of the Chiu issue, they have successfully done). But *Grange* did not concern compelled speech, donor disclosure, or even the general category of campaign financing. It upheld a ballot design that allowed candidates to self-identity as a supporter of a political party. *Id.* at 447-48. The Court need to know more, "because [the law] has never been implemented, [and] we do not even have ballots indicating how party preference will be displayed. It stands to reason that whether voters will be confused by the party-preference designations will depend in significant part on the form of the ballot."

*Id.* at 455. The state could have "eliminate[d] any real threat of voter confusion" by placing a "prominent" disclaimer at its own expense. *Id.* at 456. But what would be the point of mandating secondary donor disclosure only to disclaim its relevance, all the while consuming more of speakers' resources.

The better case on confusion remains *Van Hollen v. Fed. Election Comm'n*, 811 F.3d 486 (D.C. Cir. 2016), which barred the blanket disclosure of donors who gave to politically active entities without any particular intention of advancing those politics. San Francisco attempts to distinguish *Van Hollen*, reasoning that while it may be inappropriate to impose disclosure requirements on "entities such as 501(c)(3) organizations, corporations, and labor unions that receive their money for non-political purposes from shareholders, members or donors who have no intention of participating in election communications," it's another thing to require "disclosure of the top donors to committees that voluntarily engage in election communications by donating money to primarily formed independent expenditure committees and primarily formed ballot measure committees." Def. Br. 29-30. But many top donors to committees have no knowledge of or interest in those

committees' donations. David Chiu's Assembly committee is situated no differently than *Van Hollen*'s shareholders, members, or donors.

San Francisco also misses much of the point with respect to confusion. Even if Ed Lee Dems are wrong about the prospect of confusion, the group is a primary donor, and *its* perception of that risk impacted and continues to impact No on E's speech. And Jay Cheng, Ed Lee Dems' treasurer, is well-positioned to describe the realities of the group's operations and how these are impacted by the challenged laws, ER-24—25, ¶¶ 9-11, just as David can testify as to how the laws impact donating behavior, ER-20, ¶ 20. The city's assertion that Cheng and David, deeply experienced activists with a long track record of organizing and operating San Francisco political campaigns, lack foundation to describe these campaigns' realities, is specious.

San Francisco should have to show some proof, engage in some reasoning, offer something more than conjecture that secondary donor disclosure achieves anything constructive, before burdening speakers with wasting their time and resources confusing their public with these attenuated relationships. Its inability to do so should end any heightened scrutiny inquiry.

27

C.   San Francisco's secondary donor disclosure requirement is not narrowly tailored.

Assuming there is any value on secondary donor disclosure, San Francisco fails to refute the existence of more narrowly tailored alternatives to its compelled speech regime. Contrary to the city's assertions, Def. Br. 36, the fact that voters enacted this law (because who can oppose more information in the abstract) does not mean that anyone wants to tune in to or read a lengthy list of attenuated, often meaningless connections among political committees. Plaintiffs submitted testimony by professional political campaign advertisers as to the harm caused by excessive disclaimers: they get tuned out. ER-29, ¶¶ 15-17; ER-34, ¶ 15.

Moreover, it does not matter that "the voters demonstrated what they actually want when they enacted Proposition F." Def. Br. 36. Political majorities want many things. The First Amendment exists to ensure that majorities are often disappointed. What speakers are *entitled* to is free speech, meaning that even regulations advancing important interests must be narrowly tailored to avoid burdening more speech than necessary. The burden imposed by the secondary donor disclosure regime is severe, considering the impact it has on Plaintiffs'

associational rights; the fact that it effectively hijacks their ads to broadcast a different, confusing message; and the degree to which it displaces, sometimes entirely, their messages.

Like San Francisco's denial of the plain fact that Plaintiffs explicitly sought facial relief in their complaint and their motion, *supra* at 3, claims that this argument is asserted for the first time on appeal is disconnected from reality. Much of Plaintiffs' pleadings and evidence concerned this very topic. *See* ER-50—52, ¶¶ 22-29; ER-53, ¶¶ 36-41; SER-99—101, 103 ("the City's compelled speech requirements will make the Committee's messages impossible or ineffective"). David declared, with five supporting exhibits, how the secondary donor disclosure requirements hurt the committee's ability to communicate, ER-18—20; and two political consultants explained this in great detail in their declarations, ER-26—34.

*Of course* Plaintiffs' claims that the secondary donor disclosure requirement excessively displaces their speech are based on . . . the degree to which their speech is displaced by the requirement. And for that reason, Plaintiffs do not challenge things like the font size

requirement. The problem is not the font. It's the amount and nature of what must be printed in it.

Contrary to San Francisco's view, *Am. Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749 (9th Cir. 2019) remains instructive. There, this Court reversed a decision that had declined to enter a preliminary injunction against another San Francisco law that commandeered 20 percent of advertisements. *Id.* at 758. The city claims that *American Beverage* is inapplicable because it is a commercial speech case, Def. Br. 41, but it forgets that commercial speech is typically afforded less protection than political speech, *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U. S. 557, 562-563 (1980). San Francisco also asserts, without explanation, that while a 20 percent warning on a drink label might drown out the beverage maker's message, the greater imposition here "simply provides information." Def. Br. 42. The argument is unserious.

And returning to the commercial speech angle, San Francisco points out that the test employed in *American Beverage* is different than that employed in the First Amendment context. True enough, but not in a sense helpful to the city's position. *See* AOB 44.

Voters are already informed, as part of the ad, about the sources of the ad's funding. If they wish to look deeper, they could visit the city's Ethics Commission website to learn about the source's sources. And beyond that, perhaps there is a role for investigative journalism. But the ads must focus on the speakers' ideas, not about their funding.

## IV. THE REMAINING EQUITABLE FACTORS FAVOR PLAINTIFFS.

The city concedes, as it must, "that the loss of First Amendment freedoms constitutes irreparable injury." Def. Br. 43. It merely denies the injury's existence, thus reducing their interest from one in exercising a fundamental right, to one that is only "modest" and "private," and easily overridden by allegedly more weighty public concerns. *Id.* (citations omitted). Indeed, forgetting about the First Amendment allows San Francisco to deride Plaintiffs' interest as an "interest in hiding [their] secondary contributors from the public." Def. Br. 44.

This is not a fair description of Plaintiffs' interest in speaking about political affairs, in participating in civic life and engaging in the democratic process. And there is no public interest in violating anyone's

First Amendment rights. Indeed, enforcing the Constitution is within the public interest.

CONCLUSION

The district court's order should be vacated, and the case should be remanded with instructions to enter a preliminary injunction against enforcement of S.F. Code § 1.161(a) and S.F. Reg. 1-161.3.

Dated: August 19, 2022                         Respectfully submitted,


                                               /s/ Alan Gura
                                               Alan Gura
James R. Sutton                                Stephanie Brown*
THE SUTTON LAW FIRM                            INSTITUTE FOR FREE SPEECH
150 Post Street, Suite 405                     1150 Connecticut Ave., N.W.
San Francisco, CA 94108                        Suite 801
415.732.7700                                   Washington, DC 20036
jsutton@campaignlawyers.com                    202.301.3300
                                               agura@ifs.org


                                               *Counsel for Appellants*


                                               *Practice supervised per D.C. Ct.
                                                 of Appeals R. 49(c)(8)

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____22-15824_____

I am the attorney or self-represented party.

**This brief contains ____6,107____ words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** ____s/Alan Gura_____ **Date** _August 19, 2022_____
*(use "s/[typed name]" to sign electronically-filed documents)*